Nos. 13-16106, 13-16107

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## STEPHANIE LENZ,

*Plaintiff, Appellee, and Cross-Appellant*

v.

## UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC., AND UNIVERSAL MUSIC PUBLISHING GROUP,

*Defendants, Appellants, and Cross-Appellees.*

On Appeal From The United States District
Court for The Northern District of California
Case No. 5:07-cv-03783-JF
Honorable Jeremy Fogel District Judge

## APPELLEE AND CROSS-APPELLANT'S
## SUPPLEMENTAL EXCERPTS OF RECORD
## VOLUME 1 (PAGES 1–166)

Ashok Ramani - # 200020
Michael S. Kwun - # 198945
Theresa H. Nguyen - # 284581
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  (415) 391-5400
Facsimile:   (415) 397-7188

Cindy Cohn -  # 145997
Kurt Opsahl - # 191303
Corynne McSherry - # 221504
Daniel K. Nazer - # 257380
Julie Samuels - #288039
ELECTRONIC FRONTIER
FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone:  (415) 436-9333
Facsimile:   (415) 436-9993

*Attorneys for Plaintiff, Appellee, and Cross-Appellant*
*STEPHANIE LENZ*

**APPELLEE AND CROSS-APPELLANT'S**
**SUPPLEMENTAL EXCERPTS OF RECORD INDEX**
**NON-CONFIDENTIAL VOLUME 1**

| Docket No. | Date | Document | SER Pages | Vol. No. |
|---|---|---|---|---|
| Ninth Cir. 13-80056 1-2 | 03/11/2013 | Lenz Petition for Permission to Appeal | 1–25 | 1 |
| 398 | 07/13/2012 | Declaration of Melissa J. Miksch in Support of Plaintiff's Renewed Motion for Summary Judgment (Volume II) | 26–28 | 1 |
| 398-5 | 07/13/2012 | Exhibit F to Miksch Declaration (Moffat Dep. Tr., dated 03/10/2010) | 29–52 | 1 |
| 398-6 | 07/13/2012 | Exhibit G to Miksch Declaration (YouTube Email to Lenz re: DMCA Notice, dated 06/05/2007) | 53–54 | 1 |
| 398-7 | 07/13/2012 | Exhibit H to Miksch Declaration (Defs.' Supplemental Objections and Responses to Pl. Stephanie Lenz's First Set of Requests for Admissions) | 55–83 | 1 |
| 398-10 | 07/13/2012 | Exhibit K to Miksch Declaration (Lenz Email to YouTube re: Counternotice, dated 06/05/2007) | 84–86 | 1 |
| 398-15 | 07/13/2012 | Exhibit P to Miksch Declaration (Universal's Takedown Notice) | 87–92 | 1 |
| 393 | 07/13/2012 | Declaration of Marcia Hoffmann Filed in Support of Plaintiff's Renewed Motion for Summary Judgment | 93–97 | 1 |
| 392 | 07/13/2012 | Declaration of Stephanie Lenz in Support of Plaintiff's Renewed Motion of Summary Judgment | 98–101 | 1 |
| 220 | 11/24/2009 | Declaration of Michael S. Kwun in Support of Pl.'s Motion for Partial Summary Judgment or, in the Alternative, Partial Judgment on the Pleadings | 102–103 | 1 |

| 220 | 11/24/2009 | Exhibit A to Kwun Declaration (Lenz Dep. Tr., dated 09/16/2009) | 104–109 | 1 |
|---|---|---|---|---|
| 200 | 10/30/2009 | Declaration of Melissa J. Miksch in Support of Pl.'s Motion for Partial Summary Judgment or Partial Judgment on the Pleadings | 110–112 | 1 |
| 200 | 10/30/2009 | Exhibit A to Miksch Declaration (Lenz Dep. Tr., dated 09/16/2009) | 113–159 | 1 |
| 21 | 11/13/2007 | Lenz Opposition to Motion to Dismiss and Special Motion to Strike | 160–166 | 1 |

## APPELLEE AND CROSS-APPELLANT'S
## SUPPLEMENTAL EXCERPTS OF RECORD INDEX
## CONFIDENTIAL VOLUME 2

| Docket No. | Date | Document | SER Pages | Vol. No. |
|---|---|---|---|---|
| 402 | 07/13/2012 | Declaration of Melissa J. Miksch in Support of Pl.'s Renewed Motion for Summary Judgment (Vol. III) | 167–170 | 2 |
| 402-1 | 07/13/2012 | Exhibit Q to Miksch Declaration (Allen Dep. Tr., dated 04/01/2010) | 171–214 | 2 |
| 402-2 | 07/13/2012 | Exhibit R to Miksch Declaration (Johnson Dep. Tr., dated 01/28/2010) | 215–228 | 2 |
| 402-3 | 07/13/2012 | Exhibit S to Miksch Declaration (Johnson Email to Moffat re: YouTube Links, dated 06/04/2007) | 229–240 | 2 |
| 402-5 | 07/13/2012 | Exhibit U to Miksch Declaration (Prince Administration Agreement) | 241–251 | 2 |
| 402-6 | 07/13/2012 | Exhibit V to Miksch Declaration (Affidavit of Darren Hubbard) | 252–301 | 2 |
| 402-7 | 07/13/2012 | Exhibit W to Miksch Declaration (Emails to/from YouTube and Moffat, dated 06/08/2007 and 06/15/2007) | 302–305 | 2 |
| 402-8 | 07/13/2012 | Exhibit X to Miksch Declaration (Allen Email to McDermott re: No Prince Videos on YouTube, dated 10/10/2007) | 306–308 | 2 |
| 402-9 | 07/13/2012 | Exhibit Y to Miksch Declaration (Allen Email to Adams re: Removing Prince Videos, dated 01/04/2007) | 309–310 | 2 |
| 402-10 | 07/13/2012 | Exhibit Z to Miksch Declaration (Allen Email to Prince re: Removal of YouTube Videos, dated 08/15/2007) | 311–314 | 2 |
| 402-11 | 07/13/2012 | Exhibit AA to Miksch Declaration (Defs.' Objections and Responses to Plaintiff Stephanie Lenz's First Set of Requests for Admissions) | 315–361 | 2 |

NO. ___

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

STEPHANIE LENZ,

Plaintiff-Petitioner,

v.

UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC., and
UNIVERSAL MUSIC PUBLISHING GROUP,

Defendants-Respondents.

On Appeal from the United States District
Court for the Northern District of California
Case No. 5:07-cv-03783-JF
Honorable Jeremy Fogel, District Judge

## PETITION FOR PERMISSION TO APPEAL UNDER 28 U.S.C. 1292(b)

ASHOK RAMANI - #200020
aramani@kvn.com
MICHAEL S. KWUN - #198945
mkwun@kvn.com
MELISSA J. MIKSCH - #249805
mmiksch@kvn.com
KEKER & VAN NEST, LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:   415 391 5400
Facsimile:    415 397 7188

Cindy Cohn - #145997
cindy@eff.org
Kurt Opsahl - #191303
kurt@eff.org
Corynne McSherry - #221504
corynne@eff.org
Julie Samuels - #288039
julie@eff.org
ELECTRONIC FRONTIER
FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone:   (415) 436-9333
Facsimile:    (415) 436-9993
*Attorneys for Plaintiff/Petitioner*
*STEPHANIE LENZ*

**SER 001**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................1

II.   FACTUAL BACKGROUND..........................................................5

III.  QUESTIONS PRESENTED ........................................................10

IV.  RELIEF SOUGHT......................................................................11

V.    ARGUMENT..............................................................................11

      A.    The Order involves controlling legal questions. ..................11

      B.    There exist substantial grounds for disagreement as to these issues ..15

      C.    Resolution of these questions will materially advance this case. .......17

VI.  CONCLUSION...........................................................................18

CERTIFICATE OF COMPLIANCE.......................................................19

STATEMENT OF RELATED CASES ...................................................20

CERTIFICATE OF SERVICE ..............................................................21

733996.01

**SER 002**

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Barnes v. Stone Container Corp.*
942 F.2d 689 (9th Cir. 1991) ...............................................................................11

*Cabell v. Zimmerman*
No. 09 Civ. 10134, 2010 WL 996007 (S.D.N.Y. March 12, 2010) .......................4

*Dudnikov v. MGA Ent. Inc.*
410 F. Supp. 2d 1010 (D. Colo. 2005) ..................................................................4

*In re Cement Antitrust Litig.*
673 F.2d 1020 (9th Cir. 1982) ..........................................................................3, 11

*Kersh v. General Council of the Assemblies of God*
535 F. Supp. 494 (N.D. Cal. 1982) .....................................................................16

*Klinghoffer v. Achille Lauro Lines*
921 F.2d 21 (2d Cir. 1990) ..................................................................................16

*Lenz v. Universal Music Corp.*
572 F. Supp. 2d 1150 (N.D. Cal. 2008) ....................................................8, 14, 16

*Marsall v. City of Portland*
No. CV-01-1014, 2004 WL 1774532 (D. Or. Aug. 9, 2004)...............................15

*Ouellette v. Viacom Int'l,* Inc.,
No. CV-10-133, 2012 WL 1435703 at *3 (D. Mont. April 25, 2012)...................4

*Perfect 10, Inc. v. CCBill, LLC*
488 F.3d 1102 (9th Cir. 2007) .............................................................................13

*Reese v. BP Exploration (Alaska) Inc.*
643 F.3d 681 (9th Cir. 2011) ...............................................................................17

*Rossi v. Motion Picture Association of America*
391 F.3d 1000 (9th Cir. 2004) .....................................................................*passim*

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*
667 F.3d 1022 (9th Cir. 2011) ...............................................................................2

*United States v. Woodbury*
263 F.2d 784 (9th Cir. 1959) ...............................................................................11

**SER 003**

## Federal Statutes

17 U.S.C. § 512(a)-(d) ................................................................................2

17 U.S.C. § 512(c)(3)(A) ..................................................................*passim*

17 U.S.C. § 512(f) ............................................................................*passim*

17 U.S.C. § 512(g) ...................................................................................7

28 U.S.C. § 1292(b) .........................................................................*passim*

## Federal Rules

Fed. R. App. P. 5(a)(3) ..............................................................................1

Fed. R. App. P. 5(b)(2) ............................................................................10

## Legislative Authorities

S. Rep. 105-190.........................................................................................2

iii

Stephanie Lenz respectfully petitions this Court under 28 U.S.C. § 1292(b), Rule 5 of the Federal Rules of Appellate Procedure, and Circuit Rule 5.1 for permission to appeal from the order on cross-motions for summary judgment that was entered on January 24, 2013 and amended on March 1, 2013.  The original order ("Order"), attached hereto as Exhibit A, and the subsequent order amending the Order ("Second Order"), attached hereto as Exhibit B, were entered by the Honorable Jeremy Fogel of the United States District Court for the Northern District of California.

Ms. Lenz and the defendants (Universal Music Corporation, Universal Music Publishing, Inc. and Universal Music Publishing Group, referred to collectively as "Universal") each seek review of different aspects of the Order. Following a joint stipulation by the parties, the district court independently reviewed the Order and issued the Second Order, amending the Order by making the findings required by 28 U.S.C. § 1292(b) and certifying the Order for interlocutory appeal. Exh. B. at 5-6.  The district court also stayed proceedings below pending resolution of the interlocutory appeal process.  *Id.* at 6.  This petition is being filed within ten days of the Second Order, which amended the Order.  Fed. R. App. P. 5(a)(3); 28 U.S.C. § 1292(b).

## I.    INTRODUCTION

Section 512 of the Digital Millennium Copyright Act ("DMCA") provides

733996.01

**SER 005**

safe harbors from copyright-infringement liability for internet service providers that comply with a system of notice and takedown of material that allegedly infringes copyright. *See* 17 U.S.C. § 512(a)-(d); *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 667 F.3d 1022, 1030 (9th Cir. 2011) (addressing section 512(c)). The DMCA offers copyright owners a streamlined, non-judicial process for addressing claims of copyright infringement; in return, service providers are protected from secondary liability for material their users post online. But Congress recognized that it needed to balance "the need for rapid response to potential infringement with the *end-users [sic] legitimate interests in not having material removed without recourse.*" S. Rep. 105-190, May 11, 1998, at 21 (emphasis added). For this reason, section 512 also provides that

> [a]ny person who knowingly materially misrepresents under this section . . . that material or activity is infringing . . . shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer . . . as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing . . . .

17 U.S.C. § 512(f). Section 512(f) "is intended to deter knowingly false allegations to service providers in recognition that such misrepresentations are detrimental to . . . Internet users." S. Rep. 105-190 at 49.

Ms. Lenz seeks leave to appeal the Order to address two interrelated questions: (1) whether a knowingly false statement that one has a "good faith belief that use of the material in the manner complained of is not authorized by the

2

733996.01

**SER 006**

copyright owner, its agent, or the law" (17 U.S.C. § 512(c)(3)(A)(v)) can qualify as a knowing, material misrepresentation under section 512(f); and (2) whether a knowing failure to consider fair use makes a statement that one has a good faith belief that material is being used in a manner not authorized by law a knowing misrepresentation.

These two issues, which the district court certified for interlocutory appeal (Exh. B at 1-2 (issues b & c) & 5), involve "controlling question[s] of law," 28 U.S.C. § 1292(b), concerning the correct interpretation of section 512(f) in light of this Court's decision in *Rossi v. Motion Picture Association of America*, 391 F.3d 1000 (9th Cir. 2004) (addressing the interaction between the "good faith belief" requirement for "takedown" notices under section 512(c)(3)(A) and actions for knowing material misrepresentations under section 512(f)).  If the Court answers these questions affirmatively, Ms. Lenz will, at a minimum, be entitled to partial summary judgment on the issue of liability.  *See In re Cement Antitrust Litig.,* 673 F.2d 1020, 1026 (9th Cir. 1982) (questions are controlling if their "resolution . . . on appeal could materially affect the outcome of litigation in the district court").

The parties and the district court also agree that there are "substantial grounds for difference of opinion" on these questions, and that "an immediate appeal from the order may materially advance the ultimate termination of the

3

SER 007

litigation . . . .”  28 U.S.C. § 1292(b); Exh. B. at 2-3 & 5.

And, the questions presented are important for reasons that extend well beyond this case.  The clarifications that Ms. Lenz seeks will affect not only this litigation, but also the continued viability of section 512(f) as a meaningful check on the misuse of the DMCA takedown procedure.  *Rossi* remains the leading case concerning section 512(f) and is cited by district courts around the nation.  *See, e.g.*, *Ouellette v. Viacom Int’l,* Inc., No. CV-10-133, 2012 WL 1435703 at *3 (D. Mont. April 25, 2012); *Cabell v. Zimmerman*, No. 09 Civ. 10134, 2010 WL 996007 at *4 (S.D.N.Y. March 12, 2010); *Dudnikov v. MGA Ent. Inc.*, 410 F. Supp. 2d 1010, 1012 (D. Colo. 2005).  Unfortunately, the district court’s Order in this case suggests that, under *Rossi*, a content owner can knowingly set up a system that ignores the fair-use doctrine but nonetheless escape section 512(f) liability unless a fair user can show that the content owner *also* subjectively believed there was a high probability that the process would result in improper takedowns.  That interpretation of *Rossi* would set up a virtual smoking gun standard that could render section 512(f) all but toothless—an outcome that Congress surely did not intend.  Content owners and users alike will benefit from further guidance on how to apply *Rossi* in a situation like this, where the copyright owner failed to consider fair use at all before issuing the takedown notice.

4

**SER 008**

Thus, an immediate appeal will go far toward bringing this litigation to a close; conserve the resources of this Court, the district court, and the parties; and, if Ms. Lenz is correct on the law, offer the public the tremendous benefit of ensuring that section 512(f) provides meaningful protection for lawful uses that have been improperly targeted for takedown under the DMCA.  Ms. Lenz respectfully urges the Court to grant her petition for permission to appeal under 28 U.S.C. § 1292(b).

## II.  FACTUAL BACKGROUND

In early February, 2007, Stephanie Lenz's two young children were playing in the family kitchen while the song "Let's Go Crazy" by the artist known as "Prince" played in the background.  Exh. A at 1.  Ms. Lenz took the opportunity to videotape her children at play.  *Id.*  In the video, her son is shown walking with his push-toy and on occasion "dancing" to the song.  *Id.* at 1-2.  Ms. Lenz uploaded the video to YouTube.  *Id*. at 2.[1]

Among other things, Universal administers composition copyrights for songwriters.  *Id.*  At the time of the events at issue in this case, Universal managed Prince's copyrights, including monitoring sites such as YouTube for uses of Prince's works and implementing a takedown process for allegedly unauthorized uses of those works.  *Id.*  Universal's then-head of business of affairs, Robert Allen, testified about Universal's policy for handling takedown notices:

---

[1] The video can be seen on YouTube at
http://www.youtube.com/watch?v=N1KfJHFWlhQ.

733996.01

**SER 009**

> The general guidelines are that when a writer is upset or requests that particular videos be removed from YouTube that we review the video to ensure that the composition was the focus of the video and if it was we then notify YouTube that the video should be removed.

*Id.* at 8.  The guidelines that Allen described make no mention of fair use.  *Id.*

Allen assigned the task of patrolling YouTube for unauthorized uses of Prince's works to an employee named Sean Johnson.  *Id.* at 2.  Johnson testified that he "put a video on the list [of videos that Universal would demand that YouTube remove] that embodied a Prince composition in some way if the—there was a significant use of it, of the composition, specifically if the song was recognizable, was in a significant portion of the video or was the focus of the video."  *Id.* at 7.  Johnson would not include a video on the takedown list if it had only "a second or less of a Prince song, literally a one line, half line of a Prince song," or if it was shot in a noisy environment like a bar where the song was playing "deep in the background."  *Id.*  Johnson made no mention of fair use during his testimony.  *Id.* at 8.  And, in fact, Universal admitted that it had not instructed Johnson to consider fair use.  *Id.*

Johnson reviewed Ms. Lenz's video and put it on a list of videos to be removed.  *Id.* at 2.  Johnson's list was incorporated into an electronic notice to YouTube demanding that the videos on the list be removed.  *Id.* Universal's electronic notice tracked the DMCA's statutory provisions for a notice of claimed infringement (17 U.S.C. § 512(c)(3)(A)), including the requirement that the notice

6

contain a "statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law." *Id.* § 512(c)(3)(A)(v); Exh. A. at 4-5.

The district court found that the evidence established that Universal sent its takedown notice without considering fair use. Exh. A. at 8.

In response to Universal's notice, YouTube sent Ms. Lenz an email notifying her that it had disabled access to her video and warning her that repeated incidents of copyright infringement could lead to the deletion of her account and all of her videos. *Id.* at 2. Surprised and dismayed, on June 7, 2007, Ms. Lenz sent a counternotice to YouTube. However, her video was not restored because her counternotice did not comply with all of the particulars of section 512(g) of the DMCA. *Id.; see* 17 U.S.C. § 512(g). Ms. Lenz then retained counsel who assisted her in sending a second DMCA counternotice to YouTube on June 27, 2007, in which she asserted that her video was a fair use and did not infringe copyright. Exh. A. at 2. Although her video was subsequently restored, these efforts cost Ms. Lenz time and resources and her video was unavailable until the process was completed. *Id.* at 3, 13.

Ms. Lenz filed a complaint alleging that Universal had violated section 512(f) of the DMCA. Universal moved to dismiss her second amended complaint, contending that section 512 did not require Universal to consider whether

7

**SER 011**

Ms. Lenz's video was authorized by the fair-use doctrine before sending a takedown notice. The district court disagreed, holding that, consistent with Congress's intent in enacting section 512(f), the sender of a takedown notice must consider fair use as part of the initial review of the material already necessary to comply with section 512's takedown procedures. *See Lenz v. Universal Music Corp.*, 572 F. Supp. 2d 1150, 1154-56 (N.D. Cal. 2008).

Ms. Lenz and Universal filed cross-motions for summary judgment. Ms. Lenz's motion argued that Universal made a knowing, material misrepresentation under section 512 when Universal stated in its notice that it had formed a good-faith belief that Ms. Lenz's Video was not authorized by law. Ms. Lenz advanced two alternative arguments for her position. First, she argued that Universal could not have formed the requisite good-faith belief because it had not formed any belief (or even considered) whether the video was a lawful fair use. Moreover, Universal knew that it had not formed a good-faith belief because it knew that the process that it employed to review the video did not consider fair use. Therefore, when Universal stated in the notice that it had a good-faith belief that the video was not authorized by law, it made a knowing, material misrepresentation under section 512(f). Thus, this first argument argued that Universal actually knew, without resort to the legal doctrine of willful blindness, that it did not have a good faith belief one way or the other whether the video was

8

**SER 012**

authorized by law, because it knew it did not consider fair use. Second, Ms. Lenz argued, in the alternative, that Universal had rendered itself willfully blind to whether Ms. Lenz's video, or any other video, actually was authorized by law, and thus is charged with knowledge of the actual fact that Ms. Lenz's video is a fair use. The second argument is thus that Universal falsely represented that Ms. Lenz's video was not authorized by law because, by application of the doctrine of willful blindness, it knew that her video is a fair use, and thus authorized by law.

The district court denied both cross-motions. The district court found that YouTube qualifies for protection under the DMCA safe harbor, Exh. A at 6; that Universal's takedown notice constituted a "notification of claimed infringement" under the DMCA, *id.;* and that the evidence was "sufficient to establish that Universal issued its Takedown Notice without considering fair use," *id.* at 8. But the district court did not grant summary judgment for either party, because it found that Ms. Lenz also had to prove that Universal subjectively believed there was a high probability that "any given video" in the takedown notice was a fair use; and the court found the evidence insufficient to grant Ms. Lenz summary judgment on that point. The court also found that a trier of fact could conclude based on the evidence that Universal took deliberate actions to avoid finding out whether fair use applied to any particular video (thereby precluding summary judgment in Universal's favor). *Id.* at 11.

9

SER 013

## III.   QUESTIONS PRESENTED

The parties stipulated, and after independent review the district court agreed, that four separate issues satisfied the requirements of 28 U.S.C. § 1292(b).  Exh. B. at 1-3, 5.  Ms. Lenz petitions this Court to consider the following subset of those issues:

a)      Whether a copyright owner must consider fair use before proceeding to send a takedown notice under the DMCA; if a copyright owner must do that, whether as a matter of law a copyright owner's knowing failure to consider fair use suffices to show a "knowing[] material[] misrepresent[ation]" for purposes of establishing liability under 17 U.S.C. § 512(f); and if that showing can establish liability, whether as a matter of law [Ms. Lenz] did or did not make that showing (*see* Exh. A at 6-11); and

b)      Whether [Ms. Lenz] otherwise did or did not show that Universal made a "knowing[] material[] misrepresent[ation],"  (Exh. A at 9-11).

*See* Exh. B at 1-2, 5.  Ms. Lenz understands that Universal also will petition for permission under 28 U.S.C. § 1292(b) to appeal from the Order. The parties have agreed that they will not oppose each other's Petitions.  Accordingly, Ms. Lenz does not intend to oppose Universal's anticipated petition, although she reserves the right to file a response.  *See* Fed. R. App. P. 5(b)(2).

10

**SER 014**

## IV.   RELIEF SOUGHT

Petitioner seeks reversal of the district court's order denying her motion for summary judgment, with directions to award all damages proven.

## V.   ARGUMENT

An order is appropriate for interlocutory appeal under 28 U.S.C. § 1292(b) if (1) it "involves a controlling question of law;" (2) there is "substantial ground for difference of opinion" as to that question; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . ."  28 U.S.C. § 1292(b)*; see generally Barnes v. Stone Container Corp.*, 942 F.2d 689, 690 (9th Cir. 1991) (Ninth Circuit accepted jurisdiction for appeal under Section 1292(b) after district court certified order denying motion for summary judgment because of the "important issues of law involved").

The district court found that all three elements were present with respect to the Order (Exh. B. at 5).  That determination deserves "careful consideration" by this Court.  *United States v. Woodbury*, 263 F.2d 784, 786 (9th Cir. 1959).

## A.   The Order involves controlling legal questions.

An order involves a "controlling question of law" if its resolution on appeal could "materially affect the outcome of litigation in district court."  *In re Cement Antitrust Litig.*, 673 F.2d at 1026.  The questions raised by the Order could hardly be more central to the outcome of this litigation, as well as the future of fair use online.  They distill to a single pivotal issue: the proper interpretation of this

11

**SER 015**

Court's decision in *Rossi*.  This Court's answers are likely to resolve, or at least sharply narrow, the dispute as to this issue, thereby charting the course for an efficient resolution of this case.

In *Rossi*, this Court said that section 512(c)(3)(A)(v)'s "good faith belief requirement encompasses a subjective, rather than an objective, standard" and that "a copyright owner cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake." 391 F.3d at 1004, 1005.

The central question of this litigation is whether, in light of this Court's ruling in that case, the sender of a takedown notice *only* can be held liable under section 512(f) if the plaintiff can show either that the sender deliberately (1) considered whether a given use was authorized by the copyright owner or the law;  determined that it was so authorized; and then sent a takedown notice anyway; or (2) that the sender actually knew there was a high probability its takedown would target fair uses and then sent the takedown notice anyway.

Ms. Lenz does not believe that this was *Rossi*'s intended holding. Accordingly, she asks this Court to clarify that a copyright owner violates section 512(f) if it states in a takedown notice that it has formed a good-faith belief that a use is not authorized by law but has not considered fair use and knows its takedown procedures ignore the question entirely.

**SER 016**

The statute imposes liability on one who "knowingly materially misrepresents under this section . . . that material or activity is infringing . . . ." 17 U.S.C. § 512(f).  The mechanism by which a copyright owner represents that material or activity is infringing "under this section" (*i.e.* section 512) is the notice-and-takedown provision discussed in *Rossi*.  *See* 17 U.S.C. § 512(c)(3)(A).  As this Court recognized in *Rossi,* that provision requires a statement that "the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by . . . the law."  *Id.* § 512(c)(3)(A)(v).  As this Court also has recognized, this requirement is "not superfluous.  Accusations of alleged infringement have drastic consequences:  A user could have content removed, or may have his access terminated entirely.  If the content infringes, justice has been done.  But if it does not, speech protected under the First Amendment could be removed."  *Perfect 10, Inc. v. CCBill, LLC,* 488 F.3d 1102, 1112 (9th Cir. 2007).

As a result, service providers do not forfeit the safe-harbor protections of section 512 by refusing to act on takedown notices that do not include the statements required by the statute, including the statement of good-faith belief.  *Id.*  Thus, it is a material misrepresentation when, as here, a copyright owner states that it has a good-faith belief that a use is not authorized by law, even though that owner has not even *considered* whether the challenged use might be a fair, and

13

733996.01

therefore lawful, use.

The district court correctly interpreted the statute and *Rossi* to require consideration of fair use before sending a takedown notice. As the district court held, to pass muster under section 512(f), a copyright owner "must evaluate whether the material makes fair use of the copyright" before sending a takedown notice, in order to form the good-faith belief required by section 512(c)(3)(A)(v) and avoid liability under Section 512(f). *Lenz,* 572 F. Supp. 2d at 1154; Exh. A at 9.

On cross-motions for summary judgment, the district court also found that there was enough evidence to establish that Universal issued its takedown notice without considering fair use. Exh. A at 8. It nonetheless concluded that it could not grant Ms. Lenz summary judgment because she did not ***also*** show that Universal had rendered itself "willfully blind" to fair use. *Id.* at 10 n.3, 11.

The district court's denial of summary judgment on this issue conflated two separate and alternative theories and applied the wrong legal standard. Although Ms. Lenz made an *alternative* argument based on willful blindness, Ms. Lenz's *first* argument was that Universal made a knowing, material misrepresentation under section 512 because it affirmatively stated that it had a good-faith belief that Ms. Lenz's use was not authorized by law, when in fact it had not considered fair use—a use "authorized by law"—and *knew* that it hadn't. Universal was not

14

merely "willfully blind" to its lack of the required good-faith belief—it *knew* that it had not considered fair use.

Ms. Lenz's *second* argument was that Universal rendered itself willfully blind to whether Ms. Lenz's video, or any other video, was lawful.  The district court acknowledged in a footnote that Ms. Lenz's first argument was based on the known failure to consider fair use, but stated that under *Rossi* an inadvertent failure to consider fair use would be insufficient to impose liability under section 512(f) and, therefore, she must also show Universal "subjectively believed fair use might apply" or that it "willfully blinded itself to the potential application of the fair use doctrine."  *See* Exh. A. at 10 n.3.

Thus, absolutely central to this case is the legal question whether section 512(f) liability is established by evidence that the sender of a takedown notice knowingly failed to consider fair use but nonetheless affirmed that it had formed a good-faith belief that a targeted use was not authorized by law—or whether *Rossi* *also* requires a showing of "willful blindness."  As explained above, if this Court concludes that the district court imposed the additional requirement mistakenly, the issue of liability can be resolved in Ms. Lenz's favor.

## B.    There exist substantial grounds for disagreement as to these issues

There is "a substantial ground for difference of opinion" when a controlling legal question "is difficult and of first impression."  *Marsall v. City of Portland*,

15

No. CV-01-1014, 2004 WL 1774532 at *5 (D. Or. Aug. 9, 2004) (quotation omitted); *see also Kersh v. General Council of the Assemblies of God*, 535 F. Supp. 494, 498 (N.D. Cal. 1982) (certifying order for appeal where, *inter alia*, the order concerned "difficult questions of first impression in this Circuit" and the "absence of directly controlling authority, viewed in light of existing case law, [gave] rise, as the extensive briefing attests, to substantial ground for difference of opinion on these issues."); *Klinghoffer v. Achille Lauro Lines*, 921 F.2d 21, 25 (2d Cir. 1990) ("substantial grounds for difference of opinion" when the "issues are difficult and of first impression").

This case squarely presents the question of whether and how this Court's ruling in *Rossi* affects section 512(f)'s protections for fair users. The undisputed evidence demonstrated that Universal could not have formed a good-faith belief that the video was infringing because it never did what section 512(f) requires as a predicate for such a belief: to consider, among other things, whether her video was a fair use and therefore authorized by law. *Lenz*, 572 F. Supp. 2d at 1154-55.

The Order acknowledges the abundant evidence to that effect, but appears to assume that *Rossi* requires more. The Order states that, following *Rossi*, "an inadvertent failure to consider fair use" does not violate section 512(f); the sender must subjectively believe that fair use might apply. But *Rossi* merely concluded that the "good faith belief" in section 512(c)(3)(A)(v) refers to a subjective belief,

16

**SER 020**

not an objective belief—*i.e.* that it refers to the complaining party's *actual* belief (so long as it is held in good faith), not merely what a reasonable person would believe under the circumstances. 391 F.3d at 1004-05. In *Rossi,* the complaining party *subjectively believed* that the material at issue was unlawful (indeed, subjectively believed so based on Rossi's own statements), *id.* at 1005 & n.8, and did not have *actual knowledge* that that belief was incorrect. Here, by contrast, Universal *actually knew* that it had not considered fair use, and thus that it had not formed a good faith belief at all.

Thus, the relationship between section 512(f) and fair use (and, more specifically, what is entailed by a rightsholder's obligation to consider fair use) presents novel and difficult issues. Guidance from this Court would help resolve those disagreements and, in turn, assist the public in understanding the contours of section 512(f) protection for fair users.

## C.   Resolution of these questions will materially advance this case.

To show that an immediate appeal "may materially advance the ultimate termination of the litigation[,]" a petitioner may show that an appeal might, in a significant manner, advance (rather than impede or delay) the resolution of the litigation. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). If this Court agrees with Ms. Lenz, then Ms. Lenz will be entitled to summary judgment on the issue of liability. The district court was therefore

17

**SER 021**

correct in finding that an immediate appeal may materially advance the ultimate

termination of this case, Exh. B at 5, which already has been pending in district

court for six years.

## VI.   CONCLUSION

For the foregoing reasons, Stephanie Lenz respectfully requests that this

Court permit an appeal under 28 U.S.C. § 1292(b).


Respectfully submitted,

Dated: March 11, 2013          KEKER & VAN NEST LLP

By: */s/ Michael S. Kwun*
    MICHAEL S. KWUN
    Attorneys for Plaintiff-Petitioner
    STEPHANIE LENZ

## CERTIFICATE OF COMPLIANCE

I certify that the attached Petition is not subject to the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the Petition complies with the page limitation requirements set forth in Fed. R. App. P. 5.

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2011, the word processing system used to prepare the brief, in 14 point Times New Roman font.

KEKER & VAN NEST LLP

Dated: March 11, 2013           By: */s/ Michael S. Kwun*
                                        MICHAEL S. KWUN
                                        Attorneys for Plaintiff-Petitioner
                                        STEPHANIE LENZ

733996.01

**SER 023**

## STATEMENT OF RELATED CASES

Petitioner is not aware of any related cases pending in this Court, pursuant to Ninth Circuit Rule 28-2.6.  Petitioner anticipates, however, that the defendants will be filing their own petition for permission to appeal under 28 U.S.C. § 1292(b), and that their petition will be a related case.

733996.01

**SER 024**

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the

Court for the United States Court of Appeals for the Ninth Circuit by using the

appellate CM/ECF system on March 11, 2013.

I further certify that I emailed the foregoing document to the following

parties pursuant to an agreement to accept electronic service thereof:

> Kelly M. Klaus – kelly.klaus@mto.com
> Melinda LeMoine – melinda.lemoine@mto.com
> MUNGER TOLLES & OLSON LLP
> 355 S Grand Avenue
> 35th Floor
> Los Angeles, CA 90071

Attorneys for Defendants UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC., and UNIVERSAL MUSIC PUBLISHING GROUP

KEKER & VAN NEST LLP

Dated: March 11, 2013     By: */s/ Michael S. Kwun*
            MICHAEL S. KWUN
            Attorneys for Plaintiff-Petitioner
            STEPHANIE LENZ

**SER 025**

1   ELECTRONIC FRONTIER FOUNDATION
    CINDY COHN – #145997
2   cindy@eff.org
    CORYNNE MCSHERRY – #221504
3   corynne@eff.org
    KURT OPSAHL – #191303
4   kurt@eff.org
    JULIE SAMUELS – *pro hac vice*
5   julie@eff.org
    454 Shotwell Street
6   San Francisco, CA  94110
    Telephone:     (415) 436-9333
7   Facsimile:     (415) 436-9993

8   KEKER & VAN NEST LLP
    ASHOK RAMANI - # 200020
9   aramani@kvn.com
    MICHAEL S. KWUN - # 198945
10  mkwun@kvn.com
    MELISSA J. MIKSCH - # 249805
11  mmiksch@kvn.com
    633 Battery Street
12  San Francisco, CA 94111-1809
    Telephone:     (415) 391 5400
13  Facsimile:     (415) 397 7188

14  Attorneys for Plaintiff
    STEPHANIE LENZ
15
                    UNITED STATES DISTRICT COURT
16
                  NORTHERN DISTRICT OF CALIFORNIA
17
                          SAN JOSE DIVISION
18

19  STEPHANIE LENZ,                        Case No. C-07-03783-JF (HRL)

20          Plaintiff,                     **DECLARATION OF MELISSA J.
                                           MIKSCH IN SUPPORT OF PLAINTIFF'S
21      v.                                 RENEWED MOTION FOR SUMMARY
                                           JUDGMENT (VOLUME II)**
22  UNIVERSAL MUSIC CORP.,
    UNIVERSAL MUSIC PUBLISHING, INC.       Date:       October 17, 2012
23  and UNIVERSAL MUSIC PUBLISHING         Time:       10:00 a.m.
    GROUP,                                 Courtroom: 3, 5th Floor
24                                         Judge:      Hon. Jeremy Fogel
            Defendants.
25

26

27

28

---

DECLARATION OF MELISSA J. MIKSCH IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR
SUMMARY JUDGMENT (VOL. II)
Case No. C-07-03783-JF (HRL)                          **SER 026**

678065.02

I, MELISSA J. MIKSCH, declare and state:

1.      I am an attorney licensed to practice law in the State of California and am an associate of the law firm of Keker & Van Nest LLP, attorneys for plaintiff Stephanie Lenz in the above-captioned action.

2.      I have knowledge of the facts set forth herein, and if called upon as a witness, I could testify to them competently under oath.

3.      Attached hereto as **Exhibit B** is a true and correct copy of excerpts from the deposition of Stephanie Lenz, dated September 16, 2009.

4.      Attached hereto as **Exhibit C** is a true and correct copy of excerpts from the deposition of Linda Morgan, dated October 21, 2009.

5.      Attached hereto as **Exhibit D** is a copy of an email that has been redacted to remove the email address of a non-party.  Other than those redactions, it is a true and correct copy of deposition Exhibit 61, Bates-stamped MORG000003.

6.      Attached hereto as **Exhibit E** is a true and correct copy of Exhibit B to the Declaration of Kelly Klaus, filed September 21, 2007 (screen-shot of the "'Let's Go Crazy' #1" video on You Tube) (Dkt. #12-2).

7.      Attached hereto as **Exhibit F** is a true and correct copy of excerpts from the deposition of Alina Moffat, dated March 31, 2010.

8.      Attached hereto as **Exhibit G** is a true and correct copy of deposition Exhibit 9 (an email), Bates-stamped P-E 000009.

9.      Attached hereto as **Exhibit H** is a true and correct copy of Defendant's Supplemental Objections and Responses to Plaintiff Stephanie Lenz's First Set of Requests for Admissions, dated May 3, 2010.

10.      Attached hereto as **Exhibit I** is a true and correct copy of deposition Exhibit 100 (the Second Amended Complaint, with exhibits, dated April 18, 2008).

11.      Attached hereto as **Exhibit J** is a true and correct copy of excerpts from the deposition of Peter Lofrumento, dated May 18, 2010.

1

DECLARATION OF MELISSA J. MIKSCH IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR
SUMMARY JUDGMENT (VOL. II)
Case No. C-07-03783-JF (HRL)

**SER 027**

12. Attached hereto as **Exhibit K** is a true and correct copy of deposition Exhibit 11 (an email), Bates-stamped P-E 000022 – P-E 000023.

13. Attached hereto as **Exhibit L** is a true and correct copy of Defendant's Supplemental Objections and Response to Plaintiff's Interrogatory 17, dated May 7, 2010.

14. Attached hereto as **Exhibit M** is a true and correct copy of Defendant's Objections and Responses to Plaintiff's First Set of Interrogatories, Dated January 27, 2009.

15. Attached hereto as **Exhibit N** is a true and correct copy of deposition Exhibit 5 (You Tube's Terms of Use, http://www.youtube.com/t/terms).

16. Attached hereto as **Exhibit O** is a true and correct copy of the Court's Order Granting Partial Summary Judgment, dated February 25, 2010 (Dkt. #250).

17. Attached hereto as **Exhibit P** is a true and correct copy of deposition Exhibit 70 (an email), Bates-stamped UMC-0000620 – UMC-0000625.  Universal designated this document "confidential" under the terms of the protective order in this action but filed it publicly as Exhibit 9 to the October 18, 2010 Declaration of Kelly M. Klaus in Support of Defendants' Motion for Summary Judgment (Dkt. No. 325).

Executed this 13th day of July, 2012 at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

*/s/ Melissa J. Miksch*
MELISSA J. MIKSCH

2
DECLARATION OF MELISSA J. MIKSCH IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR
SUMMARY JUDGMENT (VOL. II)
Case No. C-07-03783-JF (HRL)   **SER 028**

678065.02

# EXHIBIT F

SER 029

1            UNITED STATES DISTRICT COURT

2           NORTHERN DISTRICT OF CALIFORNIA

3               SAN JOSE DIVISION

4

5    STEPHANIE LENZ,            )

                             )

6          Plaintiff,     )

                             )

7      vs.                )  CASE NO.

                          )  C-07-03783-JF

8    UNIVERSAL MUSIC CORP., UNIVERSAL  )

     MUSIC PUBLISHING, INC. and      )

9    UNIVERSAL MUSIC PUBLISHING GROUP, )

                             )

10         Defendants.     )

     _____)

11

12

13              - CONFIDENTIAL -

14

15         DEPOSITION OF ALINA MOFFAT

16          Los Angeles, California

17         Wednesday, March 31, 2010

18

19

20

21

22

23

24   Reported By:  Vance L. Jarvis

              CSR No. 9014

25

1    Moffat's e-mail to YouTube dated June 15, 2007 and then

2    the Bates number on behalf of Universal under Rule

3    30(b)(6).  I don't know what more you need from her on

4    that.

5    BY MS. MIKSCH:

6         Q.  Ms. Moffat, is it your understanding that you

7    are giving testimony on behalf of Universal on this

8    topic?

9         A.  Ah, yes.

10        Q.  Okay.  Thank you.

11             Have you reviewed -- are you aware that Sean

12    Johnson has been deposed in this case already?

13        A.  Yes.

14        Q.  Have you reviewed his deposition transcript?

15        A.  No.

16        Q.  Okay.  I'm handing you, Ms. Moffat, a document

17    that's previously been marked as Exhibit 70.  Here is a

18    copy.

19             (Plaintiff's Exhibit 70 was attached for

20             identification by the court reporter.)

21    BY MS. MIKSCH:

22        Q.  Have you seen this before?

23        A.  Yes.

24        Q.  What is it?

25        A.  It is an e-mail from me to YouTube.

SER 031

1    Q. And it was sent June 4, 2007 at 5:30 p.m.?

2    A. Yes.

3    Q. Did you -- and you sent this e-mail?

4    A. Yes.

5    Q. When you sent this e-mail did you send it on

6    behalf of Universal Music Publishing Group?

7    A. Yes.

8    Q. Is this a true and accurate copy of the e-mail

9    that you sent to YouTube on June 4, 2007 at 5:30 p.m.?

10    A. Yes.

11    Q. Did you write this e-mail yourself?

12    A. Yes.

13    Q. How did you write it?

14    A. Explain please.

15    Q. What I mean is for example you see here on

16    pages, the first five or so pages of this document is a

17    list of URLs for YouTube.

18    A. Uh-huh.

19    Q. Did you type in those URLs yourself?

20    A. No.

21    Q. What did you do?

22    A. I was provided these.

23    Q. Who provided them to you?

24    A. I don't recall exactly who. It would have

25    either been Sean Johnson or Robert Allen.

1    Q. Likely copied?

2    A. Copied.

3    Q. Why did you send this e-mail to YouTube?

4    A. I was instructed to by Robert Allen.

5    Q. Are you saying that Mr. Allen instructed you to

6    send this specific e-mail to YouTube?

7        MS. LeMOINE: Objection. Asked and answered.

8    BY MS. MIKSCH:

9    Q. Go ahead.

10   A. He asked me to send the notice to YouTube.

11   Q. Okay. When did he ask you this?

12   A. I don't know specifically. Most likely the day

13   that I sent it.

14   Q. Do you know why he asked you to do it?

15       MS. LeMOINE: Objection. It calls for

16   speculation. How is she supposed to know why he asked

17   her do that?

18   BY MS. MIKSCH:

19   Q. Do you know why he asked you to do it?

20   A. I believe because Raul Gonzalez was out that

21   day.

22   Q. And is it -- is Raul Gonzalez a person who is

23   usually in charge of sending a list of URLs to YouTube

24   like this one?

25   A. At the time.

1    the time you sent this e-mail?

2        MS. LeMOINE:  Again, same objection.  You

3    haven't established that she had -- she's reading the

4    document now.  So you haven't established she had any

5    expectation at the time.

6    BY MS. MIKSCH:

7        Q.  I'm asking you when you sent this e-mail was it

8    your expectation at the time that YouTube would take

9    down the videos that show up at these URLs?

10       A.  I actually didn't have any expectation beyond I

11   was going to send a letter and -- I mean I don't know

12   what YouTube's response or typical policy was upon

13   receiving these letters.

14       Q.  So you just sent the e-mail; you didn't have

15   any real expectation of what they were going to do?

16       MS. LeMOINE:  Objection.  Asked and answered.

17   Starting to get argumentative.

18   BY MS. MIKSCH:

19       Q.  Go ahead.

20       A.  Again, I sent the letter requesting that they

21   take it down.  I would expect that they would but I

22   don't know necessarily what their policy is.

23       Q.  Did you look at any of the videos on this list

24   before you sent this e-mail, Ms. Moffat?

25       A.  I did not.

1    protective order or adjourn the deposition.  Are you

2    doing any of those three?

3        MS. LeMOINE:  I am not doing any of those

4    three.  I am preserving -- you are harassing the

5    witness.  You've asked her the question repeatedly.

6        I'm instructing her not answer on that ground.

7        MS. MIKSCH:  Okay.  So you are instructing the

8    witness not to answer just because you think it's

9    harassing?

10        MS. LeMOINE:  That's right.

11    BY MS. MIKSCH:

12        Q.  And are you going to follow Ms. Moffat's

13    instruction not to answer?  I mean ms. LeMoine's

14    instruction not to answer, Ms. Moffat?

15        A.  Yes.

16        Q.  All right.  When you sent this e-mail did you

17    believe that all of the videos listed on the URLs were

18    not authorized by the copyright owner or the agent?

19        A.  Yes.

20        Q.  Okay.  And what was the basis for your belief

21    at that time?

22        A.  That they were provided to me with the

23    instructions to send this letter and so therefore that

24    was enough for me to send it.

25        Q.  So your basis was that they were provided to

1   you with instructions to send this e-mail to YouTube?

2   That's it?

3       A.  (Deponent nods head up and down.)

4       MS. LeMOINE:  Objection.  That mischaracterizes

5   her testimony.

6   BY MS. MIKSCH:

7       Q.  Sorry, Ms. Moffat.  Was that a fair

8   characterization of your testimony?

9       A.  Yes.

10      Q.  And was there anything else that was part of

11  your basis for believing on June 4th that the videos

12  weren't authorized by the copyright owner or the agent?

13      A.  No.

14      Q.  Now, did you believe at the time that you sent

15  this e-mail that the videos listed in these URLs were

16  not authorized by the law?

17      MS. LeMOINE:  Objection.  It calls for a legal

18  conclusion.

19      And if your answer is the same then your answer

20  is the same.

21      THE WITNESS:  Yes.

22  BY MS. MIKSCH:

23      Q.  Okay.  What was your basis for believing on

24  June 4th that these videos were not authorized by law?

25      MS. LeMOINE:  Again, calls for legal

1    conclusion.  Object on that basis.

2         And if your answer is the same it's the same.

3         MS. MIKSCH:  Okay.  Ms. LeMoine, it's not

4    really appropriate for you to coach the witness as to

5    whether her answer would be the same or not.

6         MS. LeMOINE:  I'm not coaching the witness,

7    Melissa.  You're asking the same question over and over

8    again.  So it's not appropriate to do that either.

9         MS. MIKSCH:  Well, I'm going to ask you please

10   don't make speaking objections.

11        Q.  Ms. Moffat, do you need me to have the question

12   read back to you?

13        A.  No.

14        Q.  Okay.

15        A.  Same reason.

16        Q.  And what reason is that?

17        A.  I was provided the links and I was instructed

18   to send the letter.

19        Q.  Okay.  What does not authorized by law, what do

20   you understand that to mean as you used it in this

21   e-mail?

22        MS. LeMOINE:  Objection.  Calls for legal

23   conclusion.  Also assumes facts not in evidence.

24        THE WITNESS:  I'm sorry.  Can you repeat your

25   question?

SER 037

1   BY MS. MIKSCH:

2       Q.  What does the phrase not authorized by law mean

3   as you used it in this e-mail?

4       MS. LeMOINE:  Same objection.

5       THE WITNESS:  The letter is the letter that I

6   was working off of.  So I mean I don't know if there was

7   much thought beyond what was in there.

8   BY MS. MIKSCH:

9       Q.  Okay.  When you sent this letter did you have

10  an understanding in your mind as to what it meant when

11  you said the above described activity is not authorized

12  by law?

13      A.  Yes.  That essentially we were not -- we never

14  granted permission for the use to be made.

15      Q.  Okay.  And I think with respect to this

16  particular representation that you made that the videos

17  were not authorized by law your basis I think you said

18  was that you had been given the list of URLs and been

19  instructed to send this e-mail; is that correct?

20      A.  Correct.

21      Q.  And was there anything else that was part of

22  your basis for that representation?

23      MS. LeMOINE:  Objection.  She's answered the

24  question before.  Asked and answered.

25  BY MS. MIKSCH:

1     Q.  Go ahead and answer.

2     A.  No.

3     Q.  When you sent this e-mail did you believe that

4     these videos listed in these URLs infringed any of

5     Prince's copyrights?

6     MS. LeMOINE:  Objection.  It calls for legal

7     conclusion.

8     THE WITNESS:  I wouldn't know because I didn't

9     look at the letter.  Wait.  Sorry.  The subject line is

10     regarding all Prince compilations.  So could you repeat

11     your question again.

12     MS. MIKSCH:  Sure.

13     Q.  When you sent this notice did you believe that

14     the videos that were at these URLs infringed any of

15     Prince's copyrights?

16     A.  Yes.

17     Q.  Okay.  And what was your basis for that belief

18     when you sent this notice?

19     A.  That I was provided the links and asked to send

20     a letter.

21     Q.  Okay.

22     MS. LeMOINE:  Again let me interject an

23     objection to the extent it calls for a legal conclusion.

24     BY MS. MIKSCH:

25     Q.  And was there anything else that was part of

1    your basis for believing these videos infringed

2    copyrights?

3        A.  No.

4        Q.  Would you look please at the third paragraph of

5    text and in the last sentence -- or excuse me.  The last

6    line of that paragraph it says,

7                . . . "files, and that you inform the

8            site operator of the illegality of his or

9            her conduct."

10       Who is the site operator as it is used in that

11   sentence?

12       A.  I don't know.

13       Q.  Okay.  When you sent this e-mail did you

14   believe that the users who had posted these videos that

15   their conduct was illegal?

16       A.  Yes.

17       Q.  And what was your basis for that belief at the

18   time you sent this e-mail?

19       A.  That I was provided the links and I was asked

20   to send a letter.

21       Q.  Nothing else?

22       A.  No.

23       Q.  In the end of the second full paragraph the

24   last sentence reads,

25           "We assert that the information in this

SER 040

1    thought to whether any of these videos might in fact be

2    a fair use of Prince's material?

3        MS. LeMOINE:  Same objection.  Calls for a

4    legal conclusion.  She's told you why she sent the

5    e-mail.

6        THE WITNESS:  No.

7    BY MS. MIKSCH:

8        Q.  Did you discuss any of the contents of this

9    e-mail with any person before you sent it to YouTube?

10        MS. LeMOINE:  I'm going to caution you to the

11    extent you may have had any conversations with Robert

12    Allen that would be privileged.

13        THE WITNESS:  Okay.

14        No.

15    BY MS. MIKSCH:

16        Q.  Did you discuss this e-mail with Sean Johnson

17    in any way before you sent it?

18        MS. LeMOINE:  Again, same caution.

19        THE WITNESS:  No.

20        MS. MIKSCH:  Would you please mark this as

21    Exhibit 77.

22        (Plaintiff's Exhibit 77 was marked for

23        identification by the court reporter.)

24    BY MS. MIKSCH:

25        Q.  Have you seen Exhibit 77 before, Ms. Moffat?

1      A. Yes.

2      Q. What is it?

3      A. It is an e-mail from Sean to me dated June 4,

4   2007.

5      Q. And what time was it sent?

6      A. 4:04 p.m.

7      Q. Did you receive it at 4:04 p.m. or -- what I

8   mean is perhaps you had been, you know, in a meeting

9   until 5:15 and then came back and got it. So what I'm

10   wondering is when did you first see it, if you remember?

11      A. I don't recall.

12      Q. Sure.

13         This e-mail has a list of URLs; right?

14      A. Yes.

15      Q. Are these the same URLs that you put in your

16   e-mail to YouTube that is Exhibit 77?

17         MS. LeMOINE: I'm going to object.

18         MS. MIKSCH: 76.

19         MS. LeMOINE: I would ask a foundational

20   question at this point because if you are asking --

21   she's looking at the document but she can't check them

22   all against one another right here.

23         THE WITNESS: From what I can see on the two

24   documents, yes.

25   BY MS. MIKSCH:

1    Q.  Do you have any reason to think that it's not

2   the same list of URLs in Exhibit 77 and in Exhibit 76?

3    A.  No.

4    Q.  When you wrote Exhibit 76, the e-mail to

5   YouTube, did you not include any of the URLs that Sean

6   Johnson had sent?

7    MS. LeMOINE:  Object.  It assumes facts not in

8   evidence.

9    THE WITNESS:  No, there would be no reason to.

10  BY MS. MIKSCH:

11   Q.  So you included all the URLs that he sent?

12   A.  That I'm aware of, yes.

13   Q.  Okay.  I'm handing you, Ms. Moffat, a document

14  that has been marked Exhibit 74 already.  I'm sorry.

15  Wait.  Exhibit 72.  My apologies.

16   And here is a copy for counsel.

17   (Plaintiff's Exhibit 72 was attached for

18   identification by the court reporter.)

19  BY MS. MIKSCH:

20   Q.  What is this document, Ms. Moffat?

21   A.  It is a response e-mail from me to YouTube

22  dated June 15, 2007 6:25 p.m. responding to a counter

23  notification received from Stephanie Lenz.

24   Q.  Okay.  And would you please look on page two.

25  About halfway down there is a line that says original

1    which is an e-mail to YouTube to take her video down?

2        A.  Correct.

3        Q.  Did you believe when you sent Exhibit 72 that

4    her video infringed any copyright at all?

5        A.  Yes.

6        Q.  Okay.  What copyrights?

7        A.  Well, in this case it's a Prince video.  So his

8    copyright in the music composition.

9        Q.  And in what musical composition?

10       A.  In this case it would have been Let's go Crazy.

11       Q.  And at time that you sent Exhibit 72 on

12   June 15, 2007 what was your basis for believing that

13   Stephanie Lenz's video infringed that copyright?

14       MS. LeMOINE:  Objection.  Assumes facts not in

15   evidence.

16       THE WITNESS:  Because it was in the original

17   list.

18   BY MS. MIKSCH:

19       Q.  And you hadn't watched her video?

20       A.  I don't recall.

21       Q.  Was there any other basis for your belief on

22   June 15th that her video infringed other than it having

23   been included in your prior e-mail to YouTube that was

24   Exhibit 70?

25       A.  No.

1    exactly.

2       Q.  Other than -- let's try again.

3          Why did it matter to Universal whether or not

4    Ms. Lenz's counter notification met the requirements of

5    the Digital Millennium Copyright Act?

6          MS. LeMOINE:  Objection.  Assumes facts not in

7    evidence.  Calls for speculation.  And it calls for a

8    legal conclusion.  It's asked and answered.

9          THE WITNESS:  The letter is in response to

10   YouTube's letter to us.  And in addition to that, if you

11   look at the last paragraph of my letter still responding

12   but at the same time acknowledging that we don't think

13   it's within the scope of DMCA.

14   BY MS. MIKSCH:

15      Q.  At the beginning of the fourth paragraph of

16   text in your e-mail it says,

17             "As such, Ms. Lenz's action constitutes

18              an act of infringement under the United

19              States Copyright Act."

20          Did you believe that that was true when you

21   sent Exhibit 72?

22      A.  Yes.

23      Q.  And what was your basis for making that

24   assertion?

25      A.  As I stated earlier, it was part of the link

1    that was provided me from Sean and I'm responding to her

2    letter which she says that she describes what it is she

3    did which was essentially uploading videos that had his

4    music without permission.

5        Q.  Anything else?

6        A.  That's it.

7        Q.  At the end of that paragraph, rather the next

8    sentence in the fourth paragraph is,

9            "Further, based on the information

10            provided herein, should YouTube decide to

11            reinstate the Infringing Material to its

12            website, such action would constitute

13            willful copyright infringement on the part

14            of both Ms. Lenz and Universal (sic)."

15           Did you believe that was true when you sent

16    Exhibit 72?

17           MS. LeMOINE:  Objection.  Misstates what the

18    document says.  The document speaks for itself.  And

19    objection to the extent it calls for a legal conclusion.

20    BY MS. MIKSCH:

21        Q.  Go ahead.  Did you believe that that was true

22    when you sent the e-mail?

23        A.  Yes.

24        Q.  And what was your basis for making that

25    assertion when you sent Exhibit 72?

1          A.  Because she was using the video which she

2     stated in her letter to us without permission from

3     copyright owner.

4          Q.  Anything else?

5          A.  And at that point we hadn't granted permission

6     either.

7          Q.  And was there anything else?

8          A.  No.

9          Q.  In the third paragraph it says sort of in the

10    middle,

11              "She does not make any claim, nor do

12              Universal's records reflect, that either she

13              or YouTube were ever granted licenses to

14              reproduce, distribute, publicly perform or

15              otherwise exploit the Composition."

16         Did you believe that was true when you sent

17    Exhibit 72?

18         A.  Yes.

19         Q.  And what was your basis for that assertion?

20         MS. LeMOINE:  I'm going to object as asked and

21    answered.

22         THE WITNESS:  She doesn't in her letter claim

23    that she ever asked for a license to upload the video to

24    YouTube.

25    BY MS. MIKSCH:

1    asked and answered.  Lacks foundation.

2        THE WITNESS:  Can you repeat the question

3    again.  I'm sorry.

4    BY MS. MIKSCH:

5        Q.  In your understanding if something is a fair

6    use of a copyrighted work is that use illegal?

7        MS. LeMOINE:  Same objections.

8        THE WITNESS:  I don't know.

9    BY MS. MIKSCH:

10       Q.  Okay.  In your understanding if something is a

11   fair use of copyrighted work is that use authorized by

12   law?

13       MS. LeMOINE:  Objection.  It calls for a legal

14   conclusion.  Argumentative.

15       THE WITNESS:  Again, I don't know.

16   BY MS. MIKSCH:

17       Q.  In the course of your work for Universal are

18   you ever in a position where you have to make an

19   evaluation of whether something is or is not a fair use

20   of a copyrighted work?

21       A.  No.

22       Q.  And did you ever have that responsibility in

23   the course of your work in June 2007?

24       A.  While at Universal?

25       Q.  Yes.

SER 048

1    A. No.

2    Q. When you worked at Sedlmayr in the course of

3    your work did you ever have responsibility to evaluate

4    whether anything was a fair use or not?

5    MS. LeMOINE: I'm going -- that could verge on

6    getting into the attorney-client privilege between

7    Sedlmayr and their clients so I'm just going to ask the

8    witness as counsel to keep that in mind. Also I don't

9    know how it could possibly be relevant.

10   BY MS. MIKSCH:

11   Q. To try to take care of the privilege issue what

12   I want to know is sort of the matter fact in your work

13   for Sedlmayr were you ever responsible for making any

14   evaluation of whether something was or was not a fair

15   use of copyright?

16   MS. LeMOINE: I'm going to just caution the

17   witness not to answer that to the extent she thinks it

18   might reveal any privileges of Sedlmayr's clients. And

19   also again I don't see what the relevance could be.

20   THE WITNESS: No.

21   BY MS. MIKSCH:

22   Q. You mentioned that there were I think four

23   other people in your department?

24   A. At Universal?

25   Q. Yes.

1    STATE OF CALIFORNIA    )

                       ) ss:

2    COUNTY OF KERN      )

3

4        I, VANCE L. JARVIS, do hereby certify:

5

6        That I am a duly qualified Certified Shorthand

7    Reporter, in and for the State of California, holder of

8    certificate number 9014, which is in full force and

9    effect and that I am authorized to administer oaths and

10    affirmations;

11        That the foregoing deposition testimony of the

12    herein named witness was taken before me at the time and

13    place herein set forth;

14        That prior to being examined, the witness named

15    in the foregoing deposition, was duly sworn or affirmed

16    by me, to testify the truth, the whole truth, and

17    nothing but the truth;

18        That the testimony of the witness and all

19    objections made at the time of the examination were

20    recorded stenographically by me, and were thereafter

21    transcribed under my direction and supervision;

22        That the foregoing pages contain a full, true

23    and accurate record of the proceedings and testimony to

24    the best of my skill and ability;

25

```
 1          I further certify that I am not a relative or
 2    employee or attorney or counsel of any of the parties,
 3    nor am I a relative or employee of such attorney or
 4    counsel, nor am I financially interested in the outcome
 5    of this action.
 6
 7          IN WITNESS WHEREOF, I have subscribed my name
 8    this 8th  day of  April      ,  2010 .
 9
10
11    _____
12          VANCE JARVIS, CSR No. 9014
13
14
15
16
17
18
19
20
21
22
23
24
25
```

                                                                65

**SER 051**

*Lenz v. Universal Music Corp. et al.*
<u>N.D. Cal. No. C-07-3784-JF</u>

**ERRATA: Deposition of Alina Moffat (March 31, 2010)**

| Page | Line(s) | Correction | Reason |
|------|---------|------------|--------|
| 48 | 15 | Should read: 2003, I think. Yes, 2003 | Date is incorrect as transcribed |
|  | 17 | Should read: 2002 | Date is incorrect as transcribed |
| 51 | 13 | Should read: "Music" only | Transcription error |
|  |  |  |  |
|  |  |  |  |

    I have read the foregoing testimony of the pages of this deposition and certify it to be a true and correct transcript with the exception of the changes listed above.

May 13, 2010

_____
Alina Moffat

# EXHIBIT G

SER 053

| | |
|---|---|
| **From:** | DMCA Notice [no_reply@support.youtube.com] |
| **Sent:** | Tuesday, June 05, 2007 10:46 AM |
| **To:** | edenza |
| **Subject:** | Video Removed: Copyright Infringement |

YouTube | Broadcast Yourself™

## Dear Member:

This is to notify you that we have removed or disabled access to the following material as a result of a third-party notification by Universal Music Publishing Group claiming that this material is infringing:

**"Let's Go Crazy" #1:** http://www.youtube.com/watch?v=N1KfJHFWlhQ

**Please Note:** Repeat incidents of copyright infringement will result in the deletion of your account and all videos uploaded to that account. In order to avoid future strikes against your account, please delete any videos to which you do not own the rights, and refrain from uploading additional videos that infringe on the copyrights of others. For more information about YouTube's copyright policy, please read the Copyright Tips guide.

If you elect to send us a counter notice, please go to our Help Center to access the instructions.

Please note that under Section 512(f) of the Copyright Act, any person who knowingly materially misrepresents that material or activity was removed or disabled by mistake or misidentification may be subject to liability.

Sincerely,
YouTube, Inc.

Copyright © 2007 YouTube, Inc.



1

# EXHIBIT H

SER 055

1  KELLY M. KLAUS (SBN 161091)
   Kelly.Klaus@mto.com
2  MELINDA E. LEMOINE (SBN 235670)
   Melinda.LeMoine@mto.com
3  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue
4  Thirty-Fifth Floor
   Los Angeles, CA 90071-1560
5  Telephone:   (213) 683-9100
   Facsimile:   (213) 687-3702
6
   Attorneys for Defendants
7  UNIVERSAL MUSIC CORP.,
   UNIVERSAL MUSIC PUBLISHING, INC.
8  and UNIVERSAL MUSIC PUBLISHING
   GROUP
9

10

11                 UNITED STATES DISTRICT COURT

12               NORTHERN DISTRICT OF CALIFORNIA

13                     SAN JOSE DIVISION

14

15  STEPHANIE LENZ,                    CASE NO. CV-07-03783-JF (RS)

16           Plaintiff,               **DEFENDANTS' SUPPLEMENTAL
                                       OBJECTIONS AND RESPONSES TO
17       vs.                           PLAINTIFF STEPHANIE LENZ'S FIRST
                                       SET OF REQUESTS FOR ADMISSIONS**
18  UNIVERSAL MUSIC CORP.,
    UNIVERSAL MUSIC PUBLISHING,
19  INC. and UNIVERSAL MUSIC
    PUBLISHING GROUP,
20
             Defendants.
21

22         Pursuant to Federal Rules of Civil Procedure 26 and 36 and the Court's Order on

23  Plaintiff's Motion to Compel Further Responses dated April 20, 2010 ("April 20, 2010 Order"),

24  Defendants Universal Music Corp., Universal Music Publishing, and Universal Music Publishing

25  Group ("Defendants" or "Universal") hereby object and respond as follows to certain of the first

26  set of Requests for Admission ("Requests") propounded by Plaintiff Stephanie Lenz ("Plaintiff"

27  or "Lenz").

28

**PRELIMINARY STATEMENT**

1.      These responses are made solely for purposes of this action.  Any information provided in response to any particular Request is subject to and without waiving all objections as to competence, relevance, materiality, propriety, admissibility, and all other objections on grounds that would permit or require the exclusion of the information, if such information were offered in evidence, all of which objections and grounds are hereby expressly reserved and may be interposed at the time of trial or in response to any motion or application that may be made by Plaintiff.

2.      Additional information or documents may be discovered in the future that conceivably could relate to one or more of the Requests propounded by Plaintiff.  In accordance with the provisions of Federal Rule of Civil Procedure 26(e), Defendants reserve their right to supplement their responses to the Requests to the extent that additional responsive and/or corrective information or documents become available, though Defendants do not thereby assume any obligation to supplement their responses to these Requests, other than as required under the Federal Rules of Civil Procedure.  Defendants reserve all rights to rely at trial or for any purpose in connection with this action upon any and all such information or documents, whether or not provided in response to any particular request.  Nothing stated herein shall constitute or be construed as a waiver of Defendants' right to prove their contentions and/or respond to Plaintiffs contentions through information, documents and/or other materials that currently are not in Defendants' possession, custody or control.

3.      No incidental or implied admissions are intended by the responses herein.  The fact that Defendants have agreed to provide information or discovery in response to any particular Request is not intended, and shall not be construed, as waiver by Defendants of any part of any objection to any such Request, or any part of any General Objection.

**GENERAL OBJECTIONS**

The following general objections are incorporated by reference into each response set forth hereafter.

1.      Defendants object to the Requests to the extent that they request information that is

10608101.1                              - 2 -

1    protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or

2    any other applicable privilege or protection from disclosure, including without limitation any joint

3    privilege relating to the same. Defendants claim such privileges and protections to the extent

4    implicated by each Request, and exclude privileged and protected information from their

5    responses to the Requests. Any disclosure of such protected or privileged information is

6    inadvertent, and is not intended to waive those privileges or protections.

7        2.    Defendants object to the Requests to the extent they call for information and/or

8    documents that contain confidential, proprietary, trade secret information, and/or competitively

9    sensitive material. Subject to and without waiving any and all other objections to the production

10    of such information and/or documents, Defendants will only produce such information and/or

11    documents subject to the terms of the Stipulated Protective Order.

12        3.    Defendants object to the Requests to the extent they purport to impose obligations

13    on Defendants beyond those required by the Federal Rules of Civil Procedure, the Local Rules of

14    the United States District Court for the Northern District of California, or any other applicable

15    law or rule.

16        4.    Defendants object to the Requests on the grounds that they are overbroad and

17    unduly burdensome, as more fully described herein.

18        5.    Defendants object to the Requests to the extent that they call for information

19    and/or documents that are not within Defendants' possession, custody, or control; that are equally

20    available to Plaintiff; or that could be derived or ascertained by Plaintiff with substantially the

21    same effort that would be required of Defendants.

22        6.    Defendants object to Requests containing the defined terms "YOU," "YOUR" and

23    "UNIVERSAL" as vague, ambiguous, overly broad and unduly burdensome to the extent this

24    term includes any entity other than the named Defendants. Defendants' responses herein are

25    expressly limited to those matters within Defendants' knowledge or information, following a

26    reasonable inquiry.

27        7.    Defendants object to Requests containing the defined term "YOUTUBE" as vague,

28    ambiguous, overly broad and unduly burdensome to the extent this term includes any entity other

10608101.1        - 3 -        DEFTS.' SUPPLEMENTAL OBJ. & RESPS.
TO PLAINTIFF'S IST SET OF REQUESTS
FOR ADMISSIONS CV-07-03783-JF (RS)

1  than YouTube, LLC and/or YouTube, Inc.

2  8.  Defendants object to Requests containing the defined term "LENZ VIDEO" as

3  vague, ambiguous, overly broad and unduly burdensome to the extent this term refers to any

4  video other than the video posted by Plaintiff to YouTube at

5  www.youtube.com/watch?v=N1KfJHFWlhQ, and entitled by her, "Let's Go Crazy #1."

6  Defendants also refer to this video posting herein as the "Let's Go Crazy video."

7  9.  Defendants object to Requests containing the defined term "PRINCE" as vague,

8  ambiguous, overly broad and unduly burdensome to the extent this term includes any person or

9  entity other than Prince Rogers Nelson, professionally known as "Prince." Except as specifically

10  noted otherwise herein, any response to a Request containing the term "Prince" is limited to

11  Prince Rogers Nelson, professionally known as "Prince."

12  10.  Defendants object to Requests containing the defined terms "NOTICE OF

13  CLAIMED INFRINGEMENT" or "NOCI" as vague, ambiguous, overly broad and unduly

14  burdensome to the extent the term includes any notification or email sent to YouTube except for

15  the email dated June 4, 2007, that is the subject of Plaintiffs Complaint in this action, and

16  specifically the portion of that email identifying the video posted to YouTube at

17  www.youtube.com/watch?v=N1KfJHFW1hQ.

18  11.  Defendants object to Requests containing the defined term "JUNE 4 NOCI" as

19  vague, ambiguous, overly broad and unduly burdensome to the extent the term includes any

20  notification sent to YouTube except for the notification dated June 4, 2007, that is the subject of

21  Plaintiffs Complaint in this action, and specifically the portion of that notification identifying the

22  video posted to YouTube at www.youtube.com/watch?v=N1KfJHFW1hQ.

23  12.  Defendants object to Requests containing the defined term "COMMERCIAL

24  USE" as vague and ambiguous, overly broad and unintelligible, insofar as it incorporates

25  undefined terms including "use of a commercial nature" and "other financial gain by the user."

26  The definition does not further define either of these terms, for example, by specifying what is a

27  "use of a commercial nature," or how someone perceiving the "use" of a copyrighted work would

28  be expected to make the determination *ab initio* that the "use" was of a commercial nature.  As

10608101.1

- 4 -

DEFTS.' SUPPLEMENTAL OBJ. & RESPS.
TO PLAINTIFF'S IST SET OF REQUESTS
FOR ADMISSIONS CV-07-03783-JF (RS)

1  defined, any request incorporating the term calls for a conclusion of law, which is not the proper

2  subject of a Request for Admission. The fact that the defined term calls for a legal conclusion,

3  combined with the unambiguous and amorphous nature of the term renders any Request

4  incorporating the defined term unintelligible and incapable of a response in accordance with the

5  Federal Rules.

6         13.    Defendants object to Requests for Admission containing the defined term "HOME

7  VIDEO" as vague, ambiguous, overly broad and unintelligible, insofar as it incorporates

8  undefined terms including "readily available consumer recording equipment" and "personal,

9  noncommercial use." The definition does not further define either of these terms, for example, by

10  specifying what is a "personal, noncommercial use," or how someone perceiving the "use" of a

11  copyrighted work in a video posting would be expected to make the determination *ab initio* that

12  the "use" was made with "readily available consumer recording equipment," or was of a

13  "personal" or "noncommercial" nature. For example, the defined term does not indicate how

14  someone watching a video on a site like YouTube could know that a video posting was for

15  "personal" or "noncommercial" purposes, when the site is accessible and accessed daily by

16  millions upon millions of users. The fact that the defined term calls for a legal conclusion,

17  combined with the unambiguous and amorphous nature of the term renders any Request

18  incorporating the defined term unintelligible and incapable of a response in accordance with the

19  Federal Rules.

20         14.    Defendants object to the period of time called for by Definition 12 as going

21  beyond the time-frame encompassed in Plaintiffs prior discovery requests, and thereby imposing

22  a substantial burden on Defendants without any reason or explanation for doing so. Defendants

23  have already conducted a search for responsive documents and information using the date-

24  parameters specifically set by Plaintiffs prior document requests and interrogatories: January 1,

25  2005 to the present. Plaintiff provides no reason for moving the date back by an additional year

26  in her Requests, and doing so after Defendants have conducted relevant searches for discoverable

27  information is overly broad and unduly burdensome. Unless otherwise indicated below,

28  Defendants responses are expressly limited to knowledge or information concerning the period

DEFTS.' SUPPLEMENTAL OBJ. & RESPS.
TO PLAINTIFF'S 1ST SET OF REQUESTS
FOR ADMISSIONS CV-07-03783-JF (RS)

SER 060

1   January 1, 2005 to the present.

2       15.     Defendants object to the Requests for Admission, and to each of them, to the

3   extent they misstate the legal standards applicable to Section 512(f) of the Digital Millennium

4   Copyright Act, 17 U.S.C. § 512 ("DMCA"), under Ninth Circuit law and this Court's Orders.

5   *Rossi v. MPAA*, 391 F.3d 1000 (9th Cir. 2004), holds that there can be no "knowing[] material

6   misrepresent[ation]," and hence no liability under DMCA § 512(f), absent a "subjective, rather

7   than objective" misrepresentation that the use of a copyrighted work is infringing in a notice sent

8   pursuant to the DMCA. *Id.* at 1004-05. To the extent any Request is premised on the theory that

9   an entity that sends a notice pursuant to the DMCA must conduct a fair use analysis under 17

10  U.S.C. § 107, that premise is inconsistent with *Rossi*. It also is inconsistent with this Court's

11  Orders, which make it clear that the DMCA does not require consideration of fair use prior to

12  sending a takedown notice in every case. *See* Order Denying Motion to Certify Interlocutory

13  Appeal, at 4 (Oct. 28, 2008).

14      16.     Defendants object to the Requests, and to each of them, to the extent they misstate

15  the legal standards applicable to fair use, 17 U.S.C. § 107. To the extent any Request refers to the

16  effect solely of Lenz's use of "Let's Go Crazy" upon the an "actual" or "potential" market for or

17  value of that work, the Request for Admission misstates the applicable fair use standard. The test

18  under the fourth fair use factor is never limited just to effect that the *particular* infringing use may

19  have on the potential market for or value of the copyrighted work. The test, as set forth in the

20  statute and confirmed by the Supreme Court, is "whether *unrestricted and widespread conduct of*

21  *the sort engaged in by the defendant*. . . would result in a substantially adverse impact on the

22  potential market for the original." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994)

23  (quotation omitted) (emphasis added). To the extent any Request assumes that the copyright

24  owner must actually attempt to exploit potential markets for uses of the copyrighted work, or else

25  the fourth fair use factor weighs in favor of fair use, this assumption is incorrect under the

26  language of the statute and controlling case law.

27      17.     These General Objections are incorporated into each individual response and

28  supplemental response below without further reference.

10608101.1                                    - 6 -          DEFTS.' SUPPLEMENTAL OBJ. & RESPS.
                                                              TO PLAINTIFF'S IST SET OF REQUESTS
                                                              FOR ADMISSIONS CV-07-03783-JF (RS)

**SER 061**

## OBJECTIONS AND RESPONSES TO SPECIFIC REQUESTS

**REQUEST FOR ADMISSION NO. 1:**

Admit that YOUTUBE is a provider of online services or network access, or the operator of facilities there for.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Universal incorporates the General Objections set forth above. In addition, Universal objects to this Request as containing the undefined, vague and ambiguous terms, "provider of online services," "provider of... network access," and "operator of facilities therefor." Universal also objects to this Request as compound. Universal also objects to this Request as calling for a legal conclusion, and thus not the proper subject of a request for admission. In addition, Universal objects to this Request as seeking information that is not relevant to any claim or defense or even reasonably calculated to lead to the discovery of admissible evidence.

***SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 1***:

Subject to and without waiver of its general and specific objections, Universal admits that YouTube operates a website, YouTube.com, and that YouTube provides certain services to its users in an online environment, including inducing its users to upload videos to the site, transcoding the video content into a format that YouTube utilizes to display videos on the site, and then displaying and streaming videos to YouTube users. There has been no discovery of these issues in this litigation. In addition, the question whether the services that YouTube provides meet the legal requirements for a "service provider" under 17 U.S.C. § 512, is a legal question, which is an improper subject for a Request for Admission. Moreover, the proper forum for the resolution of that legal question is *Viacom Int'l, Inc. v. YouTube, Inc.*, USDC SDNY Case No. 07-CV-02103, and *The Football Players Ass'n Premier League Ltd v. YouTube*, USDC SDNY Case No. 07-CV-03582. Except as specifically admitted herein, Universal denies the Request.

**REQUEST FOR ADMISSION NO. 2:**

Admit that YOUTUBE is a provider of online video hosting services.

1    **RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

2         Universal incorporates the General Objections set forth above. In addition, Universal

3    objects to this Request as containing the undefined, vague and ambiguous term, "provider of

4    online video hosting services." Universal also objects to this Request as calling for a legal

5    conclusion, and thus not the proper subject of a request for admission. In addition, Universal

6    objects to this Request as seeking information that is not relevant to any claim or defense or even

7    reasonably calculated to lead to the discovery of admissible evidence.

8    ***SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 2****:*

9         Subject to and without waiver of its general and specific objections, Universal admits that

10   YouTube operates a website, YouTube.com, and that YouTube provides certain services to its

11   users in an online environment, including inducing its users to upload videos to the site,

12   transcoding the video content into a format that YouTube utilizes to display videos on the site,

13   and then displaying and streaming videos to YouTube users.  It is not possible for Universal to

14   know whether the services that YouTube provides constitute "online video hosting services," as

15   used in the Request, because Plaintiff has not defined that term.  There has been no discovery of

16   these issues in this litigation.  In addition, the question whether the services that YouTube

17   provides meet the legal requirements for a "service provider" under 17 U.S.C. § 512, is a legal

18   question, which is an improper subject for a Request for Admission.  Moreover, the proper forum

19   for the resolution of that legal question is *Viacom Int'l, Inc. v. YouTube, Inc.*, USDC SDNY Case

20   No. 07-CV-02103, and *The Football Players Ass'n Premier League Ltd v. YouTube*, USDC

21   SDNY Case No. 07-CV-03582.  Except as specifically admitted herein, Universal denies the

22   Request.

23   **REQUEST FOR ADMISSION NO. 4:**

24        Admit that YOU intended YOUTUBE to remove or disable access to the LENZ VIDEO

25   as a result of the JUNE 4 NOCI.

26   **RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

27        Universal incorporates the General Objections set forth above. In addition, Universal

28   objects to this Request as incorporating undefined, vague and ambiguous terms "intended" and

10608101.1                                              - 8 -                    DEFTS.' SUPPLEMENTAL OBJ. & RESPS.
                                                                                TO PLAINTIFF'S IST SET OF REQUESTS
                                                                                FOR ADMISSIONS CV-07-03783-JF (RS)

1    "as a result of." Subject to and without waiver of its General and Specific Objections, Universal

2    admits that the June 4, 2007 email to YouTube speaks for itself and that it states, among other

3    things, that "we request that you remove the infringing files from the system, or that you disable

4    access to the infringing files." Except as specifically admitted herein, Universal denies the

5    request.

6    ***SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 4:***

7          Subject to and without waiver of its general and specific objections, Universal admits that

8    when it sent the June 4 email notification to YouTube, Universal intended that YouTube would

9    remove or disable access to all of the more than 200 video postings listed on that notification.

10   Except as specifically admitted herein, Universal denies the Request.

11   **REQUEST FOR ADMISSION NO. 16:**

12         Admit that YOU did not consider whether the LENZ VIDEO was a fair use of the

13   copyright in LET'S GO CRAZY prior to sending the JUNE 4 NOCI.

14   **RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

15         Universal incorporates the General Objections set forth above. In addition, Universal

16   objects to this Request as incorporating the undefined, vague, ambiguous and unintelligible

17   phrase, "consider whether the ["Let's Go Crazy" Video] was a fair use of copyright," which

18   phrase also calls for a legal conclusion. Plaintiff fails to provide any definition of what it means to

19   "consider whether [a video posting] is fair use" of a particular work. Plaintiff fails to specify, for

20   example, whether that means giving thought, consideration, or analysis — and if so, how much

21   — to one or more of the factors set forth in sub-paragraphs (1) through (4) of 17 U.S.C. § 107;

22   whether — and, if so, to what extent — it means giving thought, consideration or analysis to

23   other factors that a court might consider if presented with a fair-use defense; or whether — and if

24   so, to what extent it means giving thought, consideration, or analysis to matters that can be known

25   only to the person posting a video, including issues involving the purpose of such posting.

26   Universal further objects to this Request as incorporating an incorrect legal standard: To the

27   extent the Request is premised on the theory that an entity that sends a notice pursuant to the

28   DMCA must conduct a fair use analysis under 17 U.S.C. § 107, that premise is inconsistent with

10608101.1                              - 9 -                    DEFTS.' SUPPLEMENTAL OBJ. & RESPS.
                                                                TO PLAINTIFF'S IST SET OF REQUESTS
                                                                FOR ADMISSIONS CV-07-03783-JF (RS)

**SER 064**

1   *Rossi v. MPAA*, 391 F.3d 1000 (9th Cir. 2004). It also is inconsistent with this Court's Orders,

2   which make it clear that the DMCA does not require consideration of fair use prior to sending a

3   takedown notice in every case. *See* Order Denying Motion to Certify Interlocutory Appeal, at 4

4   (Oct. 28, 2008). Further, the Court's Orders in this case make it clear that, even to the extent

5   someone sending a notice pursuant to the DMCA may have some obligation to give consideration

6   to the affirmative defense of fair use (a proposition that Universal maintains is inconsistent with

7   the statute and with *Rossi*), there is no requirement of a full investigation of issues that may be

8   related to fair use. Subject to and without waiver of its General and Specific Objections,

9   Universal admits that, prior to the time that Universal sent the email to YouTube that is the

10  subject of Plaintiffs complaint, a Universal employee had watched the Let's Go Crazy video and

11  had considered certain information observable from that video that Universal believes a court

12  could have considered had Plaintiff been sued for copyright infringement (she has not been sued)

13  and had she raised (as she has not done) the affirmative defense of fair use for her admittedly

14  unauthorized use of Let's Go Crazy. Except as specifically admitted herein, Universal denies the

15  request.

16  ### SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 16:

17          Subject to and without waiver of its general and specific objections, Universal further

18  responds as follows:  The Request does not define what it means to "consider fair use."  None of

19  the Court's Orders in this case define what it means to "consider fair use" in the context of

20  sending a notice that may be subject to the provisions of 17 U.S.C. § 512, including § 512(f).  The

21  April 20, 2010 Order states that the Request "asks whether [Universal] undertook any fair use

22  analysis whatsoever prior to sending the June 4, 2007 takedown notice."  Based on that

23  construction of the term "consider fair use," Universal admits that it considered various factors

24  that are relevant to a fair use analysis prior to sending the June 4, 2007 email notification to

25  YouTube regarding Plaintiff's "Let's Go Crazy" posting.  In this regard, an employee within the

26  legal and business affairs department, Sean Johnson, had reviewed Plaintiff's "Let's Go Crazy"

27  video posting, and all of the other of the more than 200 postings listed on that notification.

28  Indeed, Mr. Johnson reviewed Plaintiff's posting more than once and considered numerous

10608101.1                          - 10 -                DEFTS.' SUPPLEMENTAL OBJ. & RESPS.
                                                          TO PLAINTIFF'S 1ST SET OF REQUESTS
                                                          FOR ADMISSIONS CV-07-03783-JF (RS)

factors apparent from the face of Plaintiff's "Let's Go Crazy" posting, including: that the sound recording embodying the composition "Let's Go Crazy" played loudly and clearly and was synchronized with the image in the video posting; that the song played throughout the entire video, which was just under 30 seconds in length; that the title of the posting was "Let's Go Crazy #1"; the a voice audibly and clearly asks the children in the video posting, "What do you think of the music"; that "Let's Go Crazy" is a significant musical composition, and one of the most popular in Prince's songwriting catalogue; that the use in Plaintiff's posting to the YouTube service had not been authorized; and that the musical work "Let's Go Crazy" is a predominant focus of the posting to YouTube, which is a commercial, for profit service. Universal believes that the nature of the review that Universal undertook constitutes some type of "fair use analysis whatsoever." In admitting its belief in this regard, Universal notes that certain other facts that would inform a fair use analysis in the event fair use were to be raised as an affirmative defense to a claim of copyright infringement – which has not happened – by definition were not and could not be known to Mr. Johnson or anyone at Universal as of June 4, 2007. These additional facts include the full facts relevant to the nature, purpose and character of Plaintiff's posting, as well Plaintiff's good faith and the equitableness of her conduct in posting and maintaining the posting of the "Let's Go Crazy" video to YouTube; all such factors would be relevant to a complete fair use analysis, since as the Supreme Court has held, fair use is an equitable rule of reason, which must be decided based on the facts specific to each use claimed to be fair use, and where many such facts are exclusively within the knowledge or control of the person asserting that their use is a fair use. *See Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985). Except as specifically admitted herein, Universal denies the Request.

**REQUEST FOR ADMISSION NO. 26:**

Admit that YOU have never granted a SYNCHRONIZATION license for any HOME VIDEO for any PRINCE copyrights YOU administer.

**RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

Universal incorporates the General Objections set forth above, including without limitation Universal's objections to the vague, ambiguous and unintelligible nature of any

10608101.1

- 11 -

DEFTS.' SUPPLEMENTAL OBJ. & RESPS. TO PLAINTIFF'S IST SET OF REQUESTS FOR ADMISSIONS CV-07-03783-JF (RS)

**SER 066**

1  Request (such as this one) incorporating the defined term "Home Video." Subject to and without

2  waiver of the foregoing General and Specific Objections, Universal responds that, following a

3  search of reasonable diligence, Universal has produced to Plaintiff any agreement since January

4  1, 2005 that specifically licenses the musical composition "Let's Go Crazy" for synchronization

5  with audio-visual images. Because the Request as drafted is unintelligible, Universal is not

6  capable of further responding to the Request.

7  ### *SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 26:*

8  Subject to and without waiver of its general and specific objections, Universal further

9  responds as follows:  Using the definition of "Home Video" supplied by Plaintiff which is

10  nowhere to be found in copyright law, and reiterated by Plaintiff throughout the briefing on her

11  motion preceding the April 20, 2010 Order, Universal admits that no one has ever requested that

12  Universal, as the administrator of the copyrights in Prince's musical compositions, grant a license

13  to synchronize any of those compositions with visual images recorded on a camcorder, mobile

14  phone with video capacity, or a digital camera, for purely personal, noncommercial use (which

15  use by definition excludes posting to YouTube, which is a commercial, for-profit website), or to

16  allow the exercise of any of the other exclusive rights of a copyright holder under 17 U.S.C. § 106

17  for any such use with any "Home Video"; and that Universal therefore never has had to evaluate

18  whether to grant, and thus never has granted, any such license for any such use.  Except as

19  specifically admitted herein, Universal denies the Request.

20  ### **REQUEST FOR ADMISSION NO. 29:**

21  Admit that, as of June 4, 2007, PRINCE had instructed YOU not to license the

22  SYNCHRONIZATION, to audio-visual works displayed on YouTube, of any of his musical

23  compositions that YOU administer.

24  ### **RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

25  Universal incorporates the General Objections set forth above. Universal further objects to

26  this Request as vague, ambiguous and unintelligible, and incorporating the undefined, vague and

27  ambiguous terms "instructed" and "to audio-visual works displayed on YouTube." Universal

28  further objects to this Request on the ground that it seeks information that is irrelevant and not

1  reasonably calculated to lead to the discovery of admissible evidence. The Request by its terms

2  has nothing to do with Plaintiffs "Let's Go Crazy" video.

3  ***SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 29:***

4         Subject to and without waiver of its general and specific objections, Universal admits that,

5  prior to June 4, 2007, Prince, who is the owner of the musical compositions, had conveyed to

6  Universal, which administers his compositions, that he objected to the unauthorized posting of

7  user-generated videos embodying his musical compositions on YouTube.  Except as specifically

8  admitted herein, Universal denies the Request.

9  **REQUEST FOR ADMISSION NO. 32:**

10        Admit that YOU have never licensed any exclusive right under 17 U.S.C. § 106 for any

11  PRINCE copyrights YOU administer to any creator of any HOME VIDEO for use in such a

12  video.

13  **RESPONSE TO REQUEST FOR ADMISSION NO. 32:**

14        Universal incorporates the General Objections set forth above, including without

15  limitation Universal's objections to the vague, ambiguous and unintelligible nature of any

16  Request (such as this one) incorporating the defined term "Home Video," as well as Universal's

17  General Objection regarding the time period purported to be covered by these Requests.  Subject

18  to and without waiver of the foregoing General and Specific Objections, Universal responds that,

19  following a search of reasonable diligence, Universal has produced to Plaintiff any agreement

20  since January 1, 2005 that specifically licenses the musical composition "Let's Go Crazy" for

21  synchronization with audio-visual images. Because the Request as drafted is unintelligible,

22  Universal is not capable of further responding to the Request.

23  ***SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 32:***

24        Subject to and without waiver of its general and specific objections, Universal further

25  responds as follows:  Using the definition of "Home Video" supplied by Plaintiff which is

26  nowhere to be found in copyright law, and reiterated by Plaintiff throughout the briefing on her

27  motion  preceding the April 20, 2010 Order, Universal admits that no one has ever requested that

28  Universal, as the administrator of the copyrights in Prince's musical compositions, grant a license

10608101.1                          - 13 -

DEFTS.' SUPPLEMENTAL OBJ. & RESPS.
TO PLAINTIFF'S 1ST SET OF REQUESTS
FOR ADMISSIONS CV-07-03783-JF (RS)

to synchronize any of those compositions with visual images recorded a camcorder, mobile phone with video capacity, or a digital camera, for purely personal, noncommercial use (which use by definition excludes posting to YouTube, which is a commercial, for-profit website), or to allow the exercise of any of the other exclusive rights of a copyright holder under 17 U.S.C. § 106 for any such use with any "Home Video"; and that Universal therefore never has had to evaluate whether to grant, and thus never has granted, any such license for any such use. Except as specifically admitted herein, Universal denies the Request.

**REQUEST FOR ADMISSION NO. 33:**

Admit that, to YOUR knowledge, PRINCE has never licensed any exclusive right under 17 U.S.C. §106 for LET'S GO CRAZY to any creator of any HOME VIDEO for use in such video.

**RESPONSE TO REQUEST FOR ADMISSION NO. 33:**

Universal incorporates the General Objections set forth above, including without limitation Universal's objections to the vague, ambiguous and unintelligible nature of any Request (such as this one) incorporating the defined term "Home Video," as well as Universal's General Objections regarding the vague and ambiguous term, "Prince," and the time period purported to be covered by these Requests. Subject to and without waiver of the foregoing General and Specific Objections, Universal responds that, following a search of reasonable diligence, Universal has produced to Plaintiff any agreement since January 1, 2005 that specifically licenses the musical composition "Let's Go Crazy" for synchronization with audio-visual images. Because the Request as drafted is unintelligible, Universal is not capable of further responding to the Request.

**_SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 33:_**

Subject to and without waiver of its general and specific objections, Universal further responds as follows: Using the definition of "Home Video" supplied by Plaintiff which is nowhere to be found in copyright law, and reiterated by Plaintiff throughout the briefing on her motion preceding the April 20, 2010 Order, Universal admits that, to its knowledge from the time that Universal has been the administrator of Prince's compositions, no one has ever requested that

DEFTS.' SUPPLEMENTAL OBJ. & RESPS. TO PLAINTIFF'S IST SET OF REQUESTS FOR ADMISSIONS CV-07-03783-JF (RS)

**SER 069**

1    Prince grant a license to synchronize any of the compositions that Universal administers with

2    visual images created using a camcorder, mobile phone with video capacity, or a digital camera,

3    for a purely personal, noncommercial use (which use by definition excludes posting to YouTube,

4    which is a commercial, for-profit website), or to allow the exercise of any of the other exclusive

5    rights of a copyright holder under 17 U.S.C. § 106 for any such use with any "Home Video"; and

6    that, to Universal's knowledge during such time, Prince has not had to had to evaluate whether to

7    grant, and thus never has granted, a license to allow such use in any such "Home Video." Except

8    as specifically admitted herein, Universal denies the Request.

9    **REQUEST FOR ADMISSION NO. 35:**

10        Admit that, as of June 4, 2007, PRINCE had instructed YOU not to license any exclusive

11    right under 17 U.S.C. § 106 in audio-visual works displayed on YouTube with respect any of his

12    musical compositions that YOU administer.

13    **RESPONSE TO REQUEST FOR ADMISSION NO. 35:**

14        Universal incorporates the General Objections set forth above. Universal further objects to

15    this Request as vague, ambiguous and unintelligible, and incorporating the undefined, vague and

16    ambiguous terms "instructed" and "in audio-visual works displayed on YouTube." Universal

17    further objects to this Request on the ground that it seeks information that is irrelevant and not

18    reasonably calculated to lead to the discovery of admissible evidence. The Request by its terms

19    has nothing to do with Plaintiffs "Let's Go Crazy" video.

20    ***SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 35:***

21        Subject to and without waiver of its general and specific objections, Universal admits that,

22    prior to June 4, 2007, Prince, who is the owner of the musical compositions, had conveyed to

23    Universal, which administers his compositions, that he objected to the unauthorized posting of

24    user-generated videos embodying his musical compositions on YouTube. Except as specifically

25    admitted herein, Universal denies the Request.

26    **REQUEST FOR ADMISSION NO.38:**

27        Admit that LENZ's use of the LENZ VIDEO did not affect the value of LET'S GO

28    CRAZY by any quantifiable amount.

**RESPONSE TO REQUEST FOR ADMISSION NO. 38:**

Universal incorporates the General Objections set forth above. Universal further objects to this Request as incorporating the undefined, vague and ambiguous phrases "Lenz's use," "affect the value of" and "quantifiable amount." The Request further is vague and ambiguous as to time. Is Plaintiff referring to Lenz's initial posting of the "Let's Go Crazy" video? To her use of that video, including through repeated disparagement of the artist and the composition through multiple forms of media in more than two years since that time? Because of the ambiguous and unintelligible nature of the Request, the Request is not capable of being admitted or denied. Universal further objects to this Request as calling for a legal conclusion, and as seeking irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Universal further objects to this Request as incorporating an incorrect legal standard: To the extent the Request is premised on the theory that an entity that sends a notice pursuant to the DMCA must conduct a fair use analysis under 17 U.S.C. § 107, that premise is inconsistent with *Rossi v. MPAA*, 391 F.3d 1000 (9th Cir. 2004). It also is inconsistent with this Court's Orders, which make it clear that the DMCA does not require consideration of fair use prior to sending a takedown notice in every case. *See* Order Denying Motion to Certify Interlocutory Appeal, at 4 (Oct. 28, 2008). Further, the Court's Orders in this case make it clear that, even to the extent someone sending a notice pursuant to the DMCA may have some obligation to give consideration to the affirmative defense of fair use (a proposition that Universal maintains is inconsistent with the statute and with *Rossi*), there is no requirement of a full investigation of issues that may be related to fair use. Universal further objects to the Request as incorporating the incorrect standard for fair use under 17 U.S.C. § 107, even to the extent that the four factors under that statute would be relevant to any type of fair use investigation: the test under the fourth fair use factor is never limited just to effect that a *particular* infringing use may have on the potential market for or value of the copyrighted work. The test, as set forth in the statute and confirmed by the Supreme Court, is "whether *unrestricted and widespread conduct of the sort engaged in by the defendant...* would result in a substantially adverse impact on the potential market for the original." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994) (quotation omitted) (emphasis added).

DEFTS.' SUPPLEMENTAL OBJ. & RESPS. TO PLAINTIFF'S IST SET OF REQUESTS FOR ADMISSIONS CV-07-03783-JF (RS)

**SER 071**

1  Universal further objects to the Request as assuming an incorrect standard for what constitutes

2  compensable harm under the Copyright Act. Specifically, the Request assumes that only losses

3  that can be quantified constitute compensable harm under the Copyright Act. That is incorrect.

4  The Copyright Act allows a copyright plaintiff the option to elect to recover statutory damages,

5  17 U.S.C. § 505(c), the purpose of which, *inter alia*, is to compensate the copyright plaintiff in

6  cases where its losses cannot be quantified.

7  ***SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 38:***

8        Subject to and without waiver of its general and specific objections, Universal admits that

9  Plaintiff's "Let's Go Crazy" posting to YouTube has affected the value of the copyright in "Let's

10  Go Crazy" by an amount that is theoretically quantifiable, although it would be difficult to

11  quantify that amount with precision, and the Copyright Act and binding case law decided

12  thereunder recognize that a copyright owner does not have to quantify such an amount.  Except as

13  specifically admitted herein, Universal denies the Request.

14  **REQUEST FOR ADMISSION NO. 41:**

15        Admit that, as of June 4, 2007, YOU had not instructed Sean Johnson that fair use of a

16  copyrighted work is not an infringement of copyright.

17  **RESPONSE TO REQUEST FOR ADMISSION NO. 41:**

18        Universal incorporates the General Objections set forth above. Universal further objects to

19  this Request as incorporating the undefined, vague and ambiguous terms "instructed," "fair use of

20  a copyrighted work" and "not an infringement of copyright." There is no supplied definition that

21  would enable Universal to construe what is meant by instructing someone "that fair use of a

22  copyrighted work is not an infringement of copyright." Does Plaintiff mean informing a person

23  that there is an affirmative defense to a claim of copyright infringement under 17 U.S.C. § 107?

24  Does Plaintiff mean telling such a person what the statute says, including its enumerated factors

25  for a court to consider in the event of such a lawsuit? Does Plaintiff purport to mean something

26  else? Universal further objects to this Request as incorporating an incorrect legal standard: To the

27  extent the Request is premised on the theory that an entity that sends a notice pursuant to the

28  DMCA must conduct a fair use analysis under 17 U.S.C. § 107, that premise is inconsistent with

- 17 -

1   *Rossi v. MPAA*, 391 F.3d 1000 (9th Cir. 2004). It also is inconsistent with this Court's Orders,

2   which make it clear that the DMCA does not require consideration of fair use prior to sending a

3   takedown notice in every case. *See* Order Denying Motion to Certify Interlocutory Appeal, at 4

4   (Oct. 28, 2008). Further, the Court's Orders in this case make it clear that, even to the extent

5   someone sending a notice pursuant to the DMCA may have some obligation to give consideration

6   to the affirmative defense of fair use (a proposition that Universal maintains is inconsistent with

7   the statute and with *Rossi*), there is no requirement of a full investigation of issues that may be

8   related to fair use. Because of the ambiguous and unintelligible nature of the Request, the Request

9   is not capable of being admitted or denied.

10  ***SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 41:***

11      Subject to and without waiver of its general and specific objections, because it is not an

12  accurate statement of the law to say "that fair use of a copyrighted work is not an infringement of

13  copyright," Universal admits that as of June 4, 2007, it had not given such an instruction to Sean

14  Johnson; indeed, any such instruction would have been contrary to well-established law from the

15  Supreme Court and the Ninth Circuit.  The Supreme Court and Ninth Circuit have confirmed

16  repeatedly that fair use under the Copyright Act is an affirmative defense to a claim of

17  infringement, and that the question whether a particular use is a "fair use" is reached only when a

18  litigant in a case of copyright infringement raises and then sustains their burden of proving that

19  defense. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994); *Perfect 10, Inc. v.*

20  *Amazon.com, Inc.*, 487 F.3d 701, 719 (9th Cir. 2007).  The rule that fair use is an affirmative

21  defense, and that the person asserting it must raise it and support the defense, necessarily follows

22  from the factors that inform the defense, many of which depend upon facts and circumstances that

23  only can be known to the person asserting that their use is a fair use.  As the Supreme Court has

24  held, fair use is an equitable rule of reason, which must be decided based on the facts specific to

25  each use claimed to be fair use, and where many such facts are exclusively within the knowledge

26  or control of the person asserting that their use is a fair use.  *See Harper & Row, Publishers, Inc.*

27  *v. Nation Enters.*, 471 U.S. 539, 560 (1985).  Except as specifically admitted herein, Universal

28  denies the Request.

DEFTS.' SUPPLEMENTAL OBJ. & RESPS.
TO PLAINTIFF'S IST SET OF REQUESTS
FOR ADMISSIONS CV-07-03783-JF (RS)

**SER 073**

1  **REQUEST FOR ADMISSION NO. 42:**

2       Admit that, as of June 4, 2007, YOU had not instructed Sean Johnson to consider fair use

3  when reviewing YouTube videos for copyright infringement.

4  **RESPONSE TO REQUEST FOR ADMISSION NO. 42:**

5       Universal incorporates the General Objections set forth above. Universal further objects to

6  this Request as incorporating the undefined, vague and ambiguous terms "instructed," "fair use,"

7  "when reviewing" and "copyright infringement." There is no supplied definition that would

8  enable Universal to construe what is meant by "instruct[ing]" someone "to consider fair use."

9  Does Plaintiff mean informing a person that there is an affirmative defense to a claim of

10  copyright infringement under 17 U.S.C. § 107? Does Plaintiff mean telling such a person what

11  the statute says, including its enumerated factors for a court to consider in the event of such a

12  lawsuit? Does Plaintiff mean that a person should be sent to attend a course on copyright law, to

13  read decisions applying the fair use defense, or to read Nimmer on Copyright? Or does Plaintiff

14  purport to mean something else? Plaintiff also fails to provide any definition of what it means to

15  "consider fair use" of a particular work. Plaintiff fails to specify whether that means giving

16  thought, consideration, or analysis — and if so, how much to one or more of the factors set forth

17  in sub-paragraphs (1) through (4) of 17 U.S.C. § 107; whether — and, if so, to what extent — it

18  means giving thought, consideration or analysis to other factors that a court might consider if

19  presented with a fair-use defense; or whether — and if so, to what extent — it means giving

20  thought. consideration, or analysis to matters that can be known only to the person posting a

21  video, including issues involving the purpose of such posting. Universal further objects to this

22  Request as incorporating an incorrect legal standard: To the extent the Request is premised on the

23  theory that an entity that sends a notice pursuant to the DMCA must conduct a fair use analysis

24  under 17 U.S.C. § 107, that premise is inconsistent with *Rossi v. MPAA*, 391 F.3d 1000 (9th Cir.

25  2004). It also is inconsistent with this Court's Orders, which make it clear that the DMCA does

26  not require consideration of fair use prior to sending a takedown notice in every case. *See* Order

27  Denying Motion to Certify Interlocutory Appeal, at 4 (Oct. 28, 2008). Further, the Court's Orders

28  in this case make it clear that, even to the extent someone sending a notice pursuant to the DMCA

DEFTS.' SUPPLEMENTAL OBJ. & RESPS.
TO PLAINTIFF'S 1ST SET OF REQUESTS
FOR ADMISSIONS CV-07-03783-JF (RS)

**SER 074**

1   may have some obligation to give consideration to the affirmative defense of fair use (a

2   proposition that Universal maintains is inconsistent with the statute and with *Rossi*), there is no

3   requirement of a full investigation of issues that may be related to fair use. Because of the

4   ambiguous and unintelligible nature of the Request, the Request is not capable of being admitted

5   or denied.

6   ### *SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 42:*

7           Subject to and without waiver of its general and specific objections, Universal further

8   responds as follows: The Request does not define what it means to "consider fair use." None of

9   the Court's Orders in this case define what it means to "consider fair use" in the context of

10  sending a notice that may be subject to the provisions of 17 U.S.C. § 512, including § 512(f). The

11  April 20, 2010 Order states that the term "consider fair use" as used in the Requests "asks

12  whether [Universal] undertook any fair use analysis whatsoever prior to sending the June 4, 2007

13  takedown notice." Based on that construction of the term "consider fair use," Universal admits

14  that, as of June 4, 2007, Mr. Johnson was provided and followed guidelines to determine whether

15  a musical composition was the focus of any particular user-generated posting to YouTube.

16  Universal believes that the nature of the guidelines provided to and followed by Mr. Johnson

17  constitute some type of "fair use analysis whatsoever." In admitting its belief in this regard,

18  Universal notes that certain facts that would inform a fair use analysis in the event fair use were

19  to be raised as an affirmative defense to a claim of copyright infringement, by definition were not

20  and could not be known to Mr. Johnson in his review of postings to YouTube as of June 4, 2007.

21  These additional facts include the full facts relevant to the nature, purpose and character of any

22  particular user's posting, as well as the user's good faith and equitable conduct in posting and

23  maintaining a posting to YouTube; all such factors would be relevant to a complete fair use

24  analysis, since as the Supreme Court has held, fair use is an equitable rule of reason, which must

25  be decided based on the facts specific to each use claimed to be fair use, and where many such

26  facts are exclusively within the knowledge or control of the person asserting that their use is a fair

27  use. *See Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985). Except as

28  specifically admitted herein, Universal denies the Request.

DEFTS.' SUPPLEMENTAL OBJ. & RESPS.
TO PLAINTIFF'S IST SET OF REQUESTS
FOR ADMISSIONS CV-07-03783-JF (RS)

1    **REQUEST FOR ADMISSION NO. 43:**

2         Admit that Sean Johnson did not consider fair use when reviewing the LENZ VIDEO.

3    **RESPONSE TO REQUEST FOR ADMISSION NO. 43:**

4         Universal incorporates the General Objections set forth above. Universal further objects to

5    this Request as incorporating the undefined, vague and ambiguous terms "consider" "fair use,"

6    "when reviewing the ["Let's Go Crazy" Video]." There is no supplied definition that would

7    enable Universal to construe what is meant by "consider[ing] fair use." Plaintiff fails to specify

8    whether that means giving thought, consideration, or analysis — and if so, how much — to one

9    or more of the factors set forth in sub-paragraphs (1) through (4) of 17 U.S.C. § 107; whether —

10   and, if so, to what extent — it means giving thought, consideration or analysis to other factors

11   that a court might consider if presented with a fair-use defense; or whether — and if so, to what

12   extent — it means giving thought, consideration, or analysis to matters that can be known only to

13   the person posting a video, including issues involving the purpose of such posting. Universal

14   further objects to this Request as incorporating an incorrect legal standard: To the extent the

15   Request is premised on the theory that an entity that sends a notice pursuant to the DMCA must

16   conduct a fair use analysis under 17 U.S.C. § 107, that premise is inconsistent with *Rossi v.*

17   *MPAA*, 391 F.3d 1000 (9th Cir. 2004). It also is inconsistent with this Court's Orders, which

18   make it clear that the DMCA does not require consideration of fair use prior to sending a

19   takedown notice in every case. *See* Order Denying Motion to Certify Interlocutory Appeal, at 4

20   (Oct. 28, 2008). Further, the Court's Orders in this case make it clear that, even to the extent

21   someone sending a notice pursuant to the DMCA may have some obligation to give consideration

22   to the affirmative defense of fair use (a proposition that Universal maintains is inconsistent with

23   the statute and with *Rossi*), there is no requirement of a full investigation of issues that may be

24   related to fair use. Subject to and without waiver of its General and Specific Objections,

25   Universal admits that, prior to the time that Universal sent the email to YouTube that is the

26   subject of the Plaintiffs complaint, Sean Johnson had watched the Let's Go Crazy video and had

27   considered certain information observable from that video that Universal believes a court could

28   have considered had Plaintiff been sued for copyright infringement (she has not been sued) and

DEFTS.' SUPPLEMENTAL OBJ. & RESPS.
TO PLAINTIFF'S IST SET OF REQUESTS
FOR ADMISSIONS CV-07-03783-JF (RS)
**SER 076**

1    had she raised (as she has not done) the affirmative defense of fair use for her admittedly

2    unauthorized use of Let's Go Crazy. Except as specifically admitted herein, Universal denies the

3    request.

4    ***SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 43***:

5         Subject to and without waiver of its general and specific objections, Universal further

6    responds as follows:  The Request does not define what it means to "consider fair use."  None of

7    the Court's Orders in this case define what it means to "consider fair use" in the context of

8    sending a notice that may be subject to the provisions of 17 U.S.C. § 512, including § 512(f).  The

9    April 20, 2010 Order states that the term "consider fair use" as used in the Requests "asks

10   whether [Universal] undertook any fair use analysis whatsoever prior to sending the June 4, 2007

11   takedown notice."  Based on that construction of the term "consider fair use," Universal admits

12   that Mr. Johnson considered various factors that are relevant to a fair use analysis when reviewing

13   Plaintiff's unauthorized "Let's Go Crazy" posting.  Mr. Johnson reviewed Plaintiff's posting

14   more than once and considered numerous factors apparent from the face of Plaintiff's "Let's Go

15   Crazy" posting, including: that the sound recording embodying the composition "Let's Go Crazy"

16   played loudly and clearly and was synchronized with the image in the video posting; that the song

17   played throughout the entire video, which was just under 30 seconds in length; that the title of the

18   posting was "Let's Go Crazy #1"; the a voice audibly and clearly asks the children in the video

19   posting, "What do you think of the music"; that "Let's Go Crazy" is a significant musical

20   composition, and one of the most popular in Prince's songwriting catalogue; that the use in

21   Plaintiff's posting to the YouTube service had not been authorized; and that the musical work

22   "Let's Go Crazy" is a predominant focus of the posting to YouTube, which is a commercial, for

23   profit service.  Universal believes that the nature of the review that Mr. Johnson undertook

24   constitutes some type of "fair use analysis whatsoever." In admitting its belief in this regard,

25   Universal notes that certain other facts that would inform a fair use analysis in the event fair use

26   were to be raised as an affirmative defense to a claim of copyright infringement – which has not

27   happened – by definition were not and could not be known to Mr. Johnson as of June 4, 2007.

28   These additional facts include the full facts relevant to the nature, purpose and character of

1    Plaintiff's posting, as well Plaintiff's good faith and the equitableness of her conduct in posting

2    and maintaining the posting of the "Let's Go Crazy" video to YouTube; all such factors would be

3    relevant to a complete fair use analysis, since as the Supreme Court has held, fair use is an

4    equitable rule of reason, which must be decided based on the facts specific to each use claimed to

5    be fair use, and where many such facts are exclusively within the knowledge or control of the

6    person asserting that their use is a fair use. *See Harper & Row, Publishers, Inc. v. Nation Enters.*,

7    471 U.S. 539, 560 (1985). Except as specifically admitted herein, Universal denies the Request.

8    **REQUEST FOR ADMISSION NO. 54:**

9        Admit that the LENZ VIDEO is not a substitute for LET'S GO CRAZY in any actual

10   market for that composition of which YOU are aware.

11   **RESPONSE TO REQUEST FOR ADMISSION NO. 54:**

12       Universal incorporates the General Objections set forth above. Universal further objects to

13   this Request as incorporating the undefined, vague, ambiguous and unintelligible terms

14   "substitute for Let's Go Crazy," and "in any actual market." Plaintiff is unclear what she means

15   by her posting being "a substitute for Let's Go Crazy." Universal further objects to the Request as

16   calling for a legal conclusion and as seeking irrelevant information not reasonably calculated to

17   lead to the discovery of admissible evidence. Universal further objects to the Request as

18   incorporating an incorrect legal standard, including in its implicit definition of the fair use

19   defense, as well as its implicit premise that an entity that sends a notice pursuant to the DMCA

20   must conduct a fair use analysis under 17 U.S.C. § 107. That premise is inconsistent with *Rossi v.*

21   *MPAA*, 391 F.3d 1000 (9th Cir. 2004). It also is inconsistent with this Court's Orders, which

22   make it clear that the DMCA does not require consideration of fair use prior to sending a

23   takedown notice in every case. *See* Order Denying Motion to Certify Interlocutory Appeal, at 4

24   (Oct. 28, 2008). Further, the Court's Orders in this case make it clear that, even to the extent

25   someone sending a notice pursuant to the DMCA may have some obligation to give consideration

26   to the affirmative defense of fair use (a proposition that Universal maintains is inconsistent with

27   the statute and with *Rossi*), there is no requirement of a full investigation of issues that may be

28   related to fair use. Because of the ambiguous and unintelligible nature of the Request, the Request

DEFTS.' SUPPLEMENTAL OBJ. & RESPS.
TO PLAINTIFF'S IST SET OF REQUESTS
FOR ADMISSIONS CV-07-03783-JF (RS)

**SER 078**

1  is not capable of being admitted or denied.

2  ### SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 54:

3  Subject to and without waiver of its general and specific objections, Universal admits that

4  unrestricted and widespread uses of a similar nature to Plaintiff's posting would serve as a

5  substitute for the authorized dissemination of the musical composition "Let's Go Crazy."

6  Universal further admits that, even if Plaintiff's unauthorized posting of the "Let's Go Crazy"

7  video were reviewed in isolation – a standard that is contrary to the standards for fair use set forth

8  by the Supreme Court – Plaintiff's unauthorized posting would serve as a substitute for the

9  authorized dissemination of the musical composition "Let's Go Crazy." Except as specifically

10  admitted herein, Universal denies the Request.

11  ### REQUEST FOR ADMISSION NO. 55:

12  Admit that the LENZ VIDEO is not a substitute for LET' S GO CRAZY in any potential

13  market for that composition of which YOU are aware.

14  ### RESPONSE TO REQUEST FOR ADMISSION NO. 55:

15  Universal incorporates the General Objections set forth above. Universal further objects to

16  this Request as incorporating the undefined, vague, ambiguous and unintelligible terms

17  "substitute for Let's Go Crazy," and "in any potential market." Plaintiff is unclear what she

18  means by her posting being "a substitute for Let's Go Crazy." Universal further objects to the

19  Request as calling for a legal conclusion and as seeking irrelevant information not reasonably

20  calculated to lead to the discovery of admissible evidence. Universal further objects to the

21  Request as incorporating an incorrect legal standard, including in its implicit definition of the fair

22  use defense, as well as its implicit premise that an entity that sends a notice pursuant to the

23  DMCA must conduct a fair use analysis under 17 U.S.C. § 107. That premise is inconsistent with

24  *Rossi v. MPAA*, 391 F.3d 1000 (9th Cir. 2004). It also is inconsistent with this Court's Orders,

25  which make it clear that the DMCA does not require consideration of fair use prior to sending a

26  takedown notice in every case. *See* Order Denying Motion to Certify Interlocutory Appeal, at 4

27  (Oct. 28, 2008). Further, the Court's Orders in this case make it clear that, even to the extent

28  someone sending a notice pursuant to the DMCA may have some obligation to give consideration

DEFTS.' SUPPLEMENTAL OBJ. & RESPS.
TO PLAINTIFF'S IST SET OF REQUESTS
FOR ADMISSIONS CV-07-03783-JF (RS)

1   to the affirmative defense of fair use (a proposition that Universal maintains is inconsistent with

2   the statute and with *Rossi*), there is no requirement of a full investigation of issues that may be

3   related to fair use. Because of the ambiguous and unintelligible nature of the Request, the Request

4   is not capable of being admitted or denied.

5   ***SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 55:***

6         Subject to and without waiver of its general and specific objections, Universal denies the

7   Request.

8

9   DATED: May 3, 2010                MUNGER, TOLLES & OLSON, LLP

10

11                       By: _____
                                    KELLY M. KLAUS

12                       Attorneys for Defendants

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFTS.' SUPPLEMENTAL OBJ. & RESPS.
TO PLAINTIFF'S IST SET OF REQUESTS
FOR ADMISSIONS CV-07-03783-JF (RS)

**SER 080**

1

## **VERIFICATION**

2

3    I have read the foregoing DEFENDANTS' SUPPLEMENTAL OBJECTIONS AND

4   RESPONSES TO PLAINTIFF STEPHANIE LENZ'S FIRST SET OF REQUESTS FOR

5   ADMISSION, REQUESTS 1, 2, 4, 16, 26, 29, 32, 33, 35, 38, 41, 42, 43, 54 and 55, and know its

6   contents.

7    I am authorized to make this verification by and on behalf of Defendants, and I make this

8   verification for that reason.   I am informed and believe that the matters stated in the foregoing

9   document are true.

10    Executed on May 5, , 2010, at Los Angeles, California.

11    I declare under penalty of perjury under the laws of the United States that the foregoing is

12   true and correct.

13

14

15

16   Robert Allen

17

18

19

20

21

22

23

24

25

26

27

28

10595553.1

VERIFICATION

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

      I, the undersigned, declare that I am over the age of 18 and not a party to the within cause. I am employed by Munger, Tolles & Olson LLP in the County of Los Angeles, State of California. My business address is 355 South Grand Avenue, Thirty-Fifth Floor, Los Angeles, California 90071-1560.

      On May 3, 2010, I served upon the interested parties in this action the foregoing document described as: **DEFENDANTS' SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFF STEPHANIE LENZ'S FIRST SET OF REQUESTS FOR ADMISSIONS**

☒    By placing ☒ the original(s) ☒ a true and correct copy thereof, as set out below, in an addressed, sealed envelope(s) clearly labeled to identify the persons being served at the addresses set forth on the attached service list.

☒    **BY MAIL (AS INDICATED ON THE ATTACHED SERVICE LIST)** I caused such envelope(s) to be placed in interoffice mail for collection and deposit in the United States Postal Service at 355 South Grand Avenue, Thirty-Fifth Floor, Los Angeles, California, on that same date, following ordinary business practices. I am familiar with Munger, Tolles & Olson LLP's practice for collection and processing correspondence for mailing with the United States Postal Service; in the ordinary course of business, correspondence placed in interoffice mail is deposited with the United States Postal Service with first class postage thereon fully prepaid on the same day it is placed for collection and mailing.

☐    **BY FEDERAL EXPRESS PRIORITY OVERNIGHT DELIVERY (AS INDICATED ON ATTACHED SERVICE LIST)** I delivered the sealed Federal Express envelope(s) to an employee authorized by Federal Express to receive documents, with delivery fees paid or provided for.

☐    **BY FACSIMILE (AS INDICATED ON ATTACHED SERVICE LIST)** By sending a copy of said document by facsimile machine for instantaneous transmittal via telephone line. The transmission was reported as complete and without error.

☒    **BY E-MAIL (AS INDICATED ON ATTACHED SERVICE LIST)** By sending a copy of said document by email for instantaneous transmittal to the addressees on the attached service list.

☐    **(STATE)** I declare under penalty of perjury that the foregoing is true and correct.

☒    **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on May 3, 2010, at Los Angeles, California.

_____
Jennifer C. Lawlor

10608101.1

Lenz v. Universal Music Corp., et al.,
Case No. C 07-03783-JF
Service List

ELECTRONIC FRONTIER FOUNDATION          (Copy)
Fred Von Lohmann
Kurt Opsahl
Corynne McSherry
454 Shotwell Street
San Francisco, CA 94110
Tel:    (415) 436-9333
Fax:    (415) 436-9993


KEKER & VAN NEST, LLP                   (Original)
Ashok Ramani
Michael S. Kwun
Melissa J. Miksch
710 Sansome Street
San Francisco, CA 94111-1704
Tel:    (415) 391-5400
Fax:    (415) 397-7188
Attorneys for Plaintiff Stephanie Lenz

- 2 -

DEFTS.' SUPPLEMENTAL OBJ. & RESPS.
TO PLAINTIFF'S IST SET OF REQUESTS
FOR ADMISSIONS CV-07-03783-JF (RS)

SER 083

# EXHIBIT K

SER 084

| | |
|---|---|
| **From:** | Eden [edenza@gmail.com] |
| **Sent:** | Tuesday, June 05, 2007 1:02 PM |
| **To:** | copyright@youtube.com |
| **Subject:** | Fwd: Video Removed: Copyright Infringement |

I received this notice via e-mail on June 5, 2007:

  Dear Member:

    This is to notify you that we have removed or disabled access to the following material as a result of a third-party notification by Universal Music Publishing Group claiming that this material is infringing:

    **"Let's Go Crazy" #1:** http://www.youtube.com/watch?v=N1KfJHFWlhQ

    **Please Note:** Repeat incidents of copyright infringement will result in the deletion of your account and all videos uploaded to that account. In order to avoid future strikes against your account, please delete any videos to which you do not own the rights, and refrain from uploading additional videos that infringe on the copyrights of others. For more information about YouTube's copyright policy, please read the Copyright Tips guide.

    If you elect to send us a counter notice, please go to our Help Center to access the instructions.

    Please note that under Section 512(f) of the Copyright Act, any person who knowingly materially misrepresents that material or activity was removed or disabled by mistake or misidentification may be subject to liability.

    Sincerely,
    YouTube, Inc.

I am writing this as a counter notice. I do not believe that the video in question violated copyright or infringed on copyright in any way. It was a 30 second video of my children running around our kitchen, with my one year old son pausing to dance to the music that was playing, "Let's Go Crazy" by Prince. This music was not superimposed on the video but was merely, as I said, playing in the background during the action of the video.

I'm shocked that you allow videos on YouTube that constantly use copyrighted music and film snippets (videos and show taped off television, homemade videos of songs, remixed movie trailers, etc.) yet remove a video like mine – of two small children playing in their home – because of what music was playing in the background. I am appalled and disgusted that my video has been targeted and I feel that YouTube finds it easier to crack down on small users than larger, popular users. I firmly believe that if I had simply titled the video differently, it would never have been noticed.

In accordance with the other information you require:

"I hold a good faith belief that the material was removed or disabled as a result of mistake or misidentification of the material to be removed or disabled."

"The subscriber's name, address, and telephone number"



△π EXHIBIT ⎯11⎯
Deponent Lenz
Date 9/16/05 Rptr. JNK
WWW.DEPOBOOK.COM

1

**SER 085**

Stephanie Lenz, 122 Shaft Rd, Gallitzin, PA 16641, 814.602.5588

I will not include the statement which would allow me to be sued in your court jurisdiction over this video. That it was removed is utterly ridiculous. Whether you reinstate this video is up to you. That you removed it is just about the stupidest thing I've heard of YouTube doing since its inception.

Sincerely,

Stephanie Lenz


---------- Forwarded message ----------
From: **DMCA Notice** <no_reply@support.youtube.com>
Date: Jun 5, 2007 1:46 PM
Subject: Video Removed: Copyright Infringement
To: edenza <eden@piggyhawk.net>

YouTube Broadcast Yourself™

# Dear Member:

This is to notify you that we have removed or disabled access to the following material as a result of a third-party notification by Universal Music Publishing Group claiming that this material is infringing:

**"Let's Go Crazy" #1:** http://www.youtube.com/watch?v=N1KfJHFWlhQ

**Please Note:** Repeat incidents of copyright infringement will result in the deletion of your account and all videos uploaded to that account. In order to avoid future strikes against your account, please delete any videos to which you do not own the rights, and refrain from uploading additional videos that infringe on the copyrights of others. For more information about YouTube's copyright policy, please read the Copyright Tips guide.

If you elect to send us a counter notice, please go to our Help Center to access the instructions.

Please note that under Section 512(f) of the Copyright Act, any person who knowingly materially misrepresents that material or activity was removed or disabled by mistake or misidentification may be subject to liability.

Sincerely,
YouTube, Inc.

Copyright © 2007 YouTube, Inc.

**SER 086**
P-E_000023

| | |
|---|---|
| **From:** | Moffat, Alina |
| **Sent:** | Monday, June 4, 2007 5:30 PM |
| **To:** | 'copyright@youtube.com' |
| **Cc:** | Benjamin, David <David.Benjamin@umusic.com>; Renzer, David <david.renzer@umusic.com>; Allen, Robert <robert.allen@umusic.com>; Johnson, Sean <Sean.Johnson@umusic.com> |
| **Subject:** | Copyright Infringement of Musical Compositions Written in Whole or in Part by Prince Rogers Nelson p/k/a "Prince" |

Monday, June 4, 2007

**VIA E-MAIL (copyright@youtube.com)**
YouTube, Inc.
1000 Cherry Ave.
Second Floor
San Bruno, CA 94066

Re:
http://www.youtube.com/watch?v=rIUaxR_v1i4
http://www.youtube.com/watch?v=B5SkL_KW3_w
http://www.youtube.com/watch?v=qv998JG_i3c
http://www.youtube.com/watch?v=l90HSJKcXVw
http://www.youtube.com/watch?v=4kukZGZ7Dpk
http://www.youtube.com/watch?v=F77o0v3h-0Q
http://www.youtube.com/watch?v=K5XbVWKTMVY
http://www.youtube.com/watch?v=CV9oj_845uA
http://www.youtube.com/watch?v=g5j8f7qOoBk
http://www.youtube.com/watch?v=kdoNchqcDYo
http://www.youtube.com/watch?v=6NNUdSFDWfo
http://www.youtube.com/watch?v=JmZ7ya6se6o
http://www.youtube.com/watch?v=hdd6KgNxhgw
http://www.youtube.com/watch?v=azhX1JLnyIQ
http://www.youtube.com/watch?v=-bRuVomqZHU
http://www.youtube.com/watch?v=ZBDtixdPTks
http://www.youtube.com/watch?v=_b58aaO8c1s
http://www.youtube.com/watch?v=YytKU0nrIPs
http://www.youtube.com/watch?v=iOewTz-aI7c
http://www.youtube.com/watch?v=j8SIscGTQGI
http://www.youtube.com/watch?v=Sq4ArmTVNxc
http://www.youtube.com/watch?v=ajR2_zwnUb4
http://www.youtube.com/watch?v=qlHvMXCVE88
http://www.youtube.com/watch?v=PDJjn8LHRJ8
http://www.youtube.com/watch?v=7cdFKT2xgUs
http://www.youtube.com/watch?v=Gjk7Fwg4viA
http://www.youtube.com/watch?v=Hacix7Ke38U
http://www.youtube.com/watch?v=DloCrT-VbLU
http://www.youtube.com/watch?v=VLm37aU9ru0
http://www.youtube.com/watch?v=h88rHlHGkKY



*Attachment* EX. NO. 70
DATE 2/31/10 WIT A Moffat
VANCE JARVIS CSR 9014

DEPOSITION
EXHIBIT
Johnson 70
1.28.10 MN

**SER 087**

http://www.youtube.com/watch?v=25hqf110sWo
http://www.youtube.com/watch?v=H_LELulak30
http://www.youtube.com/watch?v=tm6UGhxsUWs
http://www.youtube.com/watch?v=zTym4960riE
http://www.youtube.com/watch?v=yrw6XAh40Dk
http://www.youtube.com/watch?v=hQ0Az98pZKQ
http://www.youtube.com/watch?v=DILgOVRT51I
http://www.youtube.com/watch?v=D3rtR8ghZ7k
http://www.youtube.com/watch?v=eMuVO72Rffg
http://www.youtube.com/watch?v=_u1u6a15UZE
http://www.youtube.com/watch?v=QE6JEYYqmjw
http://www.youtube.com/watch?v=zIlQB-km02E
http://www.youtube.com/watch?v=t6wNo0QJAck

**SER 088**

Confidential

UMC-0000621

http://www.youtube.com/watch?v=lwMj501cIOo
http://www.youtube.com/watch?v=ytRyo2ESFzA
http://www.youtube.com/watch?v=9Wy-cAX1MI8
http://www.youtube.com/watch?v=lBhADtUpZEY
http://www.youtube.com/watch?v=_X7ZaRoqzHk
http://www.youtube.com/watch?v=pwBhcVHr4VA
http://www.youtube.com/watch?v=cXB7U5035Lg
http://www.youtube.com/watch?v=S1NOK9ELdBM
http://www.youtube.com/watch?v=KU2Rab3CO9c
http://www.youtube.com/watch?v=HUUKVv_JaYk
http://www.youtube.com/watch?v=keFcTwfyT54
http://www.youtube.com/watch?v=tYApNA3zPTo
http://www.youtube.com/watch?v=EFQUNiOZH2o
http://www.youtube.com/watch?v=RJT2A8OnHFE
http://www.youtube.com/watch?v=Zbf-9WMzoE8
http://www.youtube.com/watch?v=7Bf2SUOfCow
http://www.youtube.com/watch?v=x1coX_q8xR4
http://www.youtube.com/watch?v=vyXHiWLrCWE
http://www.youtube.com/watch?v=IwrkczSkaY8
http://www.youtube.com/watch?v=w88fNsXX4QI
http://www.youtube.com/watch?v=lbUdpt00iIA
http://www.youtube.com/watch?v=X1AcZ-HKp64
http://www.youtube.com/watch?v=SmE9ryZfKVc
http://www.youtube.com/watch?v=OVEFn5wvyY8
http://www.youtube.com/watch?v=Cmu8QEdIoV0
http://www.youtube.com/watch?v=JfYtka03Nwo
http://www.youtube.com/watch?v=7Yjw60RCV3g
http://www.youtube.com/watch?v=QE9kuzGYtoM
http://www.youtube.com/watch?v=xsY5yeop950
http://www.youtube.com/watch?v=2gcQsDj6Tt4
http://www.youtube.com/watch?v=HLiLyzdpD44
http://www.youtube.com/watch?v=GknGLk87aGg
http://www.youtube.com/watch?v=fUxq-HvBS7s
http://www.youtube.com/watch?v=v3N4ZiRFQdk
http://www.youtube.com/watch?v=J-BgAUndpmo
http://www.youtube.com/watch?v=Ns21W6v4xhs
http://www.youtube.com/watch?v=woL79PYj4ms
http://www.youtube.com/watch?v=hdd6KgNxhgw
http://www.youtube.com/watch?v=oa9WN4I_B2A
http://www.youtube.com/watch?v=5UHeXzZ4ejc
http://www.youtube.com/watch?v=yo8W4ejUUtc
http://www.youtube.com/watch?v=8miBeEVjATk
http://www.youtube.com/watch?v=WIZCKsfvh-4
http://www.youtube.com/watch?v=uXXr4RL62As
http://www.youtube.com/watch?v=rqmLcpSU2kU
http://www.youtube.com/watch?v=uC2f6CqES60
http://www.youtube.com/watch?v=2B1b4K1Od-g
http://www.youtube.com/watch?v=N1KfJHFWlbQ
http://www.youtube.com/watch?v=5NGdTnkY9i0
http://www.youtube.com/watch?v=JF79HbAK6Rg
http://www.youtube.com/watch?v=JmZ7ya6se6o

**SER 089**

Confidential

UMC-0000622

http://www.youtube.com/watch?v=oxT69Ays_cU
http://www.youtube.com/watch?v=VGreBD1xOZs
http://www.youtube.com/watch?v=LZFBGe08Fqc
http://www.youtube.com/watch?v=l3kN36j7E04
http://www.youtube.com/watch?v=keeSBZt2XYU
http://www.youtube.com/watch?v=_qklLegfpnk
http://www.youtube.com/watch?v=MQoCoebKtpw
http://www.youtube.com/watch?v=sgAd6jhXkHg
http://www.youtube.com/watch?v=asbp5csVUkQ
http://www.youtube.com/watch?v=Iau8PEh2ML4
http://www.youtube.com/watch?v=Payv76ZNGn8
http://www.youtube.com/watch?v=yeDU_jC-hLs
http://www.youtube.com/watch?v=2GoGYZ401oA
http://www.youtube.com/watch?v=Ae0uqbZ90EQ
http://www.youtube.com/watch?v=1zRWVBON0PU
http://www.youtube.com/watch?v=u-Vd6EKu4Uo
http://www.youtube.com/watch?v=QGzkdk5kwVg
http://www.youtube.com/watch?v=CwMvvaV_-5Y
http://www.youtube.com/watch?v=JF79HbAK6Rg
http://www.youtube.com/watch?v=pzKgB3yXduU
http://www.youtube.com/watch?v=x1HXIAoaxOI
http://www.youtube.com/watch?v=nk_6JVwIXWc
http://www.youtube.com/watch?v=yV5pjNXhe20
http://www.youtube.com/watch?v=ipX_168eb6Y
http://www.youtube.com/watch?v=CuTqnClhfhE
http://www.youtube.com/watch?v=p4LLrVlEKfY
http://www.youtube.com/watch?v=53hJx7fLbH0
http://www.youtube.com/watch?v=hrLTCq_Yjf4
http://www.youtube.com/watch?v=K0b4EGQtWS0
http://www.youtube.com/watch?v=Ie-eHTEPy-M
http://www.youtube.com/watch?v=ceLW7r4fynE
http://www.youtube.com/watch?v=8zhhvRaQEX4
http://www.youtube.com/watch?v=bGLjgCt2se8
http://www.youtube.com/watch?v=3k8WKN8fizk
http://www.youtube.com/watch?v=mYTbb8Yg0J0
http://www.youtube.com/watch?v=5d2YjPeZpUo
http://www.youtube.com/watch?v=pFPDY5Ml_jU
http://www.youtube.com/watch?v=4HKYDy1Ileg
http://www.youtube.com/watch?v=xhzBxicAp60
http://www.youtube.com/watch?v=ScuuOE5HeG4
http://www.youtube.com/watch?v=Yktpc9hMLtl
http://www.youtube.com/watch?v=Y3jiTfMzSyM
http://www.youtube.com/watch?v=ge09zqGqpgQ
http://www.youtube.com/watch?v=7ZNb4zgEIew
http://www.youtube.com/watch?v=oVZcty2ee8k
http://www.youtube.com/watch?v=_rkIphpD4ZQ
http://www.youtube.com/watch?v=aSQq70tSHSs
http://www.youtube.com/watch?v=mpnaFPtDE94
http://www.youtube.com/watch?v=19BRyN3iyxw
http://www.youtube.com/watch?v=7DnP8j0ppqM
http://www.youtube.com/watch?v=-Np_gnYYaS4

Confidential

http://www.youtube.com/watch?v=TSqmvi6Z3wI
http://www.youtube.com/watch?v=5i43_VEUfFU
http://www.youtube.com/watch?v=rmA9QkFrzYU
http://www.youtube.com/watch?v=bpHCtTZulcU
http://www.youtube.com/watch?v=iHO6eWbsfcw
http://www.youtube.com/watch?v=cWZM_cnSkks
http://www.youtube.com/watch?v=dRzfJjPpC4w
http://www.youtube.com/watch?v=roM866A8x7s
http://www.youtube.com/watch?v=V6JsFiR9Djo&mode=related&search=
http://www.youtube.com/watch?v=4VGLLxWx-Jo
http://www.youtube.com/watch?v=UKPuvMh3wC8
http://www.youtube.com/watch?v=Ke6rl-bIPQ0
http://www.youtube.com/watch?v=t94_22mvhDE
http://www.youtube.com/watch?v=Wq-qWmOT9F8
http://www.youtube.com/watch?v=mLU8YiL_jEY
http://www.youtube.com/watch?v=Klyc3WolNzs
http://www.youtube.com/watch?v=0I-VxIQkDgw
http://www.youtube.com/watch?v=udFvkB926fc
http://www.youtube.com/watch?v=gTE36iuFfhQ
http://www.youtube.com/watch?v=GSDNHUVyAxc
http://www.youtube.com/watch?v=lhXoSbgAG7Y
http://www.youtube.com/watch?v=YWn3OHyAqro
http://www.youtube.com/watch?v=6oQOT0D4V-Q
http://www.youtube.com/watch?v=XuBf6utEXt4
http://www.youtube.com/watch?v=daPlyZlWPzw
http://www.youtube.com/watch?v=fmT55EWU0gk
http://www.youtube.com/watch?v=cKqy2hGcWng
http://www.youtube.com/watch?v=g55qdr2npyg
http://www.youtube.com/watch?v=Q1nplhahm_k
http://www.youtube.com/watch?v=4r4pgGA46h4
http://www.youtube.com/watch?v=GCfAO-VEMTA
http://www.youtube.com/watch?v=YO2UmG5PVPs
http://www.youtube.com/watch?v=vaTn3v2km-I
http://www.youtube.com/watch?v=fHfmD8jxwY
http://www.youtube.com/watch?v=1yHcCyAL1sc
http://www.youtube.com/watch?v=exbkamQuZhg
http://www.youtube.com/watch?v=sPnKIk4RdDw
http://www.youtube.com/watch?v=XzLVUq-_kLg&mode=related&search=
http://www.youtube.com/watch?v=yJjjeFusgTY&mode=related&search=
http://www.youtube.com/watch?v=2fVSJutOk_Q&mode=related&search=
http://www.youtube.com/watch?v=1A2ZSN0i7pw&mode=related&search=
http://www.youtube.com/watch?v=H62udnN82WA&mode=related&search=
http://www.youtube.com/watch?v=wCCi2F0fRB8&mode=related&search=
http://www.youtube.com/watch?v=GHkB2d3Or5A&mode=related&search=
http://www.youtube.com/watch?v=vjE3FR83xyA
http://www.youtube.com/watch?v=dIeVncRYEtM
http://www.youtube.com/watch?v=3GzSoWm2uLI
http://www.youtube.com/watch?v=kFpXzE67eL8
http://www.youtube.com/watch?v=V8RirPd_LlY
http://www.youtube.com/watch?v=5VFRdxQdIcQ
http://www.youtube.com/watch?v=iX6cDIP4GTg

Confidential

http://www.youtube.com/watch?v=PqkhS8-CCpE
http://www.youtube.com/watch?v=FiVkGk-7QAY
http://www.youtube.com/watch?v=D_W-ftEuj8E
http://www.youtube.com/watch?v=YJulmBwXtv8
http://www.youtube.com/watch?v=qCx2isyE1Xw
http://www.youtube.com/watch?v=UuG5jDxLdg0
http://www.youtube.com/watch?v=IsEY5xpa07Y
http://www.youtube.com/watch?v=pNg4nmrUZOU

Dear Sir or Madam,

I am contacting you on behalf of Universal Music Publishing Group. Under penalty of perjury, we submit that we are authorized to act in matters involving the infringement of the sound recordings which are the subject hereof, including enforcing the copyrights and common law rights therein and thereto on the Internet.

We believe your service is hosting the above-referenced files on its network. These files are offering video recordings in an interactive streaming format that embody musical compositions written by the artist known as Prince. We have a good faith belief that the above-described activity is not authorized by the copyright owner, its agent, or the law. We assert that the information in this notification is accurate, based upon the data available to us.

We are asking for your immediate assistance in stopping this unauthorized activity. Specifically, we request that you remove the infringing files from the system, or that you disable access to the infringing files, and that you inform the site operator of the illegality of his or her conduct.

This e-mail does not constitute a waiver of any right to recover damages incurred by virtue of any such unauthorized activities, and such rights as well as claims for other relief are expressly retained. In addition, our use of YouTube's required notice form does not indicate we believe that the above referenced copyright infringement is within the scope of the Digital Millennium Copyright Act ("DMCA"). Our use of this form, as required by YouTube, is meant to facilitate YouTube's removal of the infringing material listed above and is not meant to suggest or imply that YouTube's activities and services are within the scope of the DMCA safe harbor.

You may contact me at Universal Music Publishing Group, 2440 Sepulveda Boulevard, Los Angeles, CA 90064, Tel. (310) 235-4739, or e-mail at alina.moffat@umusic.com, to discuss this notice. We await your response. Best regards.

Sincerely,

Alina Moffat
Associate Director, Business Affairs

**Universal Music Publishing Group**
2440 Sepulveda Boulevard, Suite 100
Los Angeles, CA 90064-1712
Direct: (310) 235-4739
Fax: (310) 235-4906
alina.moffat@umusic.com

Confidential

1 ELECTRONIC FRONTIER FOUNDATION
CINDY COHN – #145997
2 cindy@eff.org
CORYNNE MCSHERRY – #221504
3 corynne@eff.org
KURT OPSAHL – #191303
4 kurt@eff.org
JULIE SAMUELS – *pro hac vice*
5 julie@eff.org
454 Shotwell Street
6 San Francisco, CA  94110
Telephone:     (415) 436-9333
7 Facsimile:     (415) 436-9993

8 KEKER & VAN NEST LLP
ASHOK RAMANI - # 200020
9 aramani@kvn.com
MICHAEL S. KWUN - # 198945
10 mkwun@kvn.com
MELISSA J. MIKSCH - # 249805
11 mmiksch@kvn.com
633 Battery Street
12 San Francisco, CA 94111-1809
Telephone:     (415) 391 5400
13 Facsimile:     (415) 397 7188

14 Attorneys for Plaintiff
STEPHANIE LENZ

15

UNITED STATES DISTRICT COURT

16

NORTHERN DISTRICT OF CALIFORNIA

17

SAN JOSE DIVISION

18

| | |
|---|---|
| 19 STEPHANIE LENZ, | Case No. C-07-03783-JF (HRL) |
| 20 Plaintiff, | **DECLARATION OF MARCIA HOFFMAN FILED IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT** |
| 21 v. | |
| 22 UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC. | Date:        October 17, 2012 |
| 23 and UNIVERSAL MUSIC PUBLISHING GROUP, | Time:        10:00 a.m. |
| 24 Defendants. | Courtroom: 3, 5th Floor |
| | Judge:      Hon. Jeremy Fogel |

25

26

27

28

DECLARATION OF MARCIA HOFFMAN FILED IN SUPPORT OF PLAINTIFF'S RENEWED MOTION
FOR SUMMARY JUDGMENT
Case No. C-07-03783-JF (HRL)

**SER 093**

678541.01

1  ELECTRONIC FRONTIER FOUNDATION
   KURT OPSAHL #191303
2  CORYNNE MCSHERRY #221504
   JULIE SAMUELS (*pro hac vice*)
3  454 Shotwell Street
   San Francisco, CA 94110
4  Telephone:    (415) 436-9333
   Facsimile:    (415) 436-9993
5  Email: kurt@eff.org; corynne@eff.org; julie@eff.org

6
   KEKER & VAN NEST, LLP
7  ASHOK RAMANI #200020
   MICHAEL KWUN #198945
8  MELISSA J. MIKSCH #249805
   710 Sansome Street
9  San Francisco, CA 94111-1704
   Telephone:    (415) 391-5400
10 Facsimile:    (415) 397-7188
   Email: aramani@kvn.com; mkwun@kvn.com; mmiksch@kvn.com
11
   Attorneys for Plaintiff
12 STEPHANIE LENZ

13              UNITED STATES DISTRICT COURT

14           NORTHERN DISTRICT OF CALIFORNIA

15                  SAN JOSE DIVISION

16 STEPHANIE LENZ,                    | Case No. C 07-03783-JF
17                      Plaintiff,    | **DECLARATION OF MARCIA**
                                      | **HOFMANN IN SUPPORT OF**
18       v.                           | **PLAINTIFF'S MOTION FOR SUMMARY**
                                      | **JUDGMENT**
19 UNIVERSAL MUSIC CORP., UNIVERSAL   |
20 MUSIC PUBLISHING, INC., and        | Date:      Dec. 10, 2010
   UNIVERSAL MUSIC PUBLISHING         | Time:      9:00 am
21 GROUP,                             | Courtroom: 3, 5th Floor
                                      | Judge:     The Hon. Jeremy Fogel
22                      Defendants.   |

23

24      I, Marcia Hofmann, declare as follows:

25      1.    I am a Senior Staff Attorney at the Electronic Frontier Foundation. I have personal

26 knowledge of the items set forth in this declaration, and would testify as to the same if called

27 upon to do so.

28      2.    In mid-2007, I counseled Plaintiff Stephanie Lenz about the takedown notice she

                                      1
DECLARATION OF MARCIA HOFMANN IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY
                                   JUDGMENT
                          CASE NO. C 07-03783-JF

**SER 094**

1 | received from YouTube regarding her video entitled "Let's Go Crazy #1" (the "Video").

2 |     3.   I have reviewed my records reflecting the time I spent on this matter prior to the

3 | filing of the complaint on July 24, 2007. I understand that those records have been produced in

4 | redacted form in this case as P-E 003012.

5 |     4.   I attach as Exhibit A a true and correct copy of those time records as produced at P-

6 | E 003012, annotated with asterisks next to time entries that reflect the time spent before the

7 | filing of the suit in connection with the restoration of Ms. Lenz's video to YouTube.

8 |     5.   My total time for the annotated entries is 4.25 hours.

9 |     6.   My billing rate in 2007 was $300/hour.

10 |     7.   My total fees for the time spent pursuant to paragraph 4, *supra,* was therefore

11 | $1275.

12 |     I declare under penalty of perjury that the foregoing is true and correct and that this

13 | document was executed on October 12, 2010 in San Francisco, California.

14 |

15 | By _____

16 | MARCIA HOFMANN

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

2

DECLARATION OF MARCIA HOFMANN IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT
CASE NO. C 07-03783-JF

SER 095

Exhibit A

SER 096

**Marcia Hoffman - Lenz v Universal**

| Date | Task | Hours |
|------|------|-------|
| 6/12/2007 | Consulted with co-counsel concerning ___ | 0.25 |
| 6/13/2007 | Initial contact with Lenz. | 0.25 |
| 6/14/2007 | Intake phone call with Lenz. | 1.5 |
| 6/14/2007 | Reviewed ___ | 0.25 |
| 6/14/2007 | Conferred with co-counsel re: ___ strategy. | 0.75 |
| 6/14/2007 | Drafted ___ | 0.75 |
| 6/16/2007 | Drafted ___ | 1.5 |
| 6/17/2007 | Reviewed ___ with Lenz. | 0.5 |
| 6/18/2007 | Edited ___ | 1.25 |
| 6/19/2007 | Conferred with Lenz about ___ | 0.5 |
| 6/20/2007 | Conferred with Lenz and co-counsel about ___ strategy. | 1 |
| 6/20/2007 | Reviewed, edited ___ | 0.5 |
| 6/21/2007 | Edited ___ | 0.5 |
| 6/22/2007 | Revised ___; sent to Lenz for review and comment. | 0.25 |
| 6/22/2007 | Conferred with Lenz about ___ strategy. | 0.75 |
| 6/26/2007 | Conferred with co-counsel re: ___ strategy. | 0.75 |
| 6/26/2007 | Conferred with YouTube re: counternotice. | 1 |
| 6/26/2007 | Drafted ___; conferred with Lenz re: ___. | 0.75 |
| 7/9/2007 | Reviewed YouTube correspondence re: takedown request; conferred with co-counsel. | 0.75 |
| 7/11/2007 | Conferred with Lenz re: ___ | 0.5 |
| 7/16/2007 | Conferred with co-counsel re: ___ | 0.75 |
| 7/16/2007 | Edited ___ | 1 |
| 7/17/2007 | Reviewed, edited ___; conferred with co-counsel and client re: ___ | 1.75 |
| 7/17/2007 | Reviewed, edited ___ conferred with co-counsel and client re: ___ | 1.25 |
| 7/18/2007 | Conferred with client re: ___ strategy. | 0.5 |
| 7/18/2007 | Researched, conferred with co-counsel re: ___. | 1.5 |
| 7/18/2007 | Conferred with Lenz re: ___ strategy. | 0.25 |
| 7/22/2007 | Conferred with co-counsel re: ___ strategy. | 1 |
| 7/23/2007 | Conferred with co-counsel re: ___ strategy. | 1.5 |

Total hours through July 23, 2007    23.75

Total Fees through July 23, 2007 ($300/hr)    $7,125.00

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

P-E 003012

**SER 097**

1  ELECTRONIC FRONTIER FOUNDATION
   CINDY COHN – #145997
2  cindy@eff.org
   CORYNNE MCSHERRY – #221504
3  corynne@eff.org
   KURT OPSAHL – #191303
4  kurt@eff.org
   JULIE SAMUELS – *pro hac vice*
5  julie@eff.org
   454 Shotwell Street
6  San Francisco, CA  94110
   Telephone:    (415) 436-9333
7  Facsimile:    (415) 436-9993

8  KEKER & VAN NEST LLP
   ASHOK RAMANI - # 200020
9  aramani@kvn.com
   MICHAEL S. KWUN - # 198945
10 mkwun@kvn.com
   MELISSA J. MIKSCH - # 249805
11 mmiksch@kvn.com
   633 Battery Street
12 San Francisco, CA 94111-1809
   Telephone:    (415) 391 5400
13 Facsimile:    (415) 397 7188

14 Attorneys for Plaintiff
   STEPHANIE LENZ

15                 UNITED STATES DISTRICT COURT

16                NORTHERN DISTRICT OF CALIFORNIA

17                     SAN JOSE DIVISION

18

19 STEPHANIE LENZ,                        Case No. C-07-03783-JF (HRL)

20              Plaintiff,                **DECLARATION OF STEPHANIE LENZ
                                          IN SUPPORT OF PLAINTIFF'S
21        v.                              RENEWED MOTION FOR SUMMARY
                                          JUDGMENT**
22 UNIVERSAL MUSIC CORP.,
   UNIVERSAL MUSIC PUBLISHING, INC.       Date:      October 17, 2012
23 and UNIVERSAL MUSIC PUBLISHING         Time:      10:00 a.m.
   GROUP,                                 Courtroom: 3, 5th Floor
24                                        Judge:     Hon. Jeremy Fogel
              Defendants.
25

26

27

28

DECLARATION OF STEPHANIE LENZ IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR
SUMMARY JUDGMENT
Case No. C-07-03783-JF (HRL)

678542.01                                                    **SER 098**

1  ELECTRONIC FRONTIER FOUNDATION
   KURT OPSAHL #191303
2  CORYNNE MCSHERRY #221504
   JULIE SAMUELS (*pro hac vice*)
3  454 Shotwell Street
   San Francisco, CA 94110
4  Telephone:  (415) 436-9333
   Facsimile:  (415) 436-9993
5  Email: kurt@eff.org; corynne@eff.org; julie@eff.org

6
   KEKER & VAN NEST, LLP
7  ASHOK RAMANI #200020
   MICHAEL KWUN #198945
8  MELISSA J. MIKSCH #249805
   710 Sansome Street
9  San Francisco, CA 94111-1704
   Telephone:  (415) 391-5400
10 Facsimile:  (415) 397-7188
   Email: aramani@kvn.com; mkwun@kvn.com; mmiksch@kvn.com
11
   Attorneys for Plaintiff
12 STEPHANIE LENZ

13            UNITED STATES DISTRICT COURT

14           NORTHERN DISTRICT OF CALIFORNIA

15                  SAN JOSE DIVISION

16 STEPHANIE LENZ,                          Case No. C 07-03783-JF

17                          Plaintiff,      **DECLARATION OF STEPHANIE LENZ
                                            IN SUPPORT OF PLAINTIFF'S MOTION
18     v.                                   FOR SUMMARY JUDGMENT**

19 UNIVERSAL MUSIC CORP., UNIVERSAL         Date:       Dec. 10, 2010
   MUSIC PUBLISHING, INC., and             Time:       9:00 am
20 UNIVERSAL MUSIC PUBLISHING              Courtroom: 3, 5th Floor
   GROUP,                                   Judge:      The Hon. Jeremy Fogel
21
                           Defendants.
22

23

24     I, Stephanie Lenz, declare as follows:

25     1.     I am the plaintiff in this case.  I submit this declaration in support of my Motion for

26 Summary Judgment.  Except where otherwise stated, the facts in this declaration are based on

27 my own personal knowledge.  If called upon to testify to these facts I could and would

28 competently do so.

                                    1
   ─────────────────────────────────────────────────────────────────────
   DECLARATION OF STEPHANIE LENZ IN SUPPORT OF PLAINTIFF'S MOT. FOR SUMMARY JUDGMENT
                        CASE NO. C 07-03783-JF          **SER 099**

2.    I am a mother, wife, writer and editor.  My husband and I have two children, and we live in Pennsylvania.

3.    In February 2007, my children were playing in the kitchen.  A Prince CD was playing in the background.  I had recently noticed that my youngest child, who was just learning to walk at the time, would pause with his push-toy and "dance" (by which I mean he would hop and up and down a bit), particularly when I said the word "music."  I was able to catch just such a moment on my digital camera while my son "danced" to Prince's song, "Let's Go Crazy."

4.    I thought my mother, who lives across the country in California, would enjoy seeing the video I had just made.  However, she had told me that she a hard time downloading video files sent over email.  So, in early February, I uploaded the video of my son dancing to YouTube for my family and friends to enjoy.

5.    On June 4, 2007, I received a notice from YouTube that my video had been removed from the site.  The notice said that the removal of my video was in response to a complaint by Universal Music Publishing Group.  It also warned me that repeated incidents of copyright infringement could lead to the deletion of my account and all my videos.

6.    On June 7, 2007, I sent a counternotice to YouTube stating that my use of Prince's song was not infringing.  I later learned that this counternotice did not contain all of the elements of a counternotice under the Digital Millennium Copyright Act.  My video was not restored to YouTube.

7.    I decided to seek the assistance of legal counsel and spent time retaining attorneys, acting *pro bono*, to represent me in connection with the removed video.  With the help of that counsel, I sent a second counternotice to YouTube on June 27, 2007, demanding that my video be restored to the YouTube website because it did not infringe Universal's copyrights.

8.    In mid-July, approximately six weeks after it had been taken down, my video was restored to YouTube.

9.    In total, I spent at least ten hours before filing this lawsuit on obtaining counsel, figuring out how to send—and sending—the first counternotice to YouTube, sending the second counternotice to YouTube, and ensuring that my video was restored to YouTube.  Most, if not

DECLARATION OF STEPHANIE LENZ IN SUPPORT OF PLAINTIFF'S MOT. FOR SUMMARY JUDGMENT
CASE NO. C 07-03783-JF

**SER 100**

1    all, of this work was completed on my personal computer.

2       10.  As a result of receiving the notice that my video had been removed based on a claim

3    of copyright infringement, I recorded videos of my children much less frequently, and was much

4    more cautious about sharing home videos with my friends and family.  I was concerned that

5    someone else might accuse me of copyright infringement, just like Universal had done, and this

6    restricted my sense of freedom to express myself by, for example, making home videos, making

7    particular kinds of videos as opposed to other kinds, and sharing home videos with my friends

8    and family.

9

10       I declare under penalty of perjury that the foregoing is true and correct and that this

11    document was executed on October 16, 2010 in Gallitzin, Pennsylvania.

12

13                     By _____

14                           STEPHANIE LENZ

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

ELECTRONIC FRONTIER FOUNDATION
FRED VON LOHMANN #192657
KURT OPSAHL #191303
CORYNNE MCSHERRY #221504
454 Shotwell Street
San Francisco, CA 94110
Telephone:    (415) 436-9333
Facsimile:    (415) 436-9993
Email: fred@eff.org; kurt@eff.org
        corynne@eff.org

KEKER & VAN NEST, LLP
ASHOK RAMANI - #200020
MICHAEL S. KWUN -#198945
MELISSA J. MIKSCH - #249805
710 Sansome Street
San Francisco, CA 94111-1704
Telephone:    (415) 391-5400
Facsimile:    (415) 397-7188
Email: aramani@kvn.com; mkwun@kvn.com
Email: mmiksch@kvn.com

Attorneys for Plaintiff
STEPHANIE LENZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE LENZ,<br><br>                           Plaintiff,<br><br>          v.<br><br>UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC., and UNIVERSAL MUSIC PUBLISHING GROUP,<br><br>                           Defendants. | Case No. C 07-03783-JF<br><br>**DECLARATION OF MICHAEL S. KWUN IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL JUDGMENT ON THE PLEADINGS**<br><br>Date:        December 11, 2009<br>Time:        9:00 a.m.<br>Courtroom: 3, 5th floor<br>Judge:       Hon. Jeremy Fogel |

459014.01

KWUN DECL. ISO PLF'S MOT. FOR PART. S.J. OR, IN THE ALT., FOR PART. J. ON THE PLEADINGS
CASE NO. C 07-03783-JF                    **SER 102**

I, MICHAEL S. KWUN, declare and state:

1.      I am an attorney licensed to practice law in the State of California and am of counsel at Keker & Van Nest LLP, attorneys for plaintiff Stephanie Lenz in the above-captioned action.

2.      I make this declaration in support of the reply, filed herewith, regarding Ms. Lenz's motion for partial summary judgment or, in the alternative, for partial judgment on the pleadings.

3.      I have knowledge of the facts set forth herein, and if called upon as a witness, I could testify to them competently under oath.

4.      Attached hereto as Exhibit A is a true and correct copy of excerpts from the transcript of the deposition of Stephanie Lenz in this case, taken on September 16, 2009.

5.      Attached hereto as Exhibit B is a true and correct copy of the transcript of the hearing in this case on July 10, 2009.

6.      Attached hereto as Exhibit C is a true and correct copy of the corrected public version of Plaintiff's Reply in Support of Motion to Compel, dated August 5, 2009.  None of the redacted portions of this brief pertain to the present motion.

7.      Attached hereto as Exhibit D is a true and correct copy of Defendants' Reply in Support of Motion to Dismiss Plaintiff's Second Amended Complaint, dated July 3, 2009.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on November 24, 2009, in San Francisco, California.


___*/s/ Michael S. Kwun*_____
MICHAEL S. KWUN

1
KWUN DECL. ISO PLF'S MOT. FOR PART. S.J. OR, IN THE ALT., FOR PART. J. ON THE PLEADINGS
CASE NO. C 07-03783-JF
**SER 103**

Case: 2:12-cv-06731-JF  Document 220-3  Filed 11/24/09  Page 16 of 171

# EXHIBIT A

CONFIDENTIAL

CERTIFIED
COPY

CONFIDENTIAL

```
 1              UNITED STATES DISTRICT COURT

 2              NORTHERN DISTRICT OF CALIFORNIA

 3                    SAN JOSE DIVISION

 4                       --oOo--

 5     STEPHANIE LENZ,

 6               Plaintiff,

 7          vs.                        No. C 07-03782-JF

 8     UNIVERSAL MUSIC PUBLISHING,
       INC., and UNIVERSAL MUSIC
 9     PUBLISHING GROUP, INC.,

10               Defendants.
       _____/
11

12

13             VIDEOTAPED DEPOSITION OF

14                 STEPHANIE LENZ

15          _____

16               September 16, 2009

17                  CONFIDENTIAL

18

       REPORTED BY:  WENDY E. ARLEN, CSR #4355, CRR, RMR
19     JOB 422733

20

21

22

23

24

25
```

**M E R R I L L   L E G A L   S O L U T I O N S**

20750 Ventura Blvd, Suite 205
Woodland Hills, CA 91364

818.593.2300

www.merrillcorp.com/law

**SER 105**

CONFIDENTIAL

1         Do you understand that?

2    A.        Yes.

3    Q.        If you need a break at any time during the

4    deposition, tell me and we can take a break.  The

09:05    5    only thing I ask is that if there is a question

6    pending that you answer the question before taking a

7    break.

8              Do you understand that?

9    A.        Yes.

09:05   10    Q.        The other thing is if you don't understand

11    one of my questions or need clarification, will you

12    please tell me and I'll try to ask the question

13    again?

14    A.        Yes.

09:05   15    Q.        May I have your agreement that if you answer

16    my question that means that you understood it?

17    A.        Yes.

18    Q.        Is there any reason, Ms. Lenz, that you are

19    not able to give your best testimony in this matter

09:06   20    today?

21    A.        No.

22    Q.        What did you do to prepare for this

23    deposition?

24    A.        I traveled from my home to San Francisco and

09:06   25    yesterday I met with my attorneys.

**SER 106**

```
 1    Q.        MR. KLAUS:  Do you know if your use of Let's

 2    Go Crazy in Let's Go Crazy #1 is fair use?

 3              MS. McSHERRY:  Same objection.

 4              THE WITNESS:  I don't know the legal

 5    definitions of fair use.

 6    Q.        MR. KLAUS:  Setting that aside, do you

 7    believe that your use of Let's Go Crazy and Let's Go

 8    Crazy #1 is fair use?

 9    A.        Yes.

10    Q.        Why?

11              MS. McSHERRY:  Same objections.

12              THE WITNESS:  I don't think that it's -- the

13    point of my video what I made was the kids dancing.

14    The music happened to be playing in the background.

15    I'm not using it for a commercial purpose.  I

16    don't -- honestly I don't know how fair use is

17    defined exactly.  So...

18    Q.        MR. KLAUS:  When did you come to the

19    conclusion that your use of the song Let's Go Crazy

20    in Let's Go Crazy #1 was a fair use?

21              MS. McSHERRY:  Objection, calling for legal

22    conclusion.

23              THE WITNESS:  Could you repeat the question?

24    Q.        MR. KLAUS:  Sure.  When did you come to the

25    conclusion that your use of the song Let's Go Crazy
```

**SER 107**

```
       1    Q.      MR. KLAUS:  If you're not sure whether that's

       2    a false statement, Ms. Lenz, how can you contend in

       3    this lawsuit that this is a false DMCA notice?

       4            MS. McSHERRY:  Objection, calls for legal

15:35  5    conclusions, leading and argumentative.

       6            THE WITNESS:  I have trouble with the phrase

       7    good faith belief.  I can't imagine that someone

       8    would have seen my video and in good faith thought

       9    that I was infringing copyright.

15:35  10   Q.      MR. KLAUS:  Why do you believe that?

       11   A.      Because I think that my video is a fair use.

       12   Q.      Why do you believe that somebody could not

       13   have a good faith belief that the video was

       14   infringing copyright?

15:35  15           MS. McSHERRY:  Objection, asked and answered.

       16           THE WITNESS:  I don't believe that someone

       17   would have watched my video and thought that it was

       18   infringing copyright.

       19   Q.      MR. KLAUS:  Do you think anybody watching the

15:36  20   video would have had to have known that it was a fair

       21   use?

       22           MS. McSHERRY:  Objection, calls for

       23   speculation, legal conclusion.

       24           THE WITNESS:  In my opinion, some people may

15:36  25   have thought it was infringing, some wouldn't.
```

**SER 108**

```
 1              CERTIFICATE OF REPORTER

 2         I, WENDY E. ARLEN, a Certified Shorthand

 3    Reporter, hereby certify that the witness in the

 4    foregoing deposition was by me duly sworn to tell the

 5    truth, the whole truth and nothing but the truth in the

 6    within-entitled cause;

 7         That said deposition was taken down in

 8    shorthand by me, a disinterested person, at the time

 9    and place therein stated, and that the testimony of the

10    said witness was thereafter reduced to typewriting, by

11    computer, under my direction and supervision.

12         That before completion of the deposition,

13    review of the transcript [ X ] was [  ] was not

14    requested.  If requested, any changes made by the

15    deponent (and provided to the reporter) during the

16    period allowed are appended hereto.

17         I further certify that I am not of counsel or

18    attorney for either or any of the parties to the said

19    deposition nor in any way interested in the event of

20    this cause and that I am not related to any of the

21    parties thereto.

22         DATED: _September 23_, 2009

23

24         _____

25         WENDY E. ARLEN CSR, No. 4355
```

1  ELECTRONIC FRONTIER FOUNDATION
   FRED VON LOHMANN #192657
2  KURT OPSAHL #191303
   CORYNNE MCSHERRY #221504
3  454 Shotwell Street
   San Francisco, CA 94110
4  Telephone:    (415) 436-9333
   Facsimile:    (415) 436-9993
5  Email: fred@eff.org; kurt@eff.org corynne@eff.org

6  FOLGER LEVIN & KAHN LLP
   MICHAEL F. KELLEHER
7  SUZANNE ELIZABETH RODE
   275 Battery Street, Suite 2300
8  San Francisco, CA 94111
   Telephone:    (415) 986-2800
9  Facsimile:    (415) 986-2827
   Email: mkelleher@flk.com; srode@flk.com
10
   Attorneys for Plaintiff
11 STEPHANIE LENZ

12              UNITED STATES DISTRICT COURT

              NORTHERN DISTRICT OF CALIFORNIA
13
                    SAN JOSE DIVISION
14

15 STEPHANIE LENZ,                    | Case No. C 07-03783-JF

16                      Plaintiff,    | **DECLARATION OF MELISSA J.**
                                      | **MIKSCH IN SUPPORT OF PLAINTIFF'S**
17        v.                          | **MOTION FOR PARTIAL SUMMARY**
                                      | **JUDGMENT OR PARTIAL JUDGMENT**
18 UNIVERSAL MUSIC CORP., UNIVERSAL   | **ON THE PLEADINGS**
   MUSIC PUBLISHING, INC., and        |
19 UNIVERSAL MUSIC PUBLISHING         | Date:       December 11, 2009
   GROUP,                             | Time:       9:00 a.m.
20                                    | Courtroom: 3
                       Defendants.    | Judge:      The Hon. Jeremy Fogel
21
                                      | [MOTION FOR SUMMARY JUDGMENT; AFFIDAVIT OF
22                                    | DARREN HUBBARD; PROPOSED ORDER; APPLICATION
                                      | TO SEAL AND PROPOSED SEALING ORDER FILED
23                                    | HEREWITH]

24

25

26

27

28

453751.01

**SER 110**

I, MELISSA MIKSCH, declare and state:

1.     I am an attorney licensed to practice law in the State of California and am associated with Keker & Van Nest LLP, co-counsel with the Electronic Frontier Foundation, attorneys for plaintiff Stephanie Lenz ("Ms. Lenz") in the above-captioned action.

2.     I have knowledge of the facts set forth herein, and if called upon as a witness thereto, I could do so competently under oath.

3.     I make this Declaration in Support of Plaintiff's Motion for Partial Summary Judgment or, In the Alternative, for Partial Judgment on the Pleadings.

4.     Defendants have noticed only two depositions in this case: the deposition of Ms. Lenz, which took place on September 16, 2009, and the deposition of non-party Linda Morgan, which took place pursuant to subpoena on October 21, 2009.

5.     Attached hereto as Exhibit A is a true and correct copy of excerpts from the transcript of the deposition of Stephanie Lenz, taken on September 16, 2009, and the errata sheet thereto.

6.     Attached hereto as Exhibit B is a true and correct copy of the webpage http://www.youtube.com/watch?v=N1KfJHFWlhQ as it existed on October 29, 2009.

7.     Attached hereto as Exhibit C is a true and correct copy of Exhibit B to the Declaration of Kelly M. Klaus in Support of Defendants' Motion to Dismiss (Dkt. No. 12), filed on September 21, 2007, which I retrieved from PACER.

8.     Attached hereto as Exhibit D is a true and correct copy of Exhibit 39 from the deposition of Ms. Lenz taken September 16, 2009 (Plaintiff's Second Supplemental Initial Disclosures, served on September 14, 2009).

9.     Attached hereto as Exhibit E is a true and correct copy of Exhibit 23 from the deposition of Ms. Lenz on September 16, 2009 (Retainer Agreement with the Electronic Frontier Foundation, produced by Ms. Lenz bearing Bates Nos. P-E_003005-P-E_003009).

10.    Attached hereto as Exhibit F is a true and correct copy of Exhibit 25 from the deposition of Ms. Lenz on September 16, 2009 (June 27, 2007 email from Stephanie Lenz to copyright@youtube.com, produced by Ms. Lenz bearing Bates No. P-E_000105).

---

1

DECLARATION OF MELISSA J. MIKSCH IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL JUDGMENT ON THE PLEADINGS
CASE NO. C 07-03783-JF

**SER 111**

11.     Attached hereto as Exhibit G is a true and correct copy of the Declaration of Stephanie Lenz in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss and Special Motion to Strike, executed November 12, 2007, and filed with this Court November 13, 2007 (Dkt. No. 23).

12.     Attached hereto as Exhibit H is a true and correct copy of the Declaration of Micah Schaffer in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss and Special Motion to Strike, executed November 12, 2007, and filed with this Court November 13, 2007 (Dkt. No. 24).  :

13.     Attached hereto as Exhibit I is a true and correct copy of Defendants' Objections and Responses to Plaintiff's First Set of Interrogatories, served on January 21, 2009.

14.     Attached hereto as Exhibit J is a true and correct copy of this Court's September 14, 2009 Order re [1] Staying Part C.4 of Magistrate Judge Seeborg's August 25, 2009 Order, [2] Discovery Matters, and [3] Modifying the Case Management Schedule (Dkt. No. 176).

15.     Attached hereto as Exhibit K is a true and correct copy of Exhibit 11 from the deposition of Ms. Lenz on September 16, 2009 (June 5, 2007 email from Stephanie Lenz to copyright@youtube.com, produced by Ms. Lenz bearing Bates Nos. P-E_000222-P-E_000223).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on October 30, 2009, in San Francisco, California.

By: ___/s/ Melissa J. Miksch____
MELISSA J. MIKSCH

DECLARATION OF MELISSA J. MIKSCH IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL JUDGMENT ON THE PLEADINGS
CASE NO. C 07-03783-JF

**SER 112**

# EXHIBIT A

1        UNITED STATES DISTRICT COURT

2       NORTHERN DISTRICT OF CALIFORNIA

3         SAN JOSE DIVISION

4           --o0o--

5  STEPHANIE LENZ,

6      Plaintiff,

7     vs.         No. C 07-03782-JF

8  UNIVERSAL MUSIC PUBLISHING,

   INC., and UNIVERSAL MUSIC

9  PUBLISHING GROUP, INC.,

10     Defendants.

   _____/

11

12

        VIDEOTAPED DEPOSITION OF

13

         STEPHANIE LENZ

14

      _____

15

       September 16, 2009

16

        CONFIDENTIAL

17

18

  REPORTED BY:  WENDY E. ARLEN, CSR #4355, CRR, RMR

19  JOB 422733

20

21

22

23

24

25

SER 114

1    while my husband was working.  And then once our

2    children came along, I was a full-time mother and

3    continued to write.

4    Q.    And you have two children, correct?

5    A.    Yes.

6    Q.    And your daughter was your first child?

7    A.    Yes.

8    Q.    Her name is Zoe.

9    A.    Yes.

10    Q.    When was she born?

11    A.    2003.

12    Q.    And your second child is a son?

13    A.    Yes.

14    Q.    Holden?

15    A.    Yes.

16    Q.    When was he born?

17    A.    2005.

18    Q.    From 2003 through the present, were you a

19    full-time stay-at-home parent?

20    A.    Yes.

21    Q.    Have you held any job since from 2003 to the

22    present?

23    A.    I recently became a distributor for Tasteful

24    Treasures.  That began August 1st.

25    Q.    That's August 1st of this year?

1    A.    Yes.

2    Q.    Can you describe how you came to create the

3    video that you posted as Let's Go Crazy #1?

4         MS. McSHERRY:  Objection, vague, ambiguous,

5    overbroad.

6         MR. OPSAHL:  Calls for a narrative.

7         MS. McSHERRY:  I'm sorry.

8         MR. OPSAHL:  Certainly calls for a narrative.

9         MR. KLAUS:  May I just ask, I just ask as it

10   would be in court if I could just get one.  I'm

11   outnumbered by your lawyers all the time in this

12   case, Ms. Lenz.  So if we could just have it be one

13   on one today?

14        MS. McSHERRY:  That's fine.

15        MR. KLAUS:  Thank you.

16   Q.    So -- and again, Ms. Lenz, could you describe

17   how you came to create the Let's Go Crazy #1 video?

18   A.    I was --

19        MS. McSHERRY:  Same objections.

20        THE WITNESS:  I was in the kitchen with my

21   husband and my kids.  I had my digital camera on the

22   counter, and my son had just learned to walk.  He was

23   using a little walker.

24        Excuse me a moment.

25        And he was just learning how to walk and he

**SER 116**

1    was learning how to dance.

2    MS. McSHERRY:  Do you need to take a break

3    for a minute?

4    THE WITNESS:  I'm fine.  Just thinking about

5    the video.

6    MS. McSHERRY:  Okay.  If you need to take a

7    break, just say so.

8    THE WITNESS:  So they were -- we have an

9    island in our kitchen and the kids were running

10    around the island, and sometimes they would stop in

11    front of our CD player and they would dance to music.

12    And because we had watched the Super Bowl within the

13    previous week, we had put some Prince music over with

14    the music in the CD player for the kids to listen to

15    because they liked it.

16    And so they were running around and during

17    the faster songs, they would do this running, and if

18    it was slow, my daughter would ask me to put on

19    something faster.

20    So they were doing this and he would stop in

21    front of the CD player with his walker and he would

22    bounce up and down to dance.  So I thought it was

23    cute.  So I picked up the camera and started to make

24    a -- it was a digital camera that had capacity for

25    video.  So I thought, you know, it wouldn't be as

1    good as a still picture as it would be for video.

2        So I put on video and I watched them do it

3    and they took one turn around and they didn't stop

4    and dance.  So I stopped that video and I took a

5    second, and I thought, well, I can get them to dance

6    if I -- if he gets to that point and slows down, and

7    he did.  And he just stood there.  So I said, Well,

8    what do you think of the music?  Because sometimes

9    you could just say the word music and he would do his

10   little dance.  That's what he did.

11       So I moved to get his face in the picture,

12   and he bounced a little bit and was happy.  And then,

13   you know, it looked like he was going to take off

14   again and I thought it was hard enough to get him to

15   dance the first time.  So I just shut the video off

16   and set the camera down and went back to what I was

17   doing.  They kept running.

18   Q.      MR. KLAUS:  Can I -- let me just go back and

19   try to ask you a few details --

20   A.      Sure.

21   Q.      -- about what you just said, Ms. Lenz.  First

22   of all, can you give me the approximate date when you

23   created this video?

24   A.      I believe it was February 2nd or 3rd of 2007.

25   It was -- I believe the Super Bowl had been the 31st,

1    and I think I had posted it on the 3rd.  So it was

2    sometime between those dates.

3    Q.    The Super Bowl was on a Sunday?

4    A.    I assume so, yes.

5    Q.    And had you watched the Super Bowl?

6    A.    No, actually, my children and I were

7    downstairs watching some children's programming.  My

8    husband was upstairs and had the Super Bowl on.  He

9    called down to us to tell us the halftime show was

10   starting, and so we paused what we'd been watching,

11   we tuned in for the halftime show.  When it was over,

12   we went back to our children's programming.

13   Q.    And what do you remember about the halftime

14   show that you watched?

15   A.    We liked it.

16   Q.    Who performed?

17   A.    Prince.

18   Q.    And do you remember which songs he performed?

19   A.    I know he did Purple Rain because it was

20   raining, and it struck me as kind of funny and

21   ironic.  I assume he did Let's Go Crazy because there

22   was a fast song, and I know how popular that one is.

23   I can't recall others.

24        There may have been a new one in there I

25   didn't know.  I don't remember what else he

SER 119

1    performed.

2    Q.    Do you remember if your children were dancing

3    to the music during the halftime show?

4    A.    Yes.

5    Q.    Did you create any video of them dancing

6    during the halftime show?

7    A.    No.

8    Q.    Prior to the date that you created the video,

9    had you heard the song Let's Go Crazy?

10    A.    Yes.

11    Q.    Do you own a record or a CD with Let's Go

12    Crazy on it before the halftime show?

13    A.    Yes.

14    Q.    Was it a CD?

15    A.    CD, yes.

16    Q.    Do you know what the title of the CD is?

17    A.    I believe it's The Hits.  There are two

18    called The Hits.  One is Volume I, one is Volume II.

19    I believe it's on Volume I.

20    Q.    Are there any other copies of Let's Go Crazy

21    that you own besides the copy on Hits Volume I?

22    A.    I don't think so.

23    Q.    Do you have Let's Go Crazy stored on any

24    other computer, iPod, any device like that?

25         MS. McSHERRY:  Objection, compound.

**SER 120**

1    A.    I don't know.

2    Q.    Do you remember any others?

3    A.    I don't remember what else we did that day.

4    We do keep a collection of CD's in the kitchen and

5    swap them out.

6    Q.    You said that there were two videos that

7    you -- that you shot that day, correct?

8    A.    That's right.

9    Q.    And the two videos, did you play the song

10   only one time in the creation of the videos?

11        MS. McSHERRY:  Objection, compound and

12   ambiguous.

13        THE WITNESS:  The song was playing.  They

14   were running, and I tried to get them in that dancing

15   mode when they stopped in front of the CD for the

16   first video, and they didn't do it.

17        So I turned the video -- turned the camera

18   off and then I thought better of it and thought maybe

19   they would do it again.  It was the same play of the

20   song.  I didn't restart it or anything like that.  I

21   just gave it another try.

22   Q.    MR. KLAUS:  To the best of your recollection,

23   it was just one time that you played the song in

24   creating the videos?

25   A.    Yes.

SER 121

1      MS. McSHERRY:  Objection, compound.

2  Q.    MR. KLAUS:  And when you -- when you did --

3  when you continued to play the song to make the

4  second video, did you want to record your children

5  dancing to the music?

6      MS. McSHERRY:  Objection, compound, vague.

7      THE WITNESS:  I wanted to record the action

8  of my son bouncing up and down to show that he was

9  walking.

10  Q.    MR. KLAUS:  Did you also -- did you want to

11  record the entire scene in the kitchen, including the

12  music?

13      MS. McSHERRY:  Same objection.

14      THE WITNESS:  The music wasn't really on my

15  mind.  I just thought it was cute.

16  Q.    MR. KLAUS:  You said that you asked your son

17  what he thought of the music.

18  A.    Uh-huh.  Yes.

19  Q.    Why would you say, "What do you think of the

20  music," if the music wasn't on your mind when you

21  shot the second video?

22      MS. McSHERRY:  Objection, compound and

23  leading.

24      THE WITNESS:  The word music was a trigger

25  that would get him to dance.  I could be in a silent

1   room and say, "music," and he would bounce up and

2   down.

3   Q.      MR. KLAUS:  Did the music also get him to

4   dance?

5   A.      That night it wasn't getting him to dance.

6   Q.      Did the -- let me ask the question again.

7   Did the -- is it your experience that your son at

8   that point -- at that point in his life liked to

9   dance to music?

10  A.      Yes.

11  Q.      I'd like to just, if I could, and ask you

12  because these are the way these were produced, start

13  marking exhibits, too.

14        I'm going to ask the court reporter to mark

15  as Exhibit No. 1 a CD which was produced to us with a

16  file with the Bates number P-E 1978.

17        (Deposition Exhibit 1 marked for

18         identification.)

19        MR. KLAUS:  Normally Ms. Arlen will hand you

20  the exhibit, but -- so that you can look at it.  I

21  instead have it here and Ms. McSherry has just handed

22  it to you, and I'm going to play the file that was

23  produced here.

24        (Video playing.)

25  Q.      MR. KLAUS:  The file that we just watched,

1    Ms. Lenz --

2    A.    Uh-huh.

3    Q.    -- is that the first video that you created

4    that day that you created the video Let's Go Crazy

5    #1?

6    A.    That's the first video.

7    Q.    And to your recollection, is that action and

8    that music taking place close to the beginning of the

9    song?

10    A.    Honestly I wasn't listening to the music.

11        MS. McSHERRY:  Do you need to take a break?

12    Sure?

13        MR. KLAUS:  I'm going to mark as Exhibit No.

14    2.

15        (Deposition Exhibit 2 marked for

16        identification.)

17        MR. KLAUS:  This was produced to us with the

18    Bates number P-E 1977.

19        (Video playing.)

20    Q.    MR. KLAUS:  The file that we just watched,

21    Ms. Lenz, P-E 1977, Exhibit No. 2, is that the second

22    video that you created that day?

23    A.    Yes.

24    Q.    Is that the video that you posted to YouTube

25    titled Let's Go Crazy #1?

1    A.    Yes.

2    Q.    And on this second video, Exhibit No. 2, let

3    me just ask you, when you recorded that video, did

4    you consider the music to be important to the action

5    that you were recording?

6    A.    My focus was on the kids.  If the music got

7    him to bounce up and down, which is what I wanted to

8    capture, it was important in that capacity.

9    Q.    Did you think that the music helped to get

10   him to bounce up and down?

11   A.    I wouldn't be surprised.

12   Q.    Do you think that it had something to do with

13   it?

14   A.    Yes.

15   Q.    Your daughter is also in the video, correct?

16   A.    Yes.

17   Q.    And she is, I take it, circling around the

18   island in your kitchen that you described?

19   A.    Yes.

20   Q.    Did -- did you think she was doing that

21   because the music was playing?

22        MS. McSHERRY:  Objection, calls for

23   speculation.

24        THE WITNESS:  Actually, they were already

25   running around before we put the music on.

SER 125

1    Q.     MR. KLAUS:  How long have you used iTunes?

2    A.     I'm not sure.

3    Q.     Before the break, Ms. Lenz, I asked you when

4    you -- when you remembered signing up for YouTube.

5    And you don't remember that?

6    A.     No.

7           MR. KLAUS:  I'm going to mark as Exhibit No.

8    3.

9           (Deposition Exhibit 3 marked for

10          identification.)

11   Q.     MR. KLAUS:  Exhibit No. 3, Ms. Lenz -- and

12   we'll go through this with respect to several other

13   documents, written documents today -- is a -- it's a

14   document that was produced to us in discovery by your

15   attorneys, and the questions that I'll ask of this at

16   the beginning will sound familiar by the end of the

17   day with respect to most documents, but let me start

18   with this.

19          First of all, is this, to the best of your

20   knowledge, a true and correct copy of an e-mail that

21   you received from YouTube on approximately

22   February 5th, 2006?

23   A.     Yes.

24   Q.     And is your YouTube user name Edenza?

25   A.     Yes.

1    conclusion.  It's also compound.

2          THE WITNESS:  Could you repeat the question?

3    Q.    MR. KLAUS:  Sure.  When you made your user

4    submission Let's Go Crazy #1 to YouTube, did you have

5    permission from the rightful owner of Let's Go Crazy

6    to post the submission with that song in it?

7          MS. McSHERRY:  Same objection, also calls for

8    speculation.

9          THE WITNESS:  I as the owner of the CD was

10   playing the CD in an authorized manner in my kitchen

11   and took a video of my children.  The focus of my

12   video was my children and their actions, not the

13   music.

14   Q.    MR. KLAUS:  You -- let me see if I can break

15   that down, Ms. Lenz.  You own a copy of Let's Go

16   Crazy, correct?

17   A.    Yes.

18   Q.    You own that on a CD, correct?

19   A.    Yes.

20   Q.    You bought that CD, right?

21   A.    Yes.

22   Q.    That copy is yours, correct?

23   A.    Yes.

24   Q.    You don't own the copyright to the underlying

25   work, do you?

1   in evidence, leading, ambiguous, vague and calls for

2   legal conclusion.

3   Q.     MR. KLAUS:  That was a lot of objections.

4          MS. McSHERRY:  A lot of objections.

5   Q.     MR. KLAUS:  Do you have the question in mind?

6   A.     Could you please repeat that?

7   Q.     The sound track that you intended to stream

8   along with the video images included your voice

9   speaking to your children, correct?

10         MS. McSHERRY:  Same objections.

11         THE WITNESS:  Yes.

12  Q.     MR. KLAUS:  And the sound track that you

13  intended for those people to stream along with the

14  video images included the music that was playing,

15  correct?

16         MS. McSHERRY:  Same objections.

17         THE WITNESS:  Yes.

18  Q.     MR. KLAUS:  Did --- at the time you made your

19  posting to YouTube, did you have the permission of

20  the copyright owner to use that music in your

21  posting?

22         MS. McSHERRY:  Objection, compound, calls for

23  a legal conclusion, calls for speculation.

24         THE WITNESS:  Could you repeat the question?

25  Q.     MR. KLAUS:  Yes.  At the time you made your

SER 128

1    posting to YouTube did you have your -- did you have

2    permission of the copyright owner to use that music

3    in your posting?

4         MS. McSHERRY:  Same objection.

5         THE WITNESS:  I used the music in my kitchen

6    for my kids to dance to.  It was incidental that it

7    was in my video.

8    Q.    MR. KLAUS:  Let me ask -- let me just ask the

9    question again.  I understand that's how you used the

10   music in your kitchen.  I'm talking about the posting

11   that you made 48 hours later.

12        Did you have permission from the copyright

13   owner to use that music in your posting to YouTube?

14        MS. McSHERRY:  Objection, calls for a legal

15   conclusion, vague and ambiguous.

16        THE WITNESS:  I don't know.

17   Q.    MR. KLAUS:  Are you aware of any facts that

18   would suggest that the copyright owner gave you

19   permission to use that music in your posting to

20   YouTube?

21        MS. McSHERRY:  Objection, calls for legal

22   conclusion.

23        THE WITNESS:  I don't know what permissions

24   are given upon purchase of the music.  I don't know

25   if there are boundaries, limits as to how that music

1    Q.    You chose the title Let's Go Crazy #1 for the

2    posting of Exhibit No. 2, correct?

3    A.    Yes.

4    Q.    Why did you pick that title?

5    A.    The kids were going crazy, and I thought that

6    since that was the song that was playing in the

7    background, it would be kind of funny.  And I put the

8    number one on there thinking that since they did this

9    action of running around the kitchen a lot that any

10   subsequent videos of them performing the same action

11   I would subsequently title number 2, number 3, number

12   4, regardless of what music or noise, if any,

13   accompanied the video.

14   Q.    Did you think that the song title matched the

15   action in the video?

16   A.    Yes.

17   Q.    Did you think that the song title -- strike

18   that.  Let me start over.

19         Did you think that the music that you had

20   used matched the action in the video?

21   A.    Yes.

22   Q.    Do you recall that there is in Exhibit No.

23   2 -- there's a portion of the song Let's Go Crazy

24   where Prince says, "Come on, baby, let's go nuts"?

25   A.    Yes.

1          THE WITNESS:  I had never considered that

2    before.

3          MS. McSHERRY:  Let me do my objections.

4    Thank you.

5    Q.      MR. KLAUS:  Do you think the action in the

6    video can be fairly described as wild action?

7          MS. McSHERRY:  Objection, calls for

8    speculation and ambiguous and vague.

9          THE WITNESS:  Wild isn't an adjective that I

10   would use, but I can understand someone else using

11   it.

12   Q.      MR. KLAUS:  Would you think that a -- would

13   you think that crazy is a fair adjective to describe

14   what's taking place in the video?

15   A.      Yes.

16   Q.      I want to return you -- you said that you

17   selected number one because you thought there might

18   be a series of videos; is that right?

19   A.      Yes.

20   Q.      Did you consider posting to YouTube the other

21   video that you had made using Let's Go Crazy?

22         MS. McSHERRY:  Objection, assumes facts.

23         THE WITNESS:  I don't remember.

24   Q.      MR. KLAUS:  At the time you -- at the time

25   you selected the title Let's Go Crazy #1, were you

1    contemplating creating any other videos that you

2    might post to YouTube with that title?

3    A.      Since my children do that action so often and

4    still do that, I assumed that I would be making more

5    video of them running around the kitchen and I just

6    planned that I would title subsequent videos of them

7    doing the same action with a similar title, but

8    increasing numbers, 2, 3, 4.

9    Q.      Why would you -- was it your expectation that

10   they would be doing similar action with music playing

11   in the background?

12          MS. McSHERRY:  Objection, calls for

13   speculation.

14          THE WITNESS:  There may be music in the

15   background.  There may not.

16   Q.      MR. KLAUS:  If there was music in the

17   background, did you plan to keep the same title,

18   Let's Go Crazy, even if the song that was playing

19   wasn't Let's Go Crazy?

20          MS. McSHERRY:  Objection, compound.

21          THE WITNESS:  Yes.

22   Q.      MR. KLAUS:  You had -- you've posted other

23   videos besides Let's Go Crazy #1 to YouTube; isn't

24   that right, Ms. Lenz?

25   A.      Yes.

SER 132

1        THE WITNESS:  Yes.

2    Q.    MR. KLAUS:  Did you edit Jive Dancin' before

3    you put it on YouTube?

4    A.    No.

5    Q.    Did you edit Let's Go Crazy #1 before you put

6    it on YouTube?

7    A.    No.

8    Q.    Prior to the date that you filmed the Jive

9    Dancin' video of your daughter, had you heard the

10   song Jive Talkin' before?

11   A.    Yes.

12   Q.    You knew it was popular music, correct?

13   A.    Yes.

14   Q.    You knew that it was copyrighted music?

15   A.    Yes.

16   Q.    Did you ask for permission from anyone to use

17   Jive Talkin' in that video?

18        MS. McSHERRY:  Objection, calls for legal

19   conclusion, ambiguous.

20        THE WITNESS:  No.

21   Q.    MR. KLAUS:  Do you know if your use of Jive

22   Talkin' in that video posting is a fair use?

23        MS. McSHERRY:  Objection, calls for legal

24   conclusion.

25        THE WITNESS:  I don't know.

1    conclusion, it's argumentative and it's calling for

2    speculation, incomplete hypothetical.

3        THE WITNESS:  I'm not sure where the focus

4    is, if it's on the number or the fact of giving away

5    or creating copies.  The question's unclear to me.

6    Q.    MR. KLAUS:  Do you think that if somebody

7    makes 900,000 copies of a work that that's a fair

8    use?

9        MS. McSHERRY:  Objection, argumentative,

10   ambiguous, vague, calls for speculation and calls for

11   legal conclusion.

12       THE WITNESS:  I don't know.

13   Q.    MR. KLAUS:  What was your purpose in posting

14   Let's Go Crazy #1 to YouTube, Ms. Lenz?

15   A.    I wanted people to see the video.

16   Q.    Which people did you want to see the video?

17   A.    My mother and the readers of my blog.

18   Q.    Did you want members of the general public to

19   see the video as well?

20   A.    I didn't mind members of the general public

21   seeing the video.

22   Q.    Do you like members of the general public

23   seeing the videos that you post to YouTube in

24   general?

25       MS. McSHERRY:  Objection, argumentative.

1          (Deposition Exhibit 9 marked for

2            identification.)

3     Q.     MR. KLAUS:  Ms. Lenz, is Exhibit No. 9 the

4     notice that you received from YouTube regarding the

5     Let's Go Crazy #1 posting?

6     A.     Yes.

7     Q.     Looking at this, does this refresh your

8     recollection that you received that notice on or

9     about June 5th of 2007?

10    A.     Yes.

11    Q.     Did -- when you received this, did you

12    understand this to be a form notice that you were

13    receiving from YouTube?

14          MS. McSHERRY:  Objection, vague, ambiguous.

15          THE WITNESS:  I didn't know what it was.

16    Q.     MR. KLAUS:  Did you think this looked like

17    the sort of thing that was sent to a number of

18    people, not just you?

19          MS. McSHERRY:  Objection, calls for

20    speculation.

21          THE WITNESS:  Because it didn't use my user

22    name, I was suspicious that it might not actually be

23    from YouTube.

24    Q.     MR. KLAUS:  Okay.  Who did you think it might

25    be from?

1    this second paragraph under how to make sure your

2    video does not infringe someone else's copyrights?

3         THE WITNESS:  I don't --

4         MS. McSHERRY:  Same objections.

5         THE WITNESS:  I don't know.

6    Q.    MR. KLAUS:  Do you have any reason to doubt

7    that was YouTube's policy?

8    A.    No.

9         MR. KLAUS:  Let me mark as Exhibit No. 11.

10        (Deposition Exhibit 11 marked for

11        identification.)

12   Q.    MR. KLAUS:  Ms. Lenz, is this a true and

13   correct copy of an e-mail that you sent to

14   copyright@youtube on June 5th, 2007, at about 1:00

15   o'clock in the afternoon?

16   A.    Yes.

17   Q.    And this is -- and is it your best

18   recollection that this is your first response to

19   YouTube after receiving the notice?

20   A.    Yes.

21   Q.    Did you talk to anyone between the time you

22   received the notice and the time that you wrote back

23   to YouTube at 1:02 p.m. about the notice?

24   A.    I'm not sure.

25   Q.    Did you have any e-mail communication with

Lenz, Stephanie - Vol. 01  9/16/2009  12:00:00 PM

1    anyone about the notice between the time that you got

2    it and the time that you sent back this response?

3    A.    I don't know.

4    Q.    I'd like to ask you to look at the e-mail

5    that you sent.  The first thing that you've done is

6    you've copied the communication that YouTube sent to

7    you, right?

8    A.    Yes.

9    Q.    And you say that you're writing this as a

10   counter-notice, right?

11   A.    Yes.

12   Q.    You say:  "I do not believe the video in

13   question violated copyright or infringed on copyright

14   in any way."  Do you see that?

15   A.    Yes.

16   Q.    Why did you say that?

17        MS. McSHERRY:  Objection, calls for legal

18   conclusion.

19        THE WITNESS:  I wrote it because I don't

20   believe the video violated or infringed copyright.

21   Q.    MR. KLAUS:  Why did you think the video

22   didn't violate copyright or infringe copyright in any

23   way as of June 5th, 2007?

24   A.    Because I created the video.

25   Q.    But you -- why would that mean that it

**SER 137**

1    video of the -- what was the posting for Let's Go

2    Crazy #1, couldn't you?

3        MS. McSHERRY:  Objection, calls for

4    speculation.

5        THE WITNESS:  I could have.

6    Q.    MR. KLAUS:  You could have done it without

7    the audio, right?

8        MS. McSHERRY:  Same objection.

9        THE WITNESS:  I suppose so.

10    Q.    MR. KLAUS:  And would there be any question

11    in your mind if it didn't include the music that that

12    would not be an infringement of copyright?

13        MS. McSHERRY:  Objection, calls for a legal

14    conclusion.

15        THE WITNESS:  I don't know now who's going to

16    accuse me of copyright infringement.  I don't know if

17    the kids were wearing a Disney shirt Disney might say

18    you're using our image in your video.  So...

19    Q.    MR. KLAUS:  I'm talking about the video that

20    was actually posted --

21    A.    Yes.

22    Q.    -- Ms. Lenz.  If it didn't have the music

23    Let's Go Crazy, you don't have any doubt that there

24    wouldn't be an issue about copyright infringement, do

25    you?

1      MS. McSHERRY:  Objection, leading, calls for

2    legal conclusion, calls for speculation and asked and

3    answered.

4      THE WITNESS:  I don't believe it infringes

5    copyright as it stands.

6    Q.    MR. KLAUS:  I'm not -- that's not my

7    question, Ms. Lenz.  My question is if it didn't have

8    the audio sound track with Let's Go Crazy, the music

9    in it, you don't think -- you don't think there would

10    be any question about whether there was infringement,

11    do you?

12      MS. McSHERRY:  Same objections.

13      THE WITNESS:  I think the video still would

14    not be infringing copyright.

15    Q.    MR. KLAUS:  You don't think -- you don't

16    think that it would be.  And it wouldn't be impinging

17    on your free speech rights to post that video without

18    that music to YouTube, would it?

19      MS. McSHERRY:  Objection, leading, ambiguous

20    and vague, misstates prior testimony, assumes facts

21    and calls for a legal conclusion and speculation.

22      THE WITNESS:  Could you repeat the question?

23      MS. McSHERRY:  I'm done.

24      THE WITNESS:  I got lost.

25    Q.    MR. KLAUS:  I did, too.  If you reposted the

1    video without the song Let's Go Crazy in it, there

2    would be no impingement of your free speech rights,

3    would there, Ms. Lenz?

4        MS. McSHERRY:  Same objections.

5        THE WITNESS:  Could you repeat it one more

6    time or read back?

7    Q.    MR. KLAUS:  Sure.  If you reposted the song

8    without Let's Go Crazy, that wouldn't have any effect

9    on your free speech rights, would it?

10   A.    Reposted the video?

11   Q.    Without -- without the music on the sound

12   track, there would be no impingement on your free

13   speech rights, would there?

14       MS. McSHERRY:  Again, same objections, also

15   ambiguous and vague.

16       THE WITNESS:  I'm just not clear on what the

17   comparison is.

18   Q.    MR. KLAUS:  I'm asking -- I'm trying to

19   figure out what you mean by your free speech rights,

20   Ms. Lenz, and I'm trying to figure out what does the

21   music that's on the video have to do with your free

22   speech rights.

23   A.    I don't --

24       MS. McSHERRY:  Is there a question?

25   Q.    MR. KLAUS:  What does the music Let's Go

1    Crazy have to do with your free speech rights on that

2    video?

3        MS. McSHERRY:  Objection, calls for legal

4    conclusion.

5        THE WITNESS:  My free speech right is about

6    the video as an entirety, not about the music.

7    Q.    MR. KLAUS:  Okay.  So you could still express

8    yourself in the same way without the music, couldn't

9    you?

10       MS. McSHERRY:  Objection, leading.

11       THE WITNESS:  I don't think so.

12   Q.    MR. KLAUS:  So you think the music is

13   important to the posting?

14   A.    It's -- it's there in the background.  I

15   think to take the audio out makes a new work.

16   Q.    Right, it makes a different work, doesn't it?

17   A.    I would say so.

18   Q.    Okay.  So the music, in your view, is

19   important to the video, isn't it?

20   A.    I don't know if I'd characterize it as

21   important.

22   Q.    Why does it make -- what's different about

23   your free speech rights or your creative expression,

24   Ms. Lenz, if the music is there or not there?

25       MS. McSHERRY:  Objection, compound and calls

1    Q.    Do you see your first line says:  "...my best

2    bet if I get sued is to contact Good Morning

3    America?"  Do you see that?

4    A.    Yes.

5    Q.    (As read):  Because I'd be happy to go to the

6    national media with this.

7          Is that an example of an emoticon that you've

8    got there?

9    A.    Yes.

10   Q.    And what were you intending to convey with

11   that?

12         MS. McSHERRY:  Objection, assumes facts.

13         THE WITNESS:  Probably that I'm just kidding.

14   Q.    MR. KLAUS:  Okay.  And you then say, third

15   paragraph:

16          "This is seriously the stupidest thing

17          I've heard in a long time, going after

18          someone for a video with music playing in the

19          background.  With all the real copyright

20          issues they could fight.  It makes me angry."

21          Do you see that?

22   A.    Yes.

23   Q.    Did you still as of June 6, 2007 -- strike

24   that.

25          As of the time you sent this e-mail, did you

**SER 142**

1    have any thoughts about contacting Universal to see

2    whether what had happened was a mistake?

3    A.      I don't think I ever thought of contacting

4    Universal.

5    Q.      Did you ever think -- did you think there was

6    a possibility that what had happened was a mistake?

7    A.      I thought that perhaps the removal of my

8    video had been a mistake.

9    Q.      Why didn't -- okay.  You -- why didn't you

10   say that to anyone?

11   A.      I said it --

12          MS. McSHERRY:  Assumes facts.  Objection,

13   assumes facts.

14          THE WITNESS:  I thought I had said so to

15   YouTube.

16   Q.      MR. KLAUS:  What did you say to give

17   YouTube -- to tell YouTube that you thought it was a

18   mistake?

19   A.      I don't remember.

20   Q.      Why did you think it might have been a

21   mistake?

22   A.      Because I didn't feel that my video was

23   infringing copyright.

24   Q.      Why didn't you think that?

25          MS. McSHERRY:  Objection, asked and answered.

SER 143

1      THE WITNESS:  Because I was the creator of my

2   video.

3   Q.      MR. KLAUS:  Who did you think had made a

4   mistake, Ms. Lenz?

5   A.      I don't -- at the time I believed that maybe

6   there was an automated system that removed videos

7   instead of videos being individually selected.  I

8   thought perhaps there had been an electronic glitch

9   or error.

10  Q.      This was as of June 6th, you thought that

11  there had been an automated system that had removed

12  your video?

13  A.      Yes.

14  Q.      Did you think there was a possibility that

15  someone had watched your video and asked for it to be

16  removed?

17      MS. McSHERRY:  Objection, calls for

18  speculation.

19      THE WITNESS:  I thought it was possible but

20  not likely.

21  Q.      MR. KLAUS:  Why did you think it was not

22  likely?

23  A.      Because I thought that my video was

24  non-infringing and I thought that anyone who would

25  see it would believe the same.

1    Q.      MR. KLAUS:  This is Exhibit No. 23.  Is this

2    the client retainer agreement that you instituted

3    with EFF?

4    A.      Yes.

5    Q.      Turn to page 5 of the document.  Is that your

6    signature on the last page?

7    A.      Yes.

8    Q.      Ms. Hoffman's signature above it?

9    A.      I assume so.

10           MS. McSHERRY:  Objection, the document speaks

11   for itself.

12   Q.      MR. KLAUS:  You're not paying EFF anything

13   for their representation of you in this case?

14   A.      No.

15           MS. McSHERRY:  Objection, leading.

16   Q.      MR. KLAUS:  There is another law firm, Keker

17   & Van Nest, that's representing you in this case,

18   correct?

19   A.      Yes.

20   Q.      Are you paying them anything for their

21   services?

22   A.      No.

23   Q.      Are you paying them anything for the costs

24   that they expend on your behalf?

25           MS. McSHERRY:  Objection, vague.

1      THE WITNESS:  No.

2    Q.    MR. KLAUS:  You have another law firm that's

3    involved --

4      MS. McSHERRY:  Folger, Levin & Kahn.

5      MR. KLAUS:  Thank you.

6    Q.    There are a lot of law firms involved on your

7    side, Ms. Lenz.  Folger, Levin & Kahn.  They are

8    representing you, correct?

9    A.    I believe so.

10   Q.    Do you have any separate written agreement

11   with that law firm?

12   A.    I don't know.

13   Q.    Do you have any separate written agreement

14   with Keker & Van Nest?

15   A.    I don't know.

16   Q.    Is Folger, Levin & Kahn charging you anything

17   for their services in this case?

18     MS. McSHERRY:  Objection, vague.

19     THE WITNESS:  No.

20   Q.    MR. KLAUS:  I'd like to ask you to look at

21   the top of page 3 which says Assignment of Attorneys'

22   Fees.  Do you see that?

23   A.    Yes.

24   Q.    It says:

25      "If you prevail in this action, a court

1    "'settlement' is not in our collective vocabulary"?

2        MS. McSHERRY:  Objection, calls for

3    speculation, incomplete hypothetical.

4        MR. KLAUS:  How does that call for

5    speculation?

6        MS. McSHERRY:  Okay.  I'll withdraw that

7    objection as a hypothetical.

8        THE WITNESS:  Can you repeat the question?

9    Q.    MR. KLAUS:  You said it's a possibility --

10   you said it's a 50/50 possibility of it being your

11   husband.

12   A.    Uh-huh.

13   Q.    If it's your husband, what does it mean to

14   say, "'settlement' isn't in our collective

15   vocabulary"?

16       MS. McSHERRY:  Oh, objection on the ground of

17   privilege and hypothetical.  I'm going to instruct

18   her not to answer.

19       MR. KLAUS:  Exhibit No. 25.

20           (Deposition Exhibit 25 marked for

21            identification.)

22   Q.    MR. KLAUS:  Is Exhibit 25, Ms. Lenz, an

23   e-mail that you sent to YouTube on or about June 27,

24   2007?

25   A.    Yes.

1   Q.      And did you intend this to be a

2   counter-notice to Universal's notice?

3   A.      Yes.

4   Q.      Did your lawyers help you draft this?

5   A.      No.

6   Q.      You drafted this by yourself?

7   A.      I did a cut and paste of information that was

8   provided by YouTube.

9   Q.      That's how you prepared this?

10  A.      I believe so.

11  Q.      Did your lawyers make any comment on this?

12          MS. McSHERRY:  Instruct not to answer on the

13  grounds of privilege.

14  Q.      MR. KLAUS:  YouTube restored your Let's Go

15  Crazy #1 posting to YouTube after you sent this

16  notice, didn't they?

17  A.      I believe some time after.

18  Q.      Couple of weeks after?

19  A.      I'm not sure of the date.

20  Q.      The video has remained up there to this day?

21  A.      Yes.

22          MR. KLAUS:  Exhibit No. 26.

23            (Deposition Exhibit 26 marked for

24              identification.)

25  Q.      MR. KLAUS:  Is this an e-mail that you sent

**SER 148**

1    behalf?

2    A.    I don't know.

3    Q.    I'd like to ask you if you would, Ms. Lenz,

4    to turn to the second page of the document and to

5    line 4, which says:  "Ms. Lenz seeks damages pursuant

6    to the remedies set forth in 17 U.S.C. § 512(f)."

7         Do you see that?

8    A.    Yes.

9    Q.    It says:  "Those damages include," and it

10   says:  "Time and other resources spent by Ms. Lenz."

11        Do you see that?

12   A.    Yes.

13   Q.    Your attorneys write:

14        "Ms. Lenz spent approximately five to ten

15        hours before filing this lawsuit on tasks

16        such as obtaining counsel, determining how to

17        send a counter-notice, sending the

18        counter-notice, sending a revised

19        counter-notice after Universal objected to

20        the first counter-notice, ensuring that

21        access to her video had been restored."

22        Do you see that?

23   A.    Yes.

24   Q.    Is that a true statement?

25   A.    Yes.

1    Q.    It says that:  "Ms. Lenz spent at least

2    20 hours on this lawsuit from July 24, 2007, through

3    June 30, 2009."

4          Do you see that?

5    A.    Yes.

6    Q.    Is that a true statement?

7    A.    Yes.

8    Q.    It says (As read):

9          Ms. Lenz's time should be valued at the

10         rate set by the jury in light of all the

11         facts, but in no event less than the

12         Pennsylvania minimum wage at the time, which

13         was $6.25 an hour.

14         Do you see that?

15   A.    Yes.

16   Q.    Ms. Lenz, between the time that Universal --

17   strike that.

18         Between the time that you received the notice

19   from YouTube on June 5th, 2007, through the present,

20   have you been employed by anyone in the State of

21   Pennsylvania?

22   A.    What were the dates again?

23   Q.    Between the date you received the notice from

24   YouTube, June 5th, 2007, and the present, have you

25   been employed by anyone in the State of Pennsylvania?

1    A.    I'm self-employed now.

2    Q.    At what point in time did you become

3    self-employed?

4    A.    August 1st.

5    Q.    August 1st of 2009?

6    A.    Yes.

7    Q.    That was while the lawsuit was pending?

8    A.    Yes.

9    Q.    And do you -- you're self-employed.  That's

10   the business that you said that you run.  Is it

11   Tasteful Treasures?

12   A.    Yes.

13   Q.    Do you pay yourself a salary in connection

14   with your work on that business?

15   A.    No.

16   Q.    Do you receive any wages of any kind for your

17   work on that business?

18   A.    No.

19   Q.    With the exception of your work running

20   Tasteful Treasures, since August 1st, 2009, is there

21   any time between your receipt of the notice from

22   YouTube on June 5th, 2007, and the present that you

23   have earned wages of any kind for your work?

24   A.    No.  Can I clarify something?  It's Tasteful

25   Treasures by Stephanie.

1   Q.    That's the full name of your business?

2   A.    Tasteful Treasures is actually the business

3   from which I'm a distributor.

4   Q.    Okay.  Thank you for the clarification.

5         If I could ask you, Ms. Lenz, to look at the

6   paragraph that has the little b, Resources.  Do you

7   see that?

8   A.    Yes.

9   Q.    Your attorneys have written here that

10  Ms. Lenz expended resources on your pre-lawsuit

11  efforts, including the use of your computer.  Do you

12  see that?

13  A.    Yes.

14  Q.    Do you believe -- first of all, do you

15  understand what -- strike that.

16        What is the -- what do you understand your

17  attorneys are referring to when they write "your

18  pre-lawsuit efforts" here?

19  A.    My assumption would be when I was gathering

20  information, contacting Creative Commons, contacting

21  EFF, looking at the information that YouTube provides

22  on how to send a counter-notice.

23  Q.    What were the resources that you expended in

24  connection with what you just described prior to

25  filing the lawsuit?

1   A.      Reading online, sending e-mails, sending

2   forms, meaning form contact, letters.

3   Q.      Anything else?

4   A.      I can't think of anything in particular.

5   Q.      Did anything prior to -- any of those

6   activities prior to the filing of the lawsuit involve

7   any expenditure of money on your part?

8           MS. McSHERRY:  Objection, vague and

9   ambiguous.

10          THE WITNESS:  No.

11  Q.      MR. KLAUS:  Your lawyers write that:  "For

12  purposes of the present lawsuit, Ms. Lenz seeks only

13  nominal damages for her pre-lawsuit expenditure of

14  these resources."

15          Do you see that?

16  A.      Yes.

17  Q.      Do you know what nominal damages are?

18          MS. McSHERRY:  Objection, calls for legal

19  conclusion.

20          THE WITNESS:  I'm not sure.

21  Q.      MR. KLAUS:  The next sentence says that:

22  "Ms. Lenz has also spent resources on this lawsuit,

23  including $174.89 for the purchase of a hard drive

24  from July 24, 2007, through June 30, 2009."

25          Do you see that?

SER 153

1    A.    Yes.

2    Q.    What was the -- can you explain what the

3    purchase of the hard drive was that's referred to on

4    page 1, lines 24 through 25 of Exhibit No. 39?

5    A.    The hard drive is an external hard drive that

6    we use to back up the computer that I had originally

7    downloaded the Let's Go Crazy #1 video to.

8    Q.    And why did you purchase that hard drive?

9    A.    To back up the contents of the hard drive on

10   the computer itself.

11   Q.    Did you do that after the lawsuit had been

12   filed?

13   A.    I would need to look at the dates.  I'm not

14   sure.

15        MR. KLAUS:  I'm going to mark as Exhibit No.

16   40.

17        (Deposition Exhibit 40 marked for

18         identification.)

19   Q.    MR. KLAUS:  Is Exhibit No. 40, Ms. Lenz, the

20   credit card bill that reflected the purchase of the

21   hard drive that you were just describing?

22   A.    Yes.

23   Q.    That's a purchase from the Best Buy, I think?

24   A.    Yes.

25   Q.    And the date of the statement or the date of

1   the statement is January 2008.  Do you see that?

2   A.     Yes.

3   Q.     And the transaction date is December 22nd for

4   the Best Buy purchase.  Do you see that?

5   A.     Yes.

6   Q.     Looking at that, does that refresh your

7   recollection that you bought the external hard drive

8   that you described on or about December 22nd, 2007?

9   A.     Oh, yes.

10  Q.     And, again, the purpose in doing that -- your

11  purpose in buying that hard drive was to preserve

12  evidence for your lawsuit?

13  A.     Yes.

14  Q.     If we could return to Exhibit 39, Ms. Lenz.

15  If I could ask you please to look at the second page

16  of this document, paragraph number 2, the loss of

17  access to YouTube's hosting services for the Lenz

18  video.

19         Do you see that?

20  A.     Yes.

21         MS. McSHERRY:  For clarity, just because you

22  referred to page 1, it's a little confusing with the

23  numbering.

24         MR. KLAUS:  Thank you, Ms. McSherry.  Let

25  me -- let me -- let me just strike this, Ms. Lenz,

1          I declare under penalty of perjury that

2     the foregoing is true and  correct.  Subscribed at

3     _____, California, this _____ day of

4     _____,  2009.

5

6

7                    _____

8                    Signature of Witness

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1           CERTIFICATE OF REPORTER

2          I, WENDY E. ARLEN, a Certified Shorthand

3    Reporter, hereby certify that the witness in the

4    foregoing deposition was by me duly sworn to tell the

5    truth, the whole truth and nothing but the truth in the

6    within-entitled cause;

7         That said deposition was taken down in shorthand

8    by me, a disinterested person, at the time and place

9    therein stated, and that the testimony of the said

10   witness was thereafter reduced to typewriting, by

11   computer, under my direction and supervision.

12        That before completion of the deposition, review

13   of the transcript was requested.  If requested, any

14   changes made by the deponent (and provided to the

15   reporter) during the period allowed are appended hereto.

16       I further certify that I am not of counsel or

17   attorney for either or any of the parties to the said

18   deposition nor in any way interested in the event of

19   this cause and that I am not related to any of the

20   parties thereto.

21        DATED:_____, 2009

22

23       _____

24   WENDY E. ARLEN CSR, No. 4355

25

SER 157

DEPOSITION OF Stephanie Lenz
Taken:  September 16, 2009

| PAGE:LINE | CORRECTION | REASON |
|-----------|------------|--------|
| 81:7 | "comments" should be "Commons" | Mistranscribed. |
| 86:16 | "received in communication" should be "received in a privileged communication" | Mistranscribed. |
| 146:9 | "express" should be "expression" | Mistranscribed. |
| 229:5 | "No" should be "Yes" | I recall that my attorneys drafted the second counter-notice; during the deposition my answers were based on my recollection of preparing the first counter-notice. |
| 229:7-8 | "I did a cut and paste of information that was provided by YouTube" should be "My attorneys prepared it" | I recall that my attorneys drafted the second counter-notice; during the deposition my answers were based on my recollection of preparing the first counter-notice. |
| 244: 22 | ""you to answer" should be "you not to answer" | Mistranscribed. |
| 260:22 | "I don't know what the notice was" should be "I don't recall whether I've seen the notice" | Clarification; I was not sure whether I had seen the notice before. |
| 260:25 | "I don't know" should be "I don't recall whether I've seen the notice" | Clarification; I was not sure whether I had seen the notice before. |
| 261:1-3 | "I'm not sure" should be "I don't recall" | Clarification; I had not reviewed the Complaint for some time prior to the deposition, and did not recall the specific allegation at the time I gave this response. |

1

| 324:8-9 | "to ensure that action with video" should be "to advise her in connection with ensuring that access to her video" | I have reviewed the exhibit to which this testimony refers and the original quotation, as transcribed, was inaccurate. |
|---------|------------------------------------------------------------------------------------------------------------------------|-----------------------------------------------------------------------------------------------------------------------|

_____

Stephanie Lenz

SER 159

1  Kurt Opsahl, Esq. (SBN 191303)
   *kurt@eff.org*
2  Jason Schultz (SBN 212600)
   *jason@eff.org*
3  Corynne McSherry (SBN 221504)
   *corynne@eff.org*
4  Marcia Hofmann (SBN 250087)
   *marcia@eff.org*
5  ELECTRONIC FRONTIER FOUNDATION
   454 Shotwell Street
6  San Francisco, CA 94110
   Telephone: (415) 436-9333
7  Facsimile: (415) 436-9993

8

9  Attorneys for Plaintiff
   STEPHANIE LENZ

10              **UNITED STATES DISTRICT COURT**

11        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

12                   **SAN JOSE DIVISION**

13

14  STEPHANIE LENZ,                    )   No. C 07-03783-JF
                                       )
15                      Plaintiff,     )   OPPOSITION TO MOTION TO DISMISS
                                       )   AND SPECIAL MOTION TO STRIKE
16        v.                           )
                                       )   DATE: December 7, 2007
17  UNIVERSAL MUSIC CORP., UNIVERSAL   )   TIME: 9:00 a.m.
                                       )   CTRM: 3 (Hon. Jeremy Fogel)
18  MUSIC PUBLISHING, INC.,            )
                                       )
19        and                          )
                                       )
20  UNIVERSAL MUSIC PUBLISHING GROUP,  )
                                       )
21                      Defendants.    )
                                       )
22  _____)

23

24

25

26

27

28

appears on its face to track perfectly *every single requirement* of a Section 512 notice, Universal states that it "does not agree that a notice in accordance with YouTube's Terms of Use is notification pursuant to the DMCA[.]"  Mem. P. & A. in Supp. of Def.'s Mot. to Dismiss ("Motion") at 5.  This is not a proper basis for a motion to dismiss.  To the contrary, on a motion to dismiss, a court must treat all allegations in the complaint as true.  *Leatherman v. Tarrant Cty Narcotics Intell. Unit.,* 507 U.S. 163, 164 (1993).  Thus, Universal's disagreement with Lenz's allegations is irrelevant and improper.[1]  If Universal wishes to try to raise a factual dispute about its notice, it must do so on summary judgment or at trial.  *Celotex,* 477 U.S. at 327.

Universal's first asserted ground for dismissal must be denied.

### B.  Lenz Has Properly Pled The Knowledge Standard For 512(f) Actions Under Both *Rossi* And *Diebold*

Next, Universal argues that Lenz has failed to plead that it had "actual knowledge" of the material misrepresentation it made.  This is both untrue and an inaccurate statement of the proper legal standard in 512(f) cases.  First, Lenz *has* pled actual knowledge.  Specifically, Lenz alleges that Universal "*knew* or should have known" that the Holden Video was non-infringing when it sent its DMCA notice.  Am. Cmplt. ¶ 19.  The "knew" language in the allegation is an allegation of actual knowledge.

Second, Universal misapplies the "actual knowledge" standard for 512(f) *factual investigations* under *Rossi v. MPAA,* 391 F.3d 1000 (9th Cir. 2004), instead of the appropriate and controlling standard for 512(f) *legal determinations* established by this Court in *Online Policy Group v. Diebold*, 337 F.Supp.2d 1195 (N.D.Cal. 2004).  In *Rossi*, the Ninth Circuit examined whether and to what extent a copyright holder must conduct a factual investigation before sending a DMCA Notice in order to meet the "good faith" standard required by the statute.  Rossi had established a website bearing *per se* hallmarks of copyright infringement, such as graphics for a number of unauthorized MPAA movies and the statements "Full Length Downloadable Movies"

---

[1] Notwithstanding Universal's improper procedural argument, Section 8 of YouTube's Terms of Use expressly states "only DMCA notices should go to the Copyright Agent [with the email address copyright@youtube.com]".  Klaus Decl., Ex. A.  Pre-discovery evidence shows that Universal sent its notice to this exact email address.  *Id.* at Ex. C.

OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE

**SER 161**

and "NOW DOWNLOADABLE." *Rossi,* 391 F.3d at 1002. The MPAA employee investigating the site saw these indicia and correctly concluded (based on his subjective and actual knowledge of the facts) that, were such facts true, copyright infringement of MPAA movies was occurring on the site.

On appeal, Rossi argued that the MPAA lacked *sufficient information* to form a "good faith" belief under Section 512(c)(3)(A)(v) that he was infringing their copyrights and that they should have done a reasonable *factual investigation* to determine whether or not infringement was occurring. *Id.* at 1003. The Court rejected this argument, holding the statements on Rossi's website provided a sufficient basis to conclude that infringement was occurring:

> These representations on the website led the MPAA employee to conclude in good faith that motion pictures owned by MPAA members were available for immediate downloading from the site. The unequivocal language used by Rossi not only suggests that conclusion, but virtually compels it…. In fact, Rossi even admitted that his own customers often believed that actual movies were available for downloading on his website.

*Id*. Based on these facts, the Court held that the MPAA had a sufficient basis for its good faith belief under Section 512 and that such a belief need only be based on the *actual subjective knowledge* of the facts available to the notice sender and not on any further investigation. *Id.* at 1005-6; *see also Dudnikov v. MGA Entmt., Inc.*, 410 F.Supp.2d 1010, 1013 (D. Colo. 2005) (following *Rossi* and finding that DMCA notice sender had actual knowledge of sufficient facts to form good faith belief that infringement was occurring). Notably, the *Rossi* court did not refer to the standard for making the legal determination of infringement under Section 512, as there was no dispute that offering the full films for download was infringing activity.[2]

Here, we have exactly the opposite situation. Lenz has alleged that Universal had *actual subjective knowledge* of all of the relevant facts concerning the Holden Video. Watching the 29-second video gave Universal all the facts it needed to know about the Holden Video and the extent to which it used any of Universal's copyrighted works. This is all *Rossi* requires and is exactly what Lenz has plead. Universal instead disputes the standard for the *legal determination* of

---

[2] In fact, as the Ninth Circuit noted, there was no suggestion in the record that the MPAA's belief regarding Rossi's asserted infringement was other than sincere. *See Rossi*, 391 F.3d at 1005 n. 8.

1  whether the Holden Video infringes.  However, as noted above, this standard was not addressed by

2  *Rossi*; instead, it was addressed by this Court in *Diebold*.

3      In *Diebold*, as is the case here, there was no dispute as to the factual basis for the

4  Defendant's DMCA notices.  The parties agreed that the copyrighted works at issue were the email

5  archives from Diebold's corporate email system and that the plaintiffs had posted them in their

6  entirety on their web servers.  337 F.Supp.2d at 1198-99.  At issue instead was whether the posting

7  of those works was a fair use under the Copyright Act and, most importantly, whether Diebold

8  knew or should have known that such postings were fair use when it sent its DMCA notice.  *Id*. at

9  1204.  This Court held on summary judgment that Diebold had violated Section 512(f) because it

10  knew or should have known that the postings were fair.[3]  *Id.*

11      This distinction between the knowledge standards for factual investigation versus legal

12  determination is further supported by both the legislative history of Section 512 as well as *Perfect

13  10 v. ccBill*, 488 F.3d 1102 (9th Cir. 2007), another DMCA decision by the Ninth Circuit.  In the

14  Senate Report on Section 512, Congress made it clear that Section 512 was intended to "balance

15  the need for rapid response to potential infringement *with the end-users legitimate interests in not

16  having material removed without recourse.*"  Sen. Rep. No. 105-190 at 21 (1998) (emphasis

17  added); *see also id* at 49 (Section 512(f) "is intended to deter knowingly false allegations to service

18  providers in recognition that such misrepresentations are detrimental to rights holders, service

19  providers, and *Internet users*." (emphasis added)).  Thus, in passing Section 512(f), Congress

20  expressed a clear intent to protect Internet users who post non-infringing material online and to

21  deter abuse of the Section 512 notice-and-takedown regime.

22      Under Universal's interpretation, Section 512(f) becomes a dead letter.  By arguing an

23  "actual knowledge" standard for legal determinations, Universal is arguing that no copyright holder

24  can ever violate section 512(f) unless a court has previously ruled that the material at issue is non-

25  infringing.  Such a rule would directly contradict the purpose and structure of Section 512.  As

---

[3] Universal argues that *Diebold* was overturned by *Rossi*, as the *Rossi* opinion was filed two months after *Diebold* was announced by this Court.  However, there is no mention of *Diebold* in the *Rossi* opinion or in the briefing before the Ninth Circuit in the case.  Thus, one cannot presume that the Ninth Circuit meant to address the *Diebold* rule, let alone overturn it.

noted above, Section 512 was enacted by Congress to allow for rapid responses to potential copyright infringement. 17 U.S.C. § 512(c) (describing takedown procedures), (g) (describing procedures for reinstating material contingent on copyright owner's response to counter-notice), and (h) (authorizing pre-litigation subpoenas to identify users who posted allegedly infringing material). Thus, Section 512 was meant as an alternative or, in some instances, a precursor to a possible infringement lawsuit, not an antecedent. If 512(f) liability were only available *after* an infringement action, there would be no point to the 512 process.

Moreover, such an interpretation of 512(f) would fail to achieve the two goals set forth by Congress in the legislative history – to protect end users posting non-infringing material from frivolous takedowns and to deter abuse of the DMCA notice process. Under Universal's theory, a copyright owner's subjective belief that infringement had occurred, no matter how unreasonable, could shield frivolous or malicious DMCA takedowns from any form of review or redress under 512(f). For example, Universal could incorrectly claim that a video that merely mentioned the phrase "Let's Go Crazy" (without copying a single note) was an infringement of its copyright, or that a review of Prince's new album was infringing. DMCA takedowns for these examples would be excused, under Universal's interpretation, because there was no *ex ante* legal determination on the issue and thus, no way for Universal to "actually know" the legal status of the material's use.[4]

In fact, under Universal's incorrect standard, even Diebold, whom this Court held violated

---

[4] Such abusive takedown practices are not hypothetical. Attacks on free speech through Section 512 misuse are well-documented. *See Landmark Education at* http://www.eff.org/cases/landmark-and-internet-archive (last visited Nov. 9, 2007) (controversial education foundation sent DMCA takedown against critical documentary that showed a few pages of its manual for a few seconds); *Sapient v. Geller at* http://www.eff.org/cases/sapient-v-geller (last visited Nov. 9, 2007) (Well-known spoon-bending paranormalist sent DMCA takedown against critical 15-minute documentary based on an alleged infringing eight seconds of introductory footage); *MoveOn, Brave New Films v. Viacom at* http://www.eff.org/cases/moveon-brave-new-films-v-viacom (last visited Nov. 9, 2007) (Viacom sent DMCA takedown notice for parody of Colbert Report), *Malkin v. Universal at* http://www.eff.org/deeplinks/2007/05/malkin-fights-back-against-copyright-law-misuse-universal-music-group (last visited Nov. 9, 2007) (Universal sent DMCA notice for criticism of Akon using short clips of videos for purposes of criticism); *Diehl v. Crook at* http://www.eff.org/cases/diehl-v-crook (last visited Nov. 9, 2007) (interviewee sent DMCA takedown notice claiming copyright in Fox News' use of his image in the interview).

**SER 164**

512(f) because it sent a DMCA takedown notice when "no reasonable copyright holder could have believed that the portions of the email archive discussing technical problems with [its] voting machines were protected by copyright[,]" *Diebold*, 337 F.Supp.2d at 1204, would have escaped 512(f) liability because at the time Diebold sent the notice, no court had expressly ruled on the legal status of posting the email archive. Such a standard would provide no protection for end users and no deterrence for abuse of the DMCA process. It cannot be what Congress intended.

Finally, the *Rossi/Diebold* standards are supported by the Ninth Circuit's recent decision in *Perfect 10 v. ccBill,* 488 F.3d 1102 (9th Cir. 2007). In *ccBill*, the Court stated:

> The DMCA requires a complainant to declare, under penalty of perjury, that he is authorized to represent the copyright holder, and that he has a good-faith belief that the use is infringing. This requirement is not superfluous. Accusations of alleged infringement have drastic consequences: A user could have content removed, or may have his access terminated entirely. If the content infringes, justice has been done. But if it does not, speech protected under the First Amendment could be removed. We therefore do not require a service provider to start potentially invasive proceedings if the complainant is unwilling to state under penalty of perjury that he is an authorized representative of the copyright owner, and that he has a good-faith belief that the material is unlicensed.

488 F.3d at 1112. As the Ninth Circuit emphasized, the requirements of 512(c) are important safeguards of a user's First Amendment rights. Section 512(f) is the primary remedy that Congress gave those users to vindicate abuse of those rights. Thus, the "good faith belief" requirement must have some teeth in order to offer users recourse. The requirement that copyright holders face liability for 512 notices when they knew or should have known, based on their actual knowledge of the facts, that material is non-infringing provides that recourse. This is the balance struck by *Rossi* and *Diebold* and intended by Congress.

Lenz's complaint meets these standards. Lenz has pled that, having actual subjective knowledge of all the relevant facts, Universal sent its DMCA notice to YouTube *in bad faith*, knowingly misrepresenting that an infringement had taken place. Am. Cmplt. ¶ 14, 17-20. Lenz has pled under *Diebold* that Universal knew or should have known when it sent its notice that Lenz's use of the work was non-infringing and by sending their notice, Universal was materially misrepresenting that knowledge.[5] *Id.*

---

[5] Universal also argues that there is no way for a copyright owner to tell, prior to an express court ruling, whether or not a particular use is infringing or fair. *See* Motion at 12-14. This argument

1    sue plaintiffs did not eliminate jurisdiction. *Id.* at 1376; *see also Uniform Prod. Code Council v.*

2    *Kaslow*, 460 F. Supp. 900, 903 (S.D.N.Y. 1978) ("ultimate exposure of plaintiff to an action by

3    defendant ... clearly gives plaintiff standing to bring an action for declaratory judgment . . . .").

4    And in a case cited by Universal itself, a court found declaratory judgment jurisdiction applied to a

5    claim by an employee who, though currently employed by the defendant, would be exposed to an

6    adverse calculation of benefits, based on a disputed policy, in the event that she left the company or

7    was terminated. *Hulteen* v. *AT&T Corp.,* 498 F.3d 1001, 1004 n.1 (9th Cir. 2007). In other words,

8    the defendant's's refusal to change the policy created a sufficiently substantial dispute to justify

9    jurisdiction even though legal action might never occur.

10    Lenz, like the plaintiffs in *Sandisk* and *Hulteen*, is exposed to a possible action by

11    Universal. The dispute is definite and concrete—Universal has claimed that a particular video is

12    infringes its copyrights, and that statement has already had the real and substantial consequence of

13    causing the removal of the video from YouTube for six weeks. Like the Defendant in *Hulteen*,

14    Universal refuses to admit that its view of the law is incorrect, forcing Lenz, like the *Hulteen*

15    plaintiff, to exist in a legal limbo, awaiting an infringement claim that may or may not come. *See*

16    Motion at 4 (alleging Plaintiff's use has resulted in thousands of infringements). Until Lenz is

17    released from potential liability, the dispute between the parties remains alive.

18                                  **IV.    CONCLUSION**

19    For the reasons stated above, this Court should deny the special motion to strike and the

20    motion to dismiss Lenz's claims.

21

22    DATED: November 13, 2007          By _____/s/_____

23                                          Corynne McSherry, Esq.

24                                          ELECTRONIC FRONTIER FOUNDATION
                                            454 Shotwell Street
25                                          San Francisco, CA  94110
                                             Tel: (415) 436-9333/Fax: (415) 436-9993
26
                                            Attorneys for Plaintiff Stephanie Lenz
27

28

OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE

**SER 166**

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2013, I electronically filed the foregoing APPELLEE AND CROSS-APPELLANT'S SUPPLEMENTAL EXCERPTS OF RECORD –VOLUME 1 (PAGES 1–166) with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: December 6, 2013

KEKER & VAN NEST LLP

*Attorneys for Plaintiff, Appellee, and Cross-Appellant STEPHANIE LENZ*